## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

HARTFORD CASUALTY INSURANCE COMPANY,

      Plaintiff,

v.

                                    Civ. No. 12-01110 MV/KK

TRINITY UNIVERSAL INSURANCE COMPANY OF
KANSAS, TRINITY UNIVERSAL INSURANCE OF
KANSAS, AND TRINITY UNIVERSAL INSURANCE
COMPANY as successor in interest to AMTRUST
INSURANCE COMPANY OF KANSAS, INC., and
ZURICH AMERICAN INSURANCE COMPANY,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Trinity Universal Insurance Company of Kansas and Trinity Universal Insurance Company's ("Trinity") Motion to Transfer Venue ("Motion to Transfer Venue") [Doc. 45], filed November 26, 2013.  The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Transfer Venue is not well-taken and will be denied.

## <u>BACKGROUND</u>

This insurance coverage lawsuit ("Coverage Action") arises out of a lawsuit filed in the District Court of La Plata County, Colorado ("Underlying Action"), in which the Rivergate Lofts Condominium Owners Association ("COA") asserted various construction defect claims against Rivergate Loft Partners, LLC ("RLP"), the owner and developer of a multi-use condominium development located in Durango, Colorado (the "Project"), Okland Construction Company, Inc.

("Okland"), one of the general contractors for the Project, and other defendants. Plaintiff Hartford Casualty Insurance Company ("Hartford") incurred approximately $1.6 million in defense costs and $150,000 in indemnity defending and settling the Underlying Action on RLP's behalf.

Hartford alleges that Beaty Construction, Inc. ("Beaty"), a subcontractor which did masonry work at the Project, entered into certain contracts with Okland, which obligated Beaty to name RLP as an additional insured with respect to Beaty's work on the Project. Trinity and Zurich insured Beaty. The insurance policies issued by Trinity and Zurich contain automatic additional insureds provisions, which Hartford contends automatically extended coverage under the policies to RLP. Hartford further alleges and presents evidence that RLP tendered its defense of the Underlying Action to Trinity and Zurich, and that both insurers accepted the duty to defend RLP in the Underlying Action subject to a reservation of rights. Hartford alleges that Trinity and Zurich owe it the defense costs it incurred and the indemnity it paid on RLP's behalf to defend and settle the Underlying Action.

Zurich and Trinity have filed third-party complaints against Mountain States Mutual Casualty Company ("Mountain States") in this Coverage Action. Mountain States insured two subcontractors that were involved in the Underlying Action. Trinity alleges that Mountain States had a duty to defend RLP in the Underlying Action under the policies it issued to these subcontractors and that Mountain States failed to do so. Trinity further alleges that to the extent it is obligated to reimburse Hartford for any sums, Mountain States is likewise obligated to pay. Mountain States also filed a third-party-complaint against Trinity, in which Mountain States alleges that Trinity had a duty to defend Okland in the Underlying Action and that Trinity is obligated to pay.

Hartford's named insured RLP is a Colorado corporation.  Trinity's named insured Beaty is a New Mexico corporation.  Mountain States' two insured-subcontractors are Colorado companies.

Hartford is an Indiana corporation with its principal place of business in Hartford, Connecticut.  Trinity is a Texas corporation with its principal place of business in Texas.  Zurich is a New York corporation with its principal place of business in Illinois.  Mountain States is a New Mexico corporation with its principal place of business in New Mexico.  Trinity and Zurich are authorized to transact the business of insurance in New Mexico.

It is undisputed that the amount in controversy exceeds $75,000 exclusive of interests and costs and that this Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332(a).  It also is undisputed that venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1).

The Phoenix Insurance Company and St. Paul Surplus Lines Insurance Company (collectively, "Phoenix") also insured Okland and defended Okland in the Underlying Action. Phoenix brought an insurance coverage action against Trinity, Zurich, and others in the United States District Court for the District of Colorado ("Phoenix Coverage Action") asserting that Trinity, Zurich, and the others owed Phoenix the defense fees and costs it incurred in defending Okland in the Underlying Action.  Phoenix alleged that Beaty was obligated to defend Okland under the Okland-Beaty contracts and that Trinity and Zurich, as insurers for Beaty, were obligated to reimburse Phoenix for defense fees and costs.  The Phoenix Coverage Action, which is now concluded, was extensively litigated in Colorado.

## STANDARD

28 U.S.C. Section 1404(a) provides that "a district court may transfer an action '[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . to any other district or

division where it might have been brought.'"   *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618

F.3d 1153, 1167 (10th Cir. 2010) (quoting 28 U.S.C. § 1404(a)).   The objectives of Section

1404(a) are "to prevent waste of time, energy and money and to protect litigants, witnesses and

[the] public against unnecessary inconvenience and expense."   *Beatie & Osborne LLP v. Patriot*

*Scientific Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (citing *Van Dusen v. Barrack*, 376

U.S. 612, 616 (1964)).

The district court is afforded discretion "to adjudicate motions for transfer according to an

individualized, case-by-case consideration of convenience and fairness."   *Chrysler Credit Corp.*

*v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).   The Court weighs the following

factors in reaching its decision:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of
> proof, including the availability of compulsory process to insure attendance of
> witnesses; the cost of making the necessary proof; questions as to the enforceability
> of a judgment if one is obtained; relative advantages and obstacles to a fair trial;
> difficulties that may arise from congested dockets; the possibility of the existence
> of questions arising in the area of conflict of laws; the advantage of having a local
> court determine questions of local law; and, all other considerations of a practical
> nature that make a trial easy, expeditious and economical.

*Id.* (citation omitted).   The party requesting transfer "bears the burden of establishing that the

existing forum is inconvenient."   *Id.* at 1515; *see also Bartile*, 618 F. 3d at 1168 n.13 (explaining

that a court will honor the plaintiff's choice of forum "unless the balance in the defendant's favor

is shown by clear and convincing evidence") (citation omitted); *Scheidt v. Klein*, 956 F.2d 963,

965 (10th Cir. 1992) (explaining that "the plaintiff's choice of forum should receive considerable

weight," and that "unless the balance is strongly in favor of the movant[ seeking a change of

venue,] the plaintiff's choice of forum should rarely be disturbed").

## DISCUSSION

Trinity asks the Court, pursuant to 28 U.S.C. Section 1404(a), to transfer venue in this case to the United States District Court for the District of Colorado.   Section 1404(a) authorizes a district court to transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . to any other district . . . where it might have been brought."   28 U.S.C. § 1404(a).   In evaluating Trinity's Motion to Transfer Venue, the Court first must determine whether Hartford might originally have brought this action in the District of Colorado.   The Court next must weigh the factors articulated by the Tenth Circuit in *Chrysler Credit Corp. v. Country Chrysler, Inc.* and determine whether Trinity has satisfied its burden of demonstrating that the District of New Mexico is an inconvenient forum.   *Cf.* 928 F.2d at 1515-16; *Bartile*, 618 F.3d at 1168 & n.13.

The Court concludes that Trinity has satisfied its burden of establishing that Hartford originally could have brought this action in the District of Colorado but has not satisfied its burden of establishing that the District of New Mexico is an inconvenient forum.   For the reasons discussed herein, the *Chrysler* factors all weigh against or slightly against a transfer of venue. Therefore, the Court denies Trinity's Motion to Transfer Venue.

I.      Hartford Could Have Brought this Action in the District of Colorado.

To succeed on its Section 1404(a) Motion to Transfer Venue, Trinity must demonstrate that Hartford originally could have filed this action in the District of Colorado.   An action could have been asserted in another forum "if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court."   *Posven C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004); *see also* 28 U.S.C. § 1404(a).

5

The parties do not dispute that Hartford originally could have brought this action in the District of Colorado.   The District of Colorado would have had subject matter over this action pursuant to 28 U.S.C. Section 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000.   *See id.* § 1332.   In addition, the District of Colorado would have had personal jurisdiction over Trinity.   Finally, venue would have been proper pursuant to Section 28 U.S.C. Section 1391(b)(1), which provides that "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," *id.* § 1391(b)(1), and Section 1391(c)(2), which provides that "an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question," *id.* § 1391(c)(2).   Thus, the Court concludes that Trinity has satisfied its threshold burden of demonstrating that this action originally could have been brought in the District of Colorado.

II.     <u>The Factors Weigh Against Granting the Motion to Transfer Venue</u>.

The Court next evaluates whether Trinity has satisfied its burden of establishing that the *Chrysler* factors weigh in favor of transferring venue.   Those factors include (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical.   *See Chrysler Credit Corp.*, 928 F.2d at 1516.   The Court addresses each factor in turn.

A.    <u>Hartford's Choice of Forum</u>.

In *Employers Mutual Casualty Co. v. Bartile Roofs Inc.*, the Tenth Circuit explained that a plaintiff's choice, the first *Chrysler* factor, of forum weighs against transfer.  *See* 618 F.3d at 1167; *see also Chrysler*, 928 F.2d at 1516.  The question is, however, "how much weight this preference should carry when considered along with all of the other factors, for it is neither the sole nor decisive consideration for transferring venue under 28 U.S.C. § 1404(a); it is but one factor among many."  *Dworkin v. Hustler Magazine, Inc.*, 647 F. Supp. 1278, 1280 (D. Wyo. 1986).  The Tenth Circuit has held that generally "the plaintiff's choice of forum should receive considerable weight," *id.* (citation omitted), and that "unless the balance is strongly in favor of the movant[ seeking a change of venue,] the plaintiff's choice of forum should rarely be disturbed," *Scheidt*, 956 F.2d at 965; *accord Bartile*, 618 F.3d at 1167.  The Tenth Circuit explained, however, that "[t]he plaintiff's choice of forum receives less deference . . . if the plaintiff does not reside in the district."  *Id.* at 1168.  "[T]he policy reason behind placing significance on the 'home forum' [is] that the court may presume that the chosen forum is convenient to the plaintiff." *Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1255 (D.N.M. 2013) (citations omitted).  "When the plaintiff has chosen to bring suit in a district that is not his 'home turf' and which has no connection to any of the acts giving rise to the lawsuit, the convenience to the plaintiff is not as great as it would be were [he] litigating at or near [his] principal place of business or at the site of the activities at issue in the lawsuit."  *Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992), *cited and quoted in Navajo Nation*, 918 F. Supp. 2d at 1255.

7

Trinity concedes that "Hartford may reside in this district for purposes of venue,"[1] but argues that Hartford "is an Indiana corporation with its principal place of business in Hartford, Connecticut."   [Doc. 45 at 6].   Thus, Trinity maintains that Hartford is not a resident of the District of New Mexico for purposes of Section 1404(a) and argues that the Court therefore should not give substantial deference to Hartford's choice of venue.

The Court agrees that Hartford is not a New Mexico resident for purposes of Section 1404(a).   *See Navajo Nation*, 918 F. Supp. 2d at 1255 (explaining that in establishing a plaintiff's forum state "[f]or venue purposes, a corporate plaintiff generally is deemed to reside at its principal place of business") (citing *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991) (examining corporation's principal place of business when determining whether corporate plaintiff brought suit in its home forum)).   Thus, consistent with *Bartile*, the Court treats Hartford's forum choice as one of many factors under *Chrysler* relevant to the decision whether to grant Trinity's Motion to Transfer Venue.   In *Bartile*, the Tenth Circuit held that, although the plaintiff was not a resident of the forum state of Wyoming, the plaintiff's choice of forum nonetheless weighed against a transfer of venue to the District of Utah.   *See* 618 F.3d at 1168.   The *Bartile* court explained that, "although [the plaintiff-insurer] is an Iowa corporation that does not reside in Wyoming for purposes of § 1404(a), 'the facts giving rise to the lawsuit have [a] 'material relation or significant connection to' Wyoming."   *Id.* (citation omitted). The Tenth Circuit acknowledged that courts accord "little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the

---

[1]   Hartford is a resident for purposes of establishing venue pursuant to 28 U.S.C. Section 1391(c)(2), which provides that "an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."   28 U.S.C. § 1391(c)(2).

plaintiff's chosen forum,'" *id.* at 1168, but held that the facts significant to the plaintiff's lawsuit "include[d its insured's] allegedly negligent roofing work on the luxury hotel in Wyoming."  *Id.* The court recognized that several district courts had determined that the locus of operative facts in an insurance coverage dispute is either the site of the policy's execution or the site of the decision to deny coverage, which both occurred outside of Wyoming in *Bartile*, but also noted that other courts had found that the location of the alleged damage or loss is "significant" for purpose of analyzing the convenience of a particular venue.  *Id.*  The *Bartile* court explained that, on the record before it, the locus of operative facts did not give rise to a single venue because the contract was executed and coverage was denied in two different states.  *See id.*  The court therefore relied upon the facts giving rise to the underlying lawsuit as establishing a material connection to Wyoming.  *See id.*  The *Bartile* court then concluded that, although the plaintiff was not a resident of the forum state of Wyoming, the plaintiff's choice of forum weighed against a transfer of venue.  *Id.*

This Court likewise holds that the first *Chrysler* factor of Hartford's choice of forum weighs against transferring venue to the District of Colorado.  As in *Bartile*, the facts here that gave rise to this Coverage Action have a material relation to New Mexico.   Specifically, as Trinity concedes, the Trinity and Zurich policies, under which Hartford claims RLP was an additional insured, were issued to Beaty in New Mexico.   [Doc. 45 at 7].   Thus, the Court concludes that Hartford's choice of forum weighs against transfer because the facts giving rise to this Coverage Action have a significant connection to the forum.   *Cf. Bartile*, 618 F.3d at 1168.

The Court is not persuaded to hold otherwise by Trinity's argument that the significant facts giving rise to this Coverage Action occurred in Colorado and not New Mexico. Specifically, Trinity contends that the "defense costs Hartford seeks to recoup were paid to

Colorado attorneys for defending RLP, Hartford's Colorado insured, in connection with a Colorado lawsuit," and that "the indemnity payment Hartford seeks to recover was paid to a Colorado condominium association to settle a Colorado lawsuit arising out of alleged construction defects at a Colorado condominium project." [Doc. 45]. The *Bartile* court recognized two approaches to determining which facts in an insurance coverage action are significant—*i.e.*, the locus of operative facts and the location of the alleged damage or loss—without holding as a matter of law that one approach applied over the other. *See Bartile*, 618 F.3d at 1168; *see also Quorum Health Resources, LLC v. Lexington Ins. Co.*, No. 11-CV-0374 MV/LAM, 2012 U.S. Dist. LEXIS 30785, at *7-8 (D.N.M. Mar. 7, 2012) (applying the locus of operative facts approach, and not the location of the alleged damage or loss approach, described in *Bartile* to determine whether the plaintiff's choice of forum weighed for or against a transfer of venue). Under the "locus of operative facts" approach, it is either the site of the policy's execution or the site of the decision to deny coverage which is significant to determining the convenience of a particular venue. *See Bartile*, 618 F.3d at 1168. Here, the relevant policies were executed in New Mexico to a New Mexico corporation. Thus, under the locus of operative fact, this Coverage Action arose out of the execution of the insurance policies in New Mexico.

The Court notes that its emphasis on the locus of operative facts, instead of the location of the alleged damage or loss, is consistent with the Tenth Circuit's instruction that, for venue purposes, "in determining what events or omissions give rise to a claim, the focus is on relevant activities of the defendant, not of the plaintiff." *Goff v. Hackett Stone Co.*, No. 98-7137, 1999 WL 397409, *1 (10th. Cir. 1999) (explaining that "venue statutes are generally designed for the benefit of defendants, and in determining what events or omissions give rise to a claim, the focus is on relevant activities of the defendant, not of the plaintiff" and holding that venue was improper in a

district that was identified based upon the plaintiff's acts) (internal quotations and citation omitted).   By emphasizing the place where Trinity executed the insurance policies at issue, the Court focuses on the activities of Trinity—as defendant—that gave rise to this insurance coverage dispute.   In contrast, by arguing it is the allegedly negligent acts in Colorado of RLP, in whose shoes Hartford—as plaintiff—stands,[2] that gave rise to this lawsuit, Trinity ignores controlling Tenth Circuit authority indicating that it is the defendant's—and not plaintiff's—activities which are relevant for venue purposes.

      B.     <u>Convenience of Witnesses</u>.

The second *Chrysler* factor, the accessibility of witnesses and other sources of proof, including the availability of compulsory process to assure attendance of witnesses, *see* 928 F.2d at 1516, weighs against granting Trinity's motion.   The Tenth Circuit has held that "[t]he convenience of witnesses is the most important factor in deciding a motion under Section 1404(a)."   *Bartile*, 618 F.3d at 1169 (citation omitted).   In order to show inconvenience, the party seeking transfer must satisfy the three-part "inconvenience test":   "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."   *Id.* (citation omitted).

To satisfy the first prong of the inconvenience test, Trinity must identify the allegedly inconvenienced witnesses and their locations.   Trinity maintains that the issues in this case are whether and to what extent Trinity is obligated to reimburse Hartford for the (1) defense fees and

---

[2]   *See Great Am. Ins. Co. v. W. States Fire Prot. Co.*, 730 F. Supp. 2d 1308, 1316 (D.N.M. 2009) ("New Mexico recognizes that the doctrine of subrogation 'allows an insurer who has fully compensated the insured to step into the shoes of the insured and collect what it has paid from the wrongdoer.'").

costs Hartford incurred in defending RLP and (2) indemnity Hartford paid on RLP's behalf to settle with the COA plaintiff in the Underlying Action. [Doc. 45 at 7-8]. Trinity lists the following potential witnesses located in Colorado with testimony relevant to these subjects: (1) RLP; (2) RLP's defense attorneys in the Underlying Action Wells Anderson and Race, LLC ("WAC"); (3) LRP's defense attorneys in the Underlying Action Shand, Newbold and Chapmen, P.C. ("SNC"); (4) RLP's personal counsel in the Underlying Action Holley, Albertson & Polk, P.C. ("HAP"); and (5) RLP's vendors (court reporters, document services, etc.) in the Underlying Action. [Doc. 64 at 5-6]. Trinity also lists as potential witnesses located "mostly" in Colorado "other subcontractors and their counsel involved in the Underlying Action."[3] [*Id.* at 6]. Hartford maintains—and the Court agrees—that Trinity's "vague and conclusory assertions" of witnesses who are not identified by name but rather are referred to collectively as attorneys, subcontractors, or vendors are insufficient to establish that this factor weighs in favor of transfer. [Docs. 57 at 15, 104 at 7, 9].

In *Bartile*, the Tenth Circuit held that the factor of witness convenience weighed against transfer because the defendant had failed to identify its witnesses with specificity and simply alleged that the majority of potential witnesses were Utah residents subject to compulsory process.

---

[3] Trinity further identifies as located in Colorado or "mostly" in Colorado the following expert witnesses: (1) RLP's expert witness in the Underlying Action Wiss Janney Elstner and Associates; (2) Beaty's expert witness in the Underlying Action; and (3) other experts involved in the Underlying Action. [Doc. 64 at 5-6]. Hartford contends, however, and the Court agrees, that the convenience of a venue for an expert witness should be given little, if any, weight. [Doc. 57 at 16]. As such, the Court declines to consider inconvenience to these experts. *See, e.g.*, 17 James W. Moore *et al.*, *Moore's Federal Practice* § 111.13 (3d ed. 2010) ("convenience of expert witnesses is of little or no significance on a motion to transfer") (internal quotation marks and citation omitted); *William M. Yarbough Found. v. Garcoa Labs., Inc.*, No. 1:11-CV-907, 2013 U.S. Dist. LEXIS 113108, *17 (W.D. Mich. Aug. 12, 2013) (giving "minimal weight" to expert witness convenience).

*See* 618 F.3d at 1169.   The Court here similarly concludes that identifying only "subcontractors" or "vendors," or law firms, without identifying the individual names of these subcontractors, vendors, or law firm attorneys or staff, does not satisfy Trinity's burden.   *Cf. id.*; *Navajo Nation*, 918 F. Supp. 2d at 1258 (holding that defendants had failed to carry their burden for transfer in part because they did not name individuals within the companies that they had designated as witnesses).   Thus, because Trinity has not made its requisite showing under the first prong of the inconvenience test, the Court holds that the factor weighs against transfer.

The Court also holds that the witness convenience factor weighs against transfer because Trinity has failed to satisfy the second prong of the inconvenience test.   This prong requires Trinity to set forth the quality or materiality of the Colorado witnesses' testimony.   Trinity describes RLP's, WAC's, and SNC's anticipated testimony as "including but not limited to:   the Underlying Action, RLP's tender of its defense to Trinity, whether RLP cooperated with Trinity, whether RLP's defense costs related to the work of Beaty, RLP's defense costs, RLP's settlement with the HOA, and RLP's claims against Hartford."   [Doc. 64 at 5].   Trinity depicts HAP's expected testimony as "including but not limited to:   RLP's lawsuit against Hartford alleging that Hartford breached its duty to defend and indemnify RLP, the indemnity payment RLP made to the HOA, and the terms of RLP's settlement with Hartford."   [*Id.*].   Trinity portrays RLP's vendors' anticipated testimony as "including, but not limited to:   their invoices for services, and the extent to which they were paid and by whom they were paid."   [*Id.* at 6].   Trinity characterizes the other subcontractors' testimony as "including, but not limited to:   the scope of work of various parties on the Project, and whether the alleged damages implicated Beaty's work."   [*Id.*].

Hartford argues that Trinity's conclusory assertions regarding anticipated witness testimony, devoid of any specific identification of the relevant and material testimony, is

insufficient to satisfy Trinity's burden.   [Doc. 104 at 9; Doc. 57 at 16].   Mountain States endorses Hartford's argument but further adds that Trinity has identified Colorado lawyers without explaining the precise information it would seek from the lawyers, how it would legitimately breach privilege, and why it could not obtain this privileged information from other sources. [Doc. 107 at 7].

The Court agrees that Trinity's description of the Colorado witnesses' proposed testimony is not sufficiently specific to establish the materiality, quality, or admissibility of the testimony. *See AB Invs., LLC v. Gelbard*, No. 10-CV-00046-WDM-BNB, 2010 WL 4054101, *5 (D. Colo. Oct. 14, 2010) (conclusory averments of expected testimony, without information concerning "the expected testimony, its relevance," and its "materiality," are insufficient to establish witness convenience weighs in favor of transfer).   Trinity does not explain how or why testimony regarding the Underlying Action is significant to this Coverage Action, how or why RLP's tender of its defense to Trinity is relevant to this Action, how or why RLP's defense costs or whether RLP's defenses costs related to the work of Beaty is material to this Action, or how or why RLP's settlement and claims against Hartford are pertinent to this Action.   Simply claiming that these witnesses will testify regarding these topics, without explaining how or why this testimony is material to this Coverage Action, does not satisfy Trinity's burden under the second prong of the inconvenience test.

The Court further concludes that Trinity fails to satisfy its burden under this second prong for an additional reason.   Trinity has failed to evaluate the materiality of the testimony of the Colorado witnesses relative to the documentary proof at issue in this case.   Mountain States contends, "While convenience of witnesses can be the most important factor in deciding a § 1404 motion, a necessary preliminary question involves the materiality of witness testimony in light of

14

the 'sources of proof' for the claims in the case."   [Doc. 107 at 6 (citing *Bartile*, 618 F.3d at 1169)].   Mountain States maintains, "It is plain from the pleadings that the 'facts' of this case (whether coverage duties arising from the Underlying Action exist among the various insurers and how allocation may be appropriate) come not from witnesses but primarily from documents: insurance policies; indemnity agreements among contractors for the Project; documents for costs/payments made by insurers; correspondence among insurers and with insureds, etc."   [*Id.* at 6-7].   Hartford likewise emphasizes that the primary dispute before this Court—the duty to defend—is an issue of contract interpretation which can be decided by comparing the allegations of the complaint in the Underlying Action with the insurance policy.   [Doc. 57 at 17].   Thus, the parties contend that "[t]he dispute at bar about legal duties and equity among insurers does not require proof or negation of the construction defect allegations themselves."   [Doc. 107 at 5].

Succinctly stated, Mountain States and Hartford argue that the "sources of proof" in this case are documents not people and therefore, even if fourteen witnesses are located in Colorado, the testimony of these witnesses is not material, on balance, to this litigation.   [*Id.* at 6].   The Court finds this argument persuasive.   Under *Chrysler*, the relevant inquiry for purposes of evaluating the witness inconvenience factor is the "accessibility of witnesses *and other sources of proof*."   928 F.2d at 1516.   The *Chrysler* inquiry is not limited to weighing only the convenience of the witnesses; rather, documentary proof also is relevant.   In addition, the Tenth Circuit has held that, to satisfy the inconvenience test, the party seeking transfer must "indicate the quality or materiality of [the] testimony" of the witnesses allegedly inconvenienced.   Therefore, it is not simply the inconvenience of a potential witness that weighs in favor of transfer but rather the inconvenience of a potential witness *with material testimony* that determines the extent to which the witness's convenience will be weighed.   *See Bartile*, 618 F.3d at 1168 (it is "'[t]he materiality

15

of the prospective witness testimony, and not merely the number of prospective witnesses, [that] will determine the extent to which their convenience will be weighed'") (quoting 17 James W. Moore *et al.*, *Moore's Federal Practice* § 111.13[f][v] (3d ed. 2010).

The Court, applying this standard, must consider all sources of proof—both witness testimony and documentary proof—and must, with respect to the witness testimony, weigh "not merely the number of prospective witnesses" but rather the materiality of their testimony. *See Bartile*, 618 F.3d at 1169; *see also Chrysler Credit Corp.*, 928 F.2d at 1516. Thus, the Court rejects Trinity's argument that, because it has identified fourteen potential Colorado witnesses and Hartford has identified only three New Mexico witnesses, this showing alone establishes that the witness inconvenience factor weighs in Trinity's favor. [Doc. 105 at 5].

This is not a lawsuit that requires a highly technical, fact-intensive inquiry which would be clarified by Colorado witnesses and lawyers but rather is a case about whether and how the undisputed allegations of a construction defect in the complaint of the Underlying Action trigger duties and equitable rights among insurers.[4] This latter question can be resolved largely through the analysis of documents. Therefore, although fourteen witnesses are located in Colorado, and only three in New Mexico, Trinity has not established that the anticipated testimony of the fourteen witnesses is, relative to the documents, material to the questions of contract construction before the Court. Likewise, Trinity has not established that the cumulative significance of the Colorado witnesses' testimony is, on balance, greater than the cumulative significance of the three New Mexico witnesses' testimony. For example, if the documents constitute 90 percent of *all* material proof in this case—documentary and testimonial—and the witnesses only ten percent, the

---

[4] The Court notes that it is the duty to defend that is primarily at issue in this litigation. Hartford institute this Coverage Action to recover approximately $1.6 million in defense costs it paid and only $150,000 in indemnification. [Doc. 57 at 2; Doc. 64 at 4].

Court would conclude that the inconvenience of these witnesses—regardless of the number of witnesses—weighed against transfer.   Likewise, if the three New Mexico witnesses constitute 90 percent of the material *witness* testimony in this case, and the fourteen Colorado witnesses only ten percent, the Court would conclude that the inconvenience of the fourteen witnesses weighed against transfer.   Accordingly, considering all sources of proof, both testimonial and documentary, and the materiality of that proof, the Court concludes that Trinity has not satisfied its burden of demonstrating that the second prong of the inconvenience test weighs in favor of transfer.

The Court is not persuaded to hold otherwise by Trinity's arguments to the contrary. Trinity concedes that "the sources of some proof will be documents," but argues that Mountain States' complaint establishes that witness testimony will be "necessary on certain issues."   [Doc. 108 at 7].   Although Trinity maintains that both types of proof will be presented at trial, the Court already has explained that Trinity does not parse the relative importance of the witness testimony from the significance of the documentary evidence.   The vague assertion that "certain" issues will require testimony from Colorado witnesses, without a comparison of the value of witness testimony relative to the documentary proof, does not establish that the witness testimony is sufficiently material to weigh in favor of transfer.   It was Trinity's burden to establish by clear and convincing evidence that the witness testimony is sufficiently material to weigh in favor of transfer.   Trinity has not satisfied this burden.

Finally, the Court holds that the witness convenience factor weighs against transfer because Trinity has failed to satisfy the third prong of the inconvenience test.   This third prong requires Trinity to establish one of three requirements (a) that the Colorado witnesses are unwilling to come to trial, (b) that deposition testimony would be unsatisfactory, or (c) that the use

17

of compulsory process would be necessary.   *See Bartile*, 618 F.3d at 1169.   Trinity has failed to satisfy any of these showings.

First, Trinity has not presented proof, or indeed even argument, that any one of the fourteen Colorado witnesses is unwilling to travel to New Mexico for trial.   Several courts have held that a defendant seeking a transfer of venue fails to satisfy its burden of demonstrating witness inconvenience when the defendant does not present factual proof that witnesses are unwilling to travel for trial.   *See Scheidt*, 956 F.2d 965-66 (denying motion to transfer venue after finding that, amongst other things, the defendant had failed to establish with factual evidence that witnesses were unwilling to travel for trial); *Navajo Nation*, 918 F. Supp. 2d at 1258 (explaining that the defendants "have not provided any evidence regarding the third prong of the 'inconvenience' test—that the proposed witnesses from these third-party suppliers would not voluntarily come to trial"—and that defendants have "thus not met their burden of proving that the accessibility of witnesses and proof factor weighs in favor of transfer").   Trinity has failed even to assert, and thus has not shown by clear and convincing evidence or otherwise, that the Colorado witnesses are unwilling to travel to New Mexico for trial.   Rather, Trinity argues only that most of the witnesses "have little, or no, affiliation with Trinity," and apparently rely upon this assertion to establish that the witnesses will not travel to New Mexico.   The Court concludes that this showing is not sufficient to satisfy Trinity's burden.

Trinity also has failed to establish that deposition testimony from the Colorado witnesses would be insufficient.   Trinity argues only that it would cost Trinity more to present witness testimony at trial by video deposition and that "the number of witnesses whose testimony would have to be presented by deposition would result in a trial of mostly non-appearing witnesses," which Trinity "submit[s] . . . would be an unsatisfactory presentation of evidence."   [Doc. 45 at 9;

Doc. 108 at 9].   These arguments are not persuasive because increased cost is a separate factor not relevant to the question whether video depositions are sufficient and because a conclusory assertion that a trial of mostly non-appearing witnesses would be "unsatisfactory," without any other evidence to establish why it would be so, is not sufficient to satisfy Trinity's burden on this point.

Finally, Trinity has failed to establish, by clear and convincing evidence or otherwise, that compulsory process would be required if this Court retains venue.   Trinity presents conflicting argument regarding whether compulsory process would be required, claiming both that "[l]ikely, many witnesses would require a compulsory process to ensure their attendance at trial," [Doc. 64 at 6-7], and that "the numerous witnesses located in Colorado are only subject to the compulsory process in Colorado" and not in New Mexico, [Doc. 108 at 9].   These contradictory arguments are insufficient to satisfy Trinity's burden.

The Court has held that Trinity has not satisfied its burden of demonstrating that any of the three prongs of the inconvenience test weigh in favor of transfer to the District of Colorado.[5] Trinity has not sufficiently identified the witnesses who will be inconvenienced by a trial in New Mexico, the relevancy and materiality of the testimony of these witnesses, or the unwillingness of these witnesses to travel for trial, the insufficiency of their deposition testimony, or the necessity of compulsory process.   The Court therefore holds that the second *Chrysler* factor of witness convenience weighs against transfer.

---

[5]   In various places throughout their memoranda in support of their Motion to Transfer Venue, Trinity argues that Hartford and Mountain States have failed to demonstrate any significant prejudice to them if the case is transferred to Colorado.   [Docs. 105 at 4, 108 at 9].   It is not, however, Hartford or Mountain States' burden to demonstrate that transfer to the District of Colorado would prejudice them.   It is Trinity's burden, as the party seeking a change of venue, to establish that the existing forum, the District of New Mexico, is inconvenient.   *See Chrysler Credit Corp.*, 928 F.2d at 1515.

C.     The cost of making the necessary proof.

The third *Chrysler* factor, the cost of making the necessary proof, *see* 928 F.2d at 1516, weighs against transfer.   Trinity contends that "to the extent . . . Colorado witnesses would be willing to travel to New Mexico, there will be costs associated with the travel, to include airfare, food and lodging," and that "[e]xperts will be required to be paid an hourly rate for travel time." [Doc. 45 at 10].   Trinity further maintains that if the witnesses are not willing to travel to New Mexico, they "will likely be required to present most witness testimony through video deposition, which is more costly . . . than presenting witness testimony live."   [Doc. 64 at 7].   Hartford argues that Trinity has not satisfied its burden because it has failed to present evidence that the cost of litigating this case in the forum weighs in favor of transfer.   The Court agrees.

In *Bartile*, the defendant advanced an argument similar to Trinity's, contending only "that litigating the case in Wyoming potentially would exceed the cost of litigating the case in Utah due to the travel expenses of the witnesses," but failing to present any "evidence concerning the potential costs of litigating the case."   618 F.3d at 1169.   The Tenth Circuit held that the defendant's showing failed to justify a transfer.   *See id.*   Trinity, likewise, has failed to present any evidence concerning the cost of witness travel to New Mexico or of video depositions.   Thus, the Court concludes that, as in *Bartile*, Trinity has not satisfied its burden of showing that this factor weighs in favor of transfer.

D.     Questions as to the Enforceability of a Potential Judgment.

The fourth *Chrysler* factor, questions as to the enforceability of a judgment if one is obtained, *see* 928 F.2d at 1516, also weighs against transfer.   Trinity has not presented any evidence that a judgment would be unenforceable in the District of New Mexico and it was Trinity's burden to do so.   Thus, the Court concludes that this factor weighs against transfer.

E. <u>Relative Advantages and Obstacles to a Fair Trial</u>.

The fifth *Chrysler* factor, the relative advantages and obstacles to a fair trial, *see id.*, weighs against transfer.   Trinity argues that because its Colorado witnesses unwilling to travel to New Mexico will have to be deposed by video, the parties will not be able to obtain real time rulings on evidentiary objections and the trier of fact will be unable to make any inquiries of the witnesses at trial.   [Doc. 64 at 7; Doc. 108 at 9].   Trinity contends that, as a result, "its opportunity for a fair trial will be compromised."   [Doc. 64 at 7].

The Court is not persuaded that either the lack of real-time rulings or the inability of the trier of fact to pose questions to the witnesses deposed by video will be an obstacle to a fair trial for Trinity, or that, if the Court transfers venue, the testimony of these witnesses at trial will constitute an advantage that will ensure a fair trial.   First, litigators are well versed in the process of receiving deferred rulings during depositions and the Court perceives no prejudice to the parties as a result of these rulings.   Second, Trinity has not articulated any specific prejudice that might occur as a result of a deferred ruling.   Third, even if Trinity had identified specific examples of possible prejudice from a deferred ruling, such predictions are, at this stage, sheer speculation. Fourth, to conclude that Trinity will suffer prejudice simply because the trier of fact cannot ask questions of the deponents assumes that questions will be necessary, which also is, at this point, speculative.   Finally, to the extent the Court were to indulge in such speculation, it would conclude that any prejudice is equally as likely to impact Hartford or Mountain States as it is to impact Trinity.   Indeed, if the Court were to transfer this case to the District of Colorado, the three New Mexico witnesses might also have to be deposed by video and the Court would conclude that the lack of real time rulings on objections or the inability of the trier of fact to pose questions to these witnesses likely would prejudice the parties in equal measure.   To suppose that in either

21

venue, the would-be ruling or question might benefit one party over the other is, once again, pure speculation.

The Court declines to conclude that the prejudice feared by Trinity if the Colorado witnesses are deposed by video is sufficient to constitute clear and convincing evidence that trying this case in the District of New Mexico will prevent Trinity from receiving a fair trial or that transferring the case to the District of Colorado will ensure Trinity receives a fair trial.   Thus, the Court concludes that the factor weighs against transfer.

       F.     <u>Congested Dockets</u>.

The sixth *Chrysler* factor, difficulties that may arise from congested dockets, *see* 928 F.2d at 1516, weighs slightly against transfer.   The data maintained by the Administrative Office of the United States Courts reveals that the District of New Mexico has a marginally less congested docket than the District of Colorado.   The relevant statistics for evaluating the administrative difficulties of court congestion are the "median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."   *Bartile*, 618 F.3d at 1169.

A comparison of these measures for both districts reveals that the median time from filing to deposition in Colorado is 6.3 months and in the New Mexico is 8.9 months, the median time from filing to trial is 24.4 months in Colorado and 23.1 months in New Mexico, the pending cases per judge in Colorado is 456 and in New Mexico 424 and the average weighted filings per judge in Colorado is 651 and in New Mexico 564.   Thus, while the time from filing to deposition in Colorado is 2.6 months less than in New Mexico, the time from filing to trial in Colorado is 1.3 months greater than in New Mexico, the number of pending cases per judge in Colorado is 32 more per judge than in New Mexico, and the weighted filings per judge in Colorado is 87 more per judge

than in New Mexico.   Accordingly, on balance, the District of New Mexico has a marginally less congested docket than the District of Colorado.   This factor, therefore, weighs slightly against transfer.

       G.      <u>Conflict of Laws Questions</u>.

      The seventh *Chrysler* factor, the possibility of the existence of questions arising in the area of conflict of laws, *see* 928 F.2d at 1516, weighs against transfer.   "In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law."   *Bartile*, 618 F.3d at 1169.   This factor, however, "receives less weight when the case involves relatively simple legal issues."   *Id.*   Further, "[t]his factor also is less significant because federal judges are qualified to apply state law."   *Id.* (citing *Chubb v. Union Pac. R.R.*, 908 F. Supp. 853, 855 (D. Colo. 1995)).

      Trinity argues that, with respect to Hartford's claims, "[a]n issue exists as to what law applies to this case—Colorado or New Mexico."   [Doc. 45 at 10].   Trinity maintains that the "Trinity insurance policies . . . contain both Colorado and New Mexico forms," that the policies were issued to Beaty, a New Mexico corporation that does business in Colorado, and that the additional insured RLP is a Colorado corporation sued for its development of a Colorado condominium project.   [*Id.*].   Based upon these assertions, Trinity argues that "[i]t could be that both Colorado and New Mexico law apply to the issues in this case."   [*Id.*].   Trinity also contends, that with respect to Mountain States' third-party complaint, Colorado law likely will apply, because this is the law that applied to the same issues litigated in the Phoenix Coverage Action.   [Doc. 108 at 7].   Trinity then maintains, however, that the "[choice of law] issue does not impact transfer as either the Colorado courts or this Court will be able to apply the appropriate law whether it is Colorado, New Mexico or both."   [*Id.*].

23

Hartford maintains, and the Court agrees, that Trinity has not established that the facts it identifies are relevant to the question of the substantive law that will apply to Hartford's claims in this dispute.   In New Mexico, the doctrine of *lex loci contractus* applies in insurance coverage disputes.   *See State Farm Mut. Ins. Co. v. Conyers*, 784 P.2d 986, 991 (N.M. 1989).   Under this approach, the insurance contract is governed by the law of the jurisdiction where the contract was made, which has been interpreted to mean "where the last act necessary for its formation was performed."   *Id.*   Here, the policies at issue were brokered and issued in New Mexico.   Thus, if the Court were considering only Hartford's complaint in weighing this factor, the Court would conclude Trinity has failed to establish that this factor weighs in favor of transfer.

Trinity also contends that Colorado law likely will apply to Mountain States' claims in its third-party complaint.   Trinity's argument on this subject is limited to a short paragraph in its final reply brief.   The Court concludes that this is insufficient to satisfy Trinity's burden of demonstrating by clear and convincing evidence that conflict of laws issues regarding Mountain States' claims in the third-party complaint weigh in favor of transfer, particularly when New Mexico law likely will govern Hartford's claims in its complaint.   Accordingly, because New Mexico law likely governs the claims in Hartford's complaint and because Trinity has failed to establish that Mountain States' claims are governed by Colorado law, the Court concludes that this factor weighs against transfer.   Because this case arguably involves a "straightforward contract question," however, and federal courts are qualified to apply any state's law, the Court considers, but gives less weight to, the factor.   *Am. Steamship Owners Mut. Protection & Indem. Ass'n v. LaFarge N.A., Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007), *aff'd*, 599 F.3d 102 (2010); *see also Bartile*, 618 F.3d at 1169 (holding that, "[a]lthough [the conclusion that the forum's law applies] favors the retention of this action in [the forum], this factor is not entitled to great weight

because the action does not involve complex legal issues, . . . and the judges in each potential forum are qualified to decide the state-law issues").

       H.      <u>Advantage of a Local Court Determining Questions of Local Law</u>.

The eighth *Chrysler* factor, the advantage of having a local court determine questions of local law, *see* 928 F.2d at 1516, weighs against transfer. "When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." *Bartile*, 618 F.3d at 1170 (citation omitted); *see also Bailey v. Union Pac. R.R.*, 364 F. Supp. 2d 1227, 1233 (D. Colo. 2005) ("There is a local interest in having localized controversies decided at home." (internal quotation marks omitted)). In addition, courts in this district have transferred an action to the federal district court whose substantive state law applied to the contract at issue because that state had a greater interest in applying its law. *See Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 581 (D. Kan. 2000).

Trinity has not established that this case involves local issues which a local Colorado court would be better suited to decide. Rather, Trinity only contends that the Colorado courts are familiar with the facts and issues in this case because they have litigated related cases with the same or similar issues, not because the issues are local to Colorado.[6] Moreover, Trinity has not satisfied its burden of showing that Colorado law necessarily applies and therefore that the Colorado courts have an interest in applying Colorado law. *See supra* § H. The Court therefore concludes that this factor weighs against transfer.

       I.      <u>Judicial Economy</u>.

The ninth and final *Chrysler* factor, which includes "all other considerations of a practical nature that make a trial easy, expeditious and economical," 928 F.2d at 1516, also weighs against

---

[6] The Court addresses this argument in the context of the judicial economy factor.

granting the motion for a change of venue.   Trinity advances the argument that judicial economy is served by transfer because the District of Colorado litigated related cases and therefore could litigate this case in an easier and more expeditious and economical manner.   Specifically, Trinity argues that the District of Colorado

> has already litigated many of the issues raised by [Hartford] in this action . . . in the context of the Phoenix [Coverage] Action, and although [Hartford] was not a party to that action, both Trinity and Zurich were.   Further, [Hartford was] a party to an[other] action arising out of the Underlying Action in the . . . District of Colorado. . . .   Thus, the Colorado courts have familiarity with the Underlying Action and the coverage lawsuits stemming from the Underlying Action.

[Doc. 45 at 10-11].

Hartford disagrees and maintains that Trinity has failed to satisfy its burden of explaining how the District of Colorado's litigation of either matter would make a trial of this separate case easier or more expeditious and economical.   [Doc. 57 at 18].   First, Hartford argues that neither of the two lawsuits in Colorado are substantially similar to the suit here.   [*Id.* at 18-19]. Although Hartford concedes that the Phoenix Coverage Action may be similar because it addressed some of the issues in Mountain States' third-party complaint, namely coverage for Okland under various policies issued to subcontractors on the Project, Hartford contends that the Phoenix Coverage Action is different in many more ways:   Hartford was not a party to the Phoenix Coverage Action, the Phoenix Coverage Action did not address additional insured coverage for RLP, the Phoenix Coverage Action did not address reimbursement/contribution for the amounts Hartford paid to defend and indemnify RLP, and the Phoenix Coverage Action did not address Trinity's or Zurich's third-party claims against Mountain States or Twin City Fire Insurance Company.   [Doc. 104 at 7].   Likewise, Hartford maintains that the Colorado lawsuit in

which Hartford was a party differs from this Coverage Action because it involved coverage under

a policy Hartford issued to RLP whereas this Coverage Action involves coverage under policies

Trinity and Zurich issued to Beaty.   [*Id.*].

Second, Hartford points out that the two prior Colorado cases were assigned to different

judges and contends that Trinity offers no evidence that this case, if transferred to the District of

Colorado, would be assigned to one of the two presiding Judges in the prior cases.   [*Id.* at 6].

Indeed, under the District of Colorado's Local Civil Rule 40.1(a), civil actions are assigned to

judicial officers by random draw.   [*Id.*].

The Court is not persuaded that the fact that the District of Colorado litigated the Phoenix

Coverage Action and a second related action constitutes a basis for concluding that judicial

efficiency weighs in favor of transferring this case.   Although "courts consistently recognize that

the existence of a related action in the transferee district is a strong factor to be weighed with

regard to judicial economy, and may be determinative,"[7] neither the Phoenix Coverage Action nor

the related case involving Hartford is still pending in the District of Colorado.   Thus, any judicial

efficiency that might have been achieved by transferring this related case for consolidation is lost.

Moreover, in the absence of a pending related case in the District of Colorado, the Court

cannot assume that this case will be heard by one of the two presiding Colorado District Court

---

[7]   *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004)
(citing *Citicorp Leasing, Inc. v. United Am. Funding, Inc.*, No. 03 Civ. 1586, 2004 WL 102761, *6
(S.D.N.Y. Jan. 21, 2004) ("The judicial economy factor is a separate component of the court's
section 1404(a) transfer analysis and may be determinative in a particular case.")); *id.* at 131
(granting transfer of venue because retaining venue "would result in duplicative actions in which
two federal judges would preside over the same basic claim, wasting judicial resources, requiring
the parties to unnecessarily expend more time and expense, and risking potentially inconsistent
results"); *Williams v. City of New York*, No. 03-CV-5342, 2006 WL 399456, *3 (S.D.N.Y. Feb. 21,
2006) (transferring case to district where related case was pending in order to achieve judicial
economy where two actions involved same plaintiff, issues, witnesses, and discovery).

Judges.   Thus, the efficiencies Trinity identifies are not likely to occur, because civil actions are assigned to judges by random draw.   In addition, to the extent that Trinity argues that the efficiencies nonetheless exist before a different Colorado District Court Judge, the Court is not persuaded.   Trinity contends, "as a practical matter, the judicial officers and staff within the District of Colorado will have easier access [to] one another, as well as the court documents located within the District of Colorado.   [Doc. 105 at 4].   This argument is speculative and supported by no evidence that the would-be presiding judge would communicate with the prior judges in the Colorado actions.   Moreover, Trinity has failed to establish precisely what documents this Court might have difficulty obtaining and why the parties themselves would not attach copies of any relevant papers from the Colorado litigation for the Court to review.   Thus, the benefit Trinity predicts is not of consequence, and the Court therefore concludes that Trinity has not satisfied its burden of establishing that practical considerations weigh in favor of transferring this case.

The Court's conclusion is consistent with holdings of other courts that have rejected arguments in favor of transfer when the related case is no longer pending.   *See, e.g.*, *McKinzy v. BNSF Ry. R.R.*, No. 08-CV-2365-CM, 2009 U.S. Dist. LEXIS 4813, *3-4 (D. Kan. Jan. 23, 2009) (explaining that although the defendant "requests that the court transfer this case to the Northern District of Illinois because of the related case," the transferee court has since dismissed the case, and holding that this factor therefore did not merit transfer because "judicial economy would not be served"); *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 566 F. Supp. 2d 1205, 1207-08 (D. Nev. 2008) (holding that the "[d]efendant, however, has not made a substantial showing that judicial economy will be facilitated by transferring this action," because one related action has been referred to arbitration, a second has been stayed, and a third was dismissed on the basis of forum

non conveniens, and "[c]onsolidation is thus unavailing"); *Pfizer Inc. v. Perrigo Co.*, No. 95-CV-5072 (DC), 1996 U.S. Dist. LEXIS 6184, *5 (S.D.N.Y. May 6, 1996) (holding that transfer was inappropriate because the "efficiencies to be gained by transferring this case are limited" where the alleged related case was no longer pending); *Temple v. Guardsmark LLC*, No. C-09-02124 SI, 2009 U.S. Dist. LEXIS 91306, *11-15 (N.D. Cal. Sept. 16, 2009) (denying transfer after concluding that the related action was no longer pending).   Although Trinity contends that "'courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative,'" [Doc. 102 at 4 (emphasis omitted) (quoting Quorum Health, 2012 U.S. Dist. LEXIS 30785, at *10-11)], the cases Trinity cites in support of this contention involve *pending* cases in the transferee district and therefore are distinguishable.   *See Quorum Health*, 2012 U.S. Dist. LEXIS 30785, at *10-11) (emphasis added); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997), *cert. denied*, 523 U.S. 1089 (1998).

The Court likewise is not persuaded by Trinity's argument that the District of Colorado is a more efficient forum because the court in the Phoenix Coverage Action entered an order that has preclusive effect here, and the District of Colorado is better suited to evaluate the claim of collateral estoppel regarding its own order.   Specifically, Trinity contends that the "responsibility for Okland's defense costs in the Underlying Action, for which Mountain States now seeks reimbursement from Trinity in its third-party complaint, was extensively litigated in the Phoenix Action," and that collateral estoppel applies here, because "[t]he District of Colorado made specific findings concerning the responsibility of various parties, including Mountain States, for Okland's defense costs."   [Doc. 102 at 4].   Trinity claims that Mountain States "attempts to re-litigate whether it owed a defense to Okland, even though the Magistrate Judge in the District of

29

Colorado previously determined that Mountain States [did owe such a duty]."   [*Id.*].   Trinity further maintains that "[o]ther jurisdictions have found that when issues of res judicata are raised, transfer is appropriate to the district that originally decided the related litigation, even if the prior related litigation is no longer pending.   [Doc. 105 at 2].

Mountain States, however, argues—and the Court agrees—that the District of Colorado did not enter an order concluding that Mountain States owed a duty to defend Okland.   Trinity cites a Magistrate Judge's *recommendation* that the District Judge in the Phoenix Coverage Action conclude that Mountain States owed Okland a duty to defend.   [Doc. 107 at 3].   Mountain States points out that the District Judge did not enter any order adopting, rejecting, or modifying the Magistrate Judge's recommendations and that the case settled through alternative dispute resolution before the District Judge took any action at all on the recommendation.   [*Id.*]. Moreover, Mountain States notes that even if the District Judge had adopted the Magistrate Judge's recommendation, footnotes fifteen and seventeen of the recommendation indicate that "[Mountain States] may seek contribution from other insurers if those other insurers also provided primary insurance to [the general contractor] which would cover the Underlying Action" and that "overall allocation of defense costs" is a matter to be worked out by a court in future proceedings if it cannot be resolved among insurers.   [Doc. 107 at 3-4].

Courts have held that, when collateral estoppel is at issue, transferring a case to the district that originally litigated the issue, even if the litigation in the transferee district no longer is pending, conserves judicial resources and expedites decision-making.   *See, e.g.*, *Albertson v. Monumental Life Ins. Co.*, No. C-08-05441 MW, 2009 U.S. Dist. LEXIS 111588, *8-10 (N.D. Cal. Nov. 13, 2009) (transferring case to district in which issue already had been litigated even though the prior litigation was no longer pending because transfer "conserved judicial resources and

expedites the decision-making process"); *Sykes v. Eckankar*, No. C-98-0858-SI, 1998 U.S. Dist. LEXIS 8203,  *3 (N.D. Cal. May 29, 1998) (granting motion to transfer due to the interest in justice of having defendants' claim of res judicata decided by a judge with knowledge of the previous litigation between the parties); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 57 (D.D.C. 2000) (granting transfer to a district that had heard similar claims because the "[transferee court] is in the best position to determine which claims or issues in the instant complaint are precluded by its own decision").   Here, however, although Trinity contends that "[t]he District of Colorado *made specific findings* concerning the responsibility of various parties, including Mountain States, for Okland's defense costs," [Doc. 102 at 4 (emphasis added)], and that "the Magistrate Judge in the District of Colorado previously *determined* that Mountain States [did owe such a duty]," [*id.* (emphasis added)], Trinity's representations are not accurate.   Trinity bases its arguments on the Magistrate Judge's recommendation to the District Judge and points to no evidence that the District Judge entered an order adopting this recommendation.   Moreover, Mountain States represents, with no rebuttal from Trinity challenging this representation, that the District Judge did not enter such an order and that the case concluded by settlement before the District Judge entered any final decision or ruled on any substantive motion.   Thus, the Court concludes that Trinity has not satisfied its burden of demonstrating that issues of collateral estoppel weigh in favor of transferring this case to the District of Colorado on the ground of judicial efficiency.[8]

---

[8]   In response to Mountain States' argument that the District Court in Colorado did not enter an order adopting the Magistrate Judge's recommendation, Trinity counters only that Mountain States argument "highlight[s that] . . . Mountain States is not content with the Magistrate Judge's ruling" and that "a judicial determination will likely need to be made concerning the preclusive effect of the Magistrate Judge's ruling with respect to Mountain States' obligation for Okland's defense costs and indemnity in the Underlying Action."   [Doc. 108 at 4].   Once again, Trinity mischaracterizes the Magistrate Judge's recommendation as a "ruling," when it is undisputed that the District Judge entered no substantive ruling regarding the Magistrate Judge's recommendation.

The Court concludes that Trinity has failed to satisfy its burden of demonstrating that a transfer to the District of Colorado would make a trial easier and more expeditious and economical.   The Court perceives no judicial efficiency from transferring this case to Colorado when the Colorado related cases Trinity identifies are no longer pending and when the Colorado Magistrate Judge's recommendation was never adopted.   Accordingly, the factor of judicial economy weighs against transfer.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that the *Chrysler* factors of Hartford's choice of forum, witness convenience, the question of the cost of making the necessary proof, questions as to the enforceability of a potential judgment, relative advantages and obstacles to a fair trial, the advantage of a local court determining questions of local law, and judicial economy weigh against transfer and that the factors of congested dockets and conflict of laws questions weigh slightly against transfer.   Because all of the factors weigh against transfer, the Court concludes that it will not transfer this case to the District of Colorado.

**IT THEREFORE IS ORDERED** that Trinity Universal Insurance Company of Kansas and Trinity Universal Insurance Company's Motion to Transfer Venue [Doc. 45], filed November 26, 2013, is hereby DENIED.

DATED this 26th day of September, 2014.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

---

Moreover, the Court already has rejected Trinity's argument that this recommendation is sufficient to weigh in favor of transfer.   That Mountain States may be aggrieved by the Magistrate Judge's recommendation does not alter the Court's holding.