## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

HARTFORD CASUALTY INSURANCE COMPANY,

       Plaintiff,

v.                                        Civ. No. 12-01110 MV/KK

TRINITY UNIVERSAL INSURANCE COMPANY OF
KANSAS, TRINITY UNIVERSAL INSURANCE OF
KANSAS, TRINITY UNIVERSAL INSURANCE COMPANY
as successor in interest to Amtrust Insurance Company of Kansas,
Inc., and ZURICH AMERICAN INSURANCE COMPANY,

       Defendants;

and

ZURICH AMERICAN INSURANCE COMPANY, TRINITY
UNIVERSAL INSURANCE COMPANY OF KANSAS, and
TRINITY UNIVERSAL INSURANCE COMPANY,

       Third-Party Plaintiffs,

v.

MOUNTAIN STATES MUTUAL CASUALTY COMPANY
and TWIN CITY FIRE INSURANCE COMPANY,

       Third-Party Defendants;

and

MOUNTAIN STATES MUTUAL CASUALTY COMPANY,

       Third-Party Plaintiff,

v.

TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS,
TRINITY UNIVERSAL INSURANCE COMPANY, ZURICH
AMERICAN INSURANCE COMPANY, and JOHN DOES I-XIX,

       Third-Party Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Second Amended Complaint by Mountain States for Cross-Claims Against the Trinity and Zurich Parties & Third-Party Complaint Against Colorado Casualty & John Does I-XIX ("Second Amended Complaint") [Doc. 197], Trinity's Motion for Partial Summary Judgment Concerning Mountain States' Third Party Complaint ("Trinity's Motion for Summary Judgment") [Doc. 163], and Zurich American Insurance Company's ("Zurich") Motion and Memorandum for Partial Summary Judgment Re:   Mountain States Mutual Casualty Company's Claims Regarding Okland ("Zurich's Motion for Summary Judgment") [Doc. 193].   The Court having considered the motions, briefs, and relevant law, finds that the Court has subject matter jurisdiction over Mountain States' claims in its Second Amended Complaint, that Trinity's Motion for Summary Judgment is not well taken and will be denied, and that Zurich's Motion for Summary Judgment is not well taken and will be denied.

## BACKGROUND

This insurance coverage lawsuit arises out of an underlying action filed in the District Court of La Plata County, Colorado ("Underlying Action"), in which the Rivergate Lofts Condominium Owners Association asserted various construction defect claims against Rivergate Loft Partners, LLC ("RLP"), the owner and developer of a multi-use condominium development located in Durango, Colorado (the "Project"), Okland Construction Company, Inc. ("Okland"), one of the general contractors for the Project, and various other defendants.   Plaintiff Hartford, which issued commercial general liability policies to RLP, filed this coverage action seeking to

recover from Trinity[1] and Zurich ("Defendants") approximately $1.6 million in defense and $150,000 in indemnity costs that Hartford incurred defending and settling the Underlying Action on RLP's behalf.

Hartford alleges that Beaty Construction, Inc. ("Beaty"), a subcontractor which did masonry work at the Project, entered into certain contracts with Okland, which obligated Beaty to name RLP as an additional insured with respect to Beaty's work on the Project.  Trinity and Zurich insured Beaty.  The insurance policies issued by Trinity and Zurich contain automatic additional insureds provisions, which Hartford contends automatically extended coverage under the policies to RLP.  Hartford alleges that Trinity and Zurich owe it the defense costs it incurred and the indemnity it paid on RLP's behalf to defend and settle the Underlying Action.

Zurich and Trinity filed third-party complaints against Mountain States Mutual Casualty Company ("Mountain States") and Twin City Fire Insurance Company.  Mountain States insured San Juan Insulation and Drywall, Inc. ("San Juan") and Vendola Plumbing and Heating, Inc. ("Vendola").  Defendants allege that Mountain States' policies covering San Juan and Vendola give rise to insurance coverage for RLP and Okland as additional insureds in the Underlying Action.  In their third-party complaints, Defendants allege that Mountain States had a duty to defend RLP in the Underlying Action under the policies they issued to San Juan and Vendola and that Mountain States failed to do so.  Zurich and Trinity further allege that to the extent they are obligated to reimburse Hartford for any sums, Mountain States is likewise obligated to pay.

Mountain States thereafter filed third-party claims against Trinity and Zurich in its First Amended Complaint for Cross-Claims Against the Trinity and Zurich Parties and Third Party

---

[1]  "Trinity" refers to Trinity Universal Insurance Company of Kansas, Trinity Insurance of Kansas, and Trinity Universal Insurance Company's.

Complaint Against John Does I-XX ("First Amended Complaint") [Doc. 161].   In support of its

third-party claims against Trinity and Zurich, Mountain States alleges, among other things, that

Defendants had a duty to defend RLP and Okland in the Underlying Action and that Defendants

are obligated to bear a share of the costs to defend and/or indemnify RLP and Okland in the

Underlying Action.   Mountain States also alleges that it paid more than its equitable share of

Okland's defense costs when it settled a "preceding sister action"—herein referred to as the

"Travelers Action"—that was a "derivative lawsuit of the Underlying Action asserted against

Mountain States by the insurer [Travelers[2]] of Okland for repayment of defense costs and fees in

the Underlying Action."   [Doc. 161 at 5].

Mountain States thereafter amended its First Amended Complaint to add third-party claims

against Colorado Casualty Insurance Company ("Colorado Casualty") and John Does I-XIX.

[Doc. 197].   In this Second Amended Complaint, Mountain States alleges the same claims against

Colorado Casualty and the John Doe defendants as it alleges against Trinity and Zurich.   [*Id.*].

In the Travelers Action, Travelers sued Mountain States, Trinity, Zurich, and State Farm

Fire and Casualty Company seeking the relief of equitable contribution from these

defendant-insurers for defense fees and costs that Travelers paid on behalf of its insured Okland in

the Underlying Action.   [Doc. 163-4 at 2].   Travelers alleged that the defending insurers had a

duty to defend Okland because of Okland's status as an additional insured under the relevant

policies issued by the defendant-insurers.   [*Id.*].   Travelers and Zurich reached a settlement in the

Travelers Action and Travelers' claims against Zurich were dismissed with prejudice on June 21,

2013.   [Doc. 193-1].   Travelers also reached a settlement with Trinity and a settlement with

---

[2]   The Phoenix Insurance Company and St. Paul Surplus Lines Insurance Company are
collectively referred to herein as "Travelers."

Mountain States, and the court dismissed with prejudice Travelers' claims against these defendants in October 2013.  [Doc. 163-16].  None of the defendants in the Travelers Action asserted crossclaims for contribution against any of their co-defendants.  [Doc. 163-5 at 10; Doc. 193-1 at 2; Doc. 163-16 at 2].

On November 6, 2014, Trinity filed its Motion for Summary Judgment, asking the Court to award partial summary judgment in Trinity's favor.  [Doc. 163].  Specifically, Trinity asked the Court to dismiss with prejudice Mountain States' "claims for relief . . . related to Mountain States' and Trinity's respective obligations for Okland's defense costs incurred in the Underlying Action, and Mountain States['] claims for relief seeking reimbursement from Trinity for Okland's defense costs incurred in the Underlying Action."   [Doc. 163-1 at 25].

On November 25, 2014, Zurich filed its Motion for Summary Judgment, asking the Court to award partial summary judgment in its favor.   [Doc. 193].   Specifically, Zurich asks the Court to dismiss with prejudice Mountain States' claims seeking allocation of Okland's defense costs and reimbursement from Zurich of those defense costs.   [*Id.* at 18].

On May 4, 2014, the Court issued an order requesting additional briefing on Trinity's Motion for Summary Judgment and Zurich's Motion for Summary Judgment ("May 4, 2014, Order") [Doc. 314].   The Court's order explained that Zurich, in support of its Motion for Summary Judgment, "contends that Mountain States' claims against it are crossclaims governed by Federal Rule of Civil Procedure 13(g), and that the claims are improper because they do not arise out of the same transaction or occurrence that is the subject matter of the original action or of a counterclaim as required by Rule 13(g)."   [*Id.* at 2 (citation omitted)].   The Court further noted that, in support of Trinity's Motion for Summary Judgment, "Trinity agrees with Zurich that Mountain States' claims are improper but, unlike Zurich, Trinity does not rely upon Rule 13(g) in

5

support of this contention," but "[r]ather . . . relies upon Rule 14(a)(3), which, in the context of defining when a defending party may bring in a third party, sets forth the claims a plaintiff may assert against a third-party defendant," and which "contains the same threshold standard as that in Rule 13(g):  *i.e.*, both Rules require the claims they permit to arise out of the transaction or occurrence that is the subject matter of the original claims in this action."   [*Id.* (citations omitted)].   The Court requested "additional briefing with respect to whether the Federal Rules upon which the parties rely [to support their motions for summary judgment] are applicable to Mountain States' claims against Trinity and Zurich."   [*Id.* at 3].

On May 4, 2014, the Court issued a *sua sponte* order on Mountain States' Second Amended Complaint for Cross-Claims Against the Trinity and Zurich Parties & Third-Party Complaint Against Colorado Casualty & John Does I-XIX ("*Sua Sponte* Order").   [Doc. 315]. The Court requested briefing on the question whether Mountain States' claims against Colorado Casualty and the John Doe defendants are proper under Federal Rule of Civil Procedure 14(a). [*Id.* at 2].   In response to the Court's *Sua Sponte* Order, Colorado Casualty argues that "by naming 'John Doe' Defendants, Mountain States cannot establish the diversity jurisdiction required in order for the Court to adjudicate the claims it seeks to pursue through its Second Amended Third-Party Complaint."   [Doc. 330 at 3].

## **STANDARD**

I.   Subject Matter Jurisdiction:   Diversity of Citizenship.

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."   *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted).   One basis of federal subject matter jurisdiction is diversity

jurisdiction under 28 U.S.C. § 1332(a).   Section 1332(a) diversity jurisdiction requires complete diversity among the parties and that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."   28 U.S.C. § 1332(a).

District courts have an independent duty to examine whether they have subject matter jurisdiction over cases and may do so *sua sponte*.   *See, e.g.*, *U.S. ex. Rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1281-82 (10th Cir. 2001), *cert. denied*, 535 U.S. 905 (2002); *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).   "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

II.   <u>Summary Judgment:   Federal Rule of Civil Procedure 56</u>.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); *accord Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999) (quoting Fed. R. Civ. P. 56(c)).   Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."   *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."   *Celotex*

*v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."   *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).   If the responding party fails to properly address the movant's assertion of fact as required by Rule 56(c), a district court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).   Upon a motion for summary judgment, a district court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."   *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).

## DISCUSSION

The Court's subject matter jurisdiction over Mountain States' Second Amended Complaint comes before the Court *sua sponte*, and the remaining issues addressed herein come before the Court on Defendants' motions for summary judgment.   Consistent with the Court's affirmative obligation to examine its jurisdiction over the claims before it and to dismiss any action where subject matter jurisdiction is lacking, the Court first determines whether it has subject matter jurisdiction over the claims asserted in Mountain States' Second Amended Complaint.

Thereafter, the Court considers the merits of Defendants' motions for summary judgment.

For the reasons set forth herein, the Court holds that it has subject matter jurisdiction over Mountain States' claims in the Second Amended Complaint.  Having so held, the Court next holds that that Trinity and Zurich have failed to establish that they are entitled to judgment as a matter of law on Mountain States' claims for pro rata allocation of Okland's defense costs and for reimbursement from Trinity and Zurich for those defense costs.   The Court rejects Defendants' contentions that Mountain States' claims are subject to dismissal as a matter of law because the claims violate the Federal Rules of Civil Procedure, because they are barred by the doctrines of claim or issue preclusion, and because they are barred by the doctrines of waiver, estoppel, and/or laches.

I.    The Court has Subject Matter Jurisdiction over Mountain States' Second Amended Complaint.

In its response to the Court's May 4, 2015, *Sua Sponte* Order requesting briefing on the question whether Mountain States' claims against Colorado Casualty and the John Doe defendants are proper under Federal Rule of Civil Procedure 14(a), Colorado Casualty argues that "by naming 'John Doe' Defendants, Mountain States cannot establish the diversity jurisdiction required in order for the Court to adjudicate the claims it seeks to pursue through its Second Amended Third-Party Complaint."   [Doc. 330 at 3].   According to Colorado Casualty, "Numerous district courts in the 10th Circuit have concluded that where, as here, the sole basis for jurisdiction over claims filed by a plaintiff in federal court is diversity, the decision to name John Doe defendants prevents the plaintiff from meeting its burden to establish diversity jurisdiction."   [*Id.* at 14-15 (citing *United Fin. Cas. Co. v. Lapp*, No. 12-CV-00432-MSK-MEH, 2013 WL 1191392, at *2 (D. Colo. Mar. 21, 2013) ("[T]his Court is inclined to defer to the 'general rule' that 'the diverse

citizenship of the fictitious defendants must be established by the plaintiff in order to continue a federal court action.'") (citing Wright, Miller *et al.*, Federal Practice & Procedure, § 3642 (2009)); *Van DeGrift v. Higgins,* 757 F. Supp. 2d 1139, 1141 (D. Utah 2010) (explaining that plaintiffs' mere statement identifying "John Does 1-20 and any and all other successor entities to Lehman Brothers" said nothing of citizenship and holding that plaintiffs therefore failed to establish diversity)].   Colorado Casualty further argues that "[c]ourts in other Circuits have reached this same conclusion."   [*Id.* at 15 (citing *Howell v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir. 1997) (holding that "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits")) (additional citations omitted)].   Colorado Casualty contends that "[t]his Court's exercise of jurisdiction, under circumstances where Mountain States has chosen to name John Doe Defendants[,] . . . is inconsistent with the jurisdictional requirements of 28 U.S.C. § 1332," and therefore concludes that the Court should dismiss Mountain States' claims for lack of subject matter jurisdiction.   [*Id.*].

The Court is not persuaded.   Admittedly, because diversity jurisdiction must be proved by the plaintiff rather than assumed as a default, *see Penteco Corp. Ltd. V. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)), this Court cannot presume that the John Doe defendants' citizenship is diverse.   *See, e.g.*, Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3642, pp. 144-46 (2d ed. 1985) ("The general rule, reflected in the citations in the note below, has been that, on challenge, the diverse citizenship of the fictitious defendants must be established by the plaintiff in order to continue a federal court action."); *Moore v. General Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir. 1996) (explaining that "[b]ecause diversity jurisdiction must be

proved by the plaintiff rather than assumed as a default, . . . this court cannot presume that Does 1-10 are diverse with respect to the plaintiff").[3]   Mountain States alleges, however, in its complaint that "[u]pon information and belief, Third-Party John Doe insurer Defendants I-XX are not citizens of New Mexico, Colorado, Texas or New York, the states of citizenship for the existing parties in the case at bar."   [Doc. 161 at 3, ¶ 10].   This case, therefore, is distinguishable from cases requiring dismissal for failure "to make [a] good-faith allegation of citizenship of substantive 'John Doe' defendants, as required to establish diversity jurisdiction," *DeGrift*, 757 F. Supp. 2d at 1141 (holding that where "plaintiffs simply named as defendants 'John Does 1-20 and any and all other successor entities to' the corporation, but said nothing of these defendants' citizenship," plaintiffs failed to establish diversity of citizenship).   Thus, the Court holds that it has diversity jurisdiction over Mountain States' Second Amended Complaint even though Mountain States has pled claims against John Doe defendants.

---

[3]   There is a split of authority whether the presence of John Doe defendants destroys diversity jurisdiction.   Several courts, citing the Seventh Circuit's opinion in *Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir. 1997), for its holding that "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits," *see id.*, have held that the mere presence of John Doe defendants destroy jurisdiction.   *See, e.g.*, *Meng v. Schwartz*, 305 F. Supp. 2d 49, 55 (D.D.C. 2004); *Stephens v. Halliburton Co.*, No. A.3:02-CV-1442-L, 2003 WL 22077752, at *6 (N.D. Tex. Sept. 5, 2003); *Holz v. Terre Haute Reg'l Hosp.*, 123 F. App'x 712, 713-14 (7th Cir. 2005) (same).   Other courts, however, have determined that the mere presence of Doe defendants does not destroy diversity jurisdiction unless the defendants are later revealed to have the same citizenship as the plaintiff.   *See Macheras v. Center Art Galleries-Hawaii, Inc.*, 776 F. Supp. 1436, 1440 (D. Haw. 1991); *see also Johnson v. Rite Aid*, No. 10-2012(DMC), 2011 WL 2580375, at *1 (D.N.J. June 28, 2011); *Doe v. Ciolli*, 611 F. Supp. 2d 216, 220 (D. Conn. 2009).   The Court is persuaded, interpreting the plain text of 28 U.S.C. § 1332 and considering that the jurisdiction of a federal court is limited and to be narrowly construed, that adopting the view that naming John Doe defendants in a Section 1332 action, without a good faith allegation establishing that their citizenship does not destroy diversity jurisdiction, is appropriate. Thus, the Court holds that Mountain States must have pled or shown that the citizenship of each of the John Doe defendants will not destroy diversity.

The Court also holds that it has diversity jurisdiction over Mountain States claims on the second ground that the John Doe defendants are nominal parties.   If named John Doe defendants are nominal parties, a district court may disregard them for purposes of federal diversity jurisdiction.   *See, e.g.*, *Rockwell Int'l Credit Corp. v. U.S. Aircraft Ins. Group*, 823 F.2d 302, 304 (9th Cir. 1987), *overruled on other grounds by Partington v. Gedan*, 923 F.2d 686 (9th Cir .1991); *U.S. Fire Ins. Co., Inc. v. Charter Financial Group, Inc.*, 851 F.2d 957, 959 n.3 (7th Cir. 1988). Generally speaking, John Doe defendants are considered nominal when they are included in the complaint "in the event that during discovery [a plaintiff] identifie[s] any additional defendants he wishe[s] to add to the suit."   *Moore*, 91 F.3d at 850.   On the other hand, John Doe defendants are not nominal if they are included because "the plaintiff knows that there are specific additional defendants he wishes to sue, but is simply uncertain as to their names."   *Id.*

To the extent Defendants contend that either State Farm or Travelers are the John Doe defendants Mountain States wishes to name, the Court is not persuaded that these parties constitute "specific additional defendants" that Mountain States "wishes to sue, but is simply uncertain as to their names."   *Id.*   Mountain States is aware of the identities of Travelers and State Farm and aware, by virtue of the Travelers Action, of their potential coverage obligations.   Thus, the Court declines to construe Mountain States' claims against the John Doe defendants as marking a placeholder for the addition of Travelers or State Farm to this litigation.   Rather, the Court construes the claims against the John Doe defendants as placeholders "in the event that during discovery [Mountain States] identifie[s] any additional defendants [it] wishe[s] to add to the suit." *Id.*   As such, the Court concludes that the John Doe defendants constitute mere nominal parties and that their inclusion does not destroy diversity jurisdiction.

Finally, the Court notes that even if the John Doe defendants were not nominal parties and even if the complaint did not contain a good faith allegation of diverse citizenship, the Court nonetheless would not be inclined to dismiss Mountain States' claims against Colorado Casualty. Federal Rule of Civil Procedure 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action," and that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."   Fed. R. Civ. P. 21; *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) (explaining that "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered"); *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 845-46 (10th Cir. 1988) ("[I]t is well-settled that nondiverse parties may be dismissed in order to preserve diversity jurisdiction.") (citations omitted), *cert. denied*, 489 U.S. 1080 (1989).   Thus, under this rule, the Court would not dismiss Mountain States' claims but rather either would issue an order to show cause why Mountain States' Second Amended Complaint should not be dismissed for lack of subject matter jurisdiction under 28 U.S.C. Section 1332, or would allow Mountain States to amend its complaint to eliminate the John Doe defendants.   *See, e.g.*, *Van DeGrift*, 757 F. Supp. 2d at 1141 (ordering the plaintiffs to show cause why their complaint should not be dismissed for lack of subject matter jurisdiction under Section 1332 or, alternatively, to amend their complaint or voluntarily withdraw their action from the federal docket).

For all of the foregoing reasons, the Court concludes that it has subject matter jurisdiction over Mountain States' claims.   Therefore, having held that it has the power to hear Mountain States' claims, the Court next turns to Defendants' procedural and substantive arguments in favor of summary judgment.

II.     Trinity and Zurich are not Entitled to Summary Judgment on Mountain States' Claims on the Ground that Mountain States' Claims Violate the Federal Rules of Civil Procedure.

Trinity and Zurich argue that they are entitled to summary judgment on Mountain States' claims against them on the ground that Mountain States' claims violate the Federal Rules of Civil Procedure.   The Court is not persuaded.   First, as discussed herein, even if the Court were to conclude that Mountain States' claims violate the Federal Rules, a violation of the Court's procedural rules is not a basis for granting summary judgment.   Summary judgment is a vehicle for delivering a substantive ruling as a matter of law on a plaintiff's claims, and Defendants provide no authority for the proposition that a violation of the rules of procedure defining which crossclaims are permissible or when dismissal for failure to join an indispensable party is required can result in the dismissal with prejudice Mountain States' claims pursuant to Rule 56.   Second, as described herein, although Defendants have argued that Mountain States' claims violate Rules 14(a)(3), 13(g), and 19, Defendants have failed to demonstrate that any of those rules govern Mountain States' claims.   Thus, for these reasons, the Court rejects Defendants' arguments in favor of summary judgment.

A.     A Violation of Federal Rules of Civil Procedure 13, 14, or 19 is not a Basis for Summary Judgment.

Trinity and Zurich both contend that they are entitled to summary judgment on Mountain States' claims because Mountain States filed its claims in violation of Federal Rules of Civil Procedure 13, 14, and 19.   This argument lacks merit.   The appropriate remedy for violation of the Court's rules of procedure is not judgment as a matter of law (*i.e.*, dismissal with prejudice) pursuant to Rule 56, but rather is dismissal without prejudice pursuant to Rule 12(b).   Summary judgment is vehicle for granting judgment on the merits of a claim and it is only appropriate when a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants cannot demonstrate that they are entitled to judgment as a matter of law on the merits of Mountain States' substantive claims for equitable contribution and reimbursement by pointing to violations of this Court's rules of procedure. The Court therefore denies Defendants' motions for summary judgment on this ground.

Defendants claim that they properly seek summary judgment pursuant to Rule 56 because Rule 12(h)(2) and subsections (c) and (d) of Rule 12 authorize them to bring a motion for summary judgment for failure to comply with Rules 14(a)(3) and 13(g). Rule 12(h)(2) provides in relevant part that "[f]ailure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). Trinity relies upon Rule 12(h)(2)'s language that "failure to state a claim upon which relief can be granted" may be raised by "motion under Rule 12(c) and argues that under Rule 12(d), which provides that "if on a motion under 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," it was authorized to present its motion as one for summary judgment. [Doc. 328 at 4 (citing Fed. R. Civ. P. 12(d), (h))]. Zurich similarly contends that under Rule 12(h)(2), a party can raise the defense of failure to join a party via motion, and then argues that "when made via motion, if the motion considers facts outside the pleadings, the court must treat the motion as a motion for summary judgment." [Doc. 327 at 4 (citing Fed. R. Civ. P. 12(d)]. The Court is not persuaded by either of these arguments.

To support their argument that Rule 56 is the proper vehicle by which to raise a challenge to Mountain States' claims under Rules 13, 14, and 19, Defendants rely upon Rules 12(h)(2) and

12(d).   Defendants reason that Rule 12(h)(2) provides that "failure to state a claim upon which relief can be granted" may be raised by "motion under Rule 12(c)" and that Rule 12(d) provides that "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."   Fed. R. Civ. P. 12(h)(2) and (d).   [Doc. 328 at 4].   Defendants' reasoning is flawed.

First and foremost, Defendants' cannot rely upon Rule 12(d) to justify their decision to bring a procedural challenge to Mountain States' claims by way of a Rule 56 motion because Defendants did not move for judgment on the pleadings, and, even if Defendants had so moved, it would be the Court's prerogative, not a party's, to consider matters outside of the pleadings and thereby convert a Rule 12(c) motion for judgment on the pleadings into a Rule 56 motion for summary judgment.   This is because, by its terms, Rule 12(d) applies only when a movant brings a Rule 12(b)(6) and Rule 12(c) motion, and Rule 12(d) authorizes only the Court, and not a party, to convert the motion into one for summary judgment.

Furthermore, Defendants cannot rely upon Rule 12(d) to authorize their procedural challenge to Mountain States' claims, because Rule 12(d) authorizes conversion only when a party brings a Rule 12(c) motion challenging the substantive merits of claims and defenses raised in the pleadings and not when a party brings a Rule 12(c) motion raising procedural defenses enumerated in Rule 12(b).   *See* Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice & Procedure* § 1367 (3d ed.).   While Rule 12(c) most commonly serves as a vehicle for disposing of cases on the merits when there is no dispute in the pleadings, Rule 12(c) also serves as a vehicle for launching Rule 12(b) procedural challenges.   *See id.* (explaining that "Rule 12(c) judgment on the pleadings procedure primarily is addressed to the . . . function of disposing of cases on the basis of the underlying substantive merits of the parties' claims and defenses as they are revealed in the

16

formal pleadings," but, consistent with the common law in which the rule has its historical roots, it also "may be employed by the defendant as a vehicle for raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings").[4]  When a Rule 12(c) motion is being used for this latter purpose—*i.e.*, as a vehicle to raise procedural challenges to the pleadings—a district court "appl[ies] the same standards for granting the appropriate relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), (6), or (7) or under Rule 12(f)."  *Id.* ("As has been indicated by a considerable number of federal courts, . . . if any of these procedural defects are asserted upon a Rule 12(c) motion, presumably the district court will apply the same standards for granting the appropriate relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), (6), or (7) or under Rule 12(f).").  "The mere fact that these procedural defects are raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines what essentially are Rule 12(b) matters."  *Id.* (explaining in this procedural "context, Rule 12(c) is merely serving as an auxiliary device that enables a party to assert certain procedural defenses after the close of the pleadings," and, that, for example, "if a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)").

---

[4]   It is Rule 12(h) which enables movants to utilize Rule 12(c) to raise challenges typically authorized by Rule 12(b).  *See* Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice & Procedure* § 1367 (3d ed.) (explaining that "Rule 12(h) . . . provides that the defenses of failure to state a claim upon which relief can be granted, failure to join a party under Rule 19 without whom the action cannot proceed, and failure to state a legal defense to a claim may be raised on a motion for judgment on the pleadings or at the trial on the merits," and that "[i]n this context, Rule 12(c) is merely serving as an auxiliary or supplementary procedural device to determine the sufficiency of the case before proceeding any further and investing additional resources in it").

Consistent with the foregoing distinctions regarding the standards governing Rule 12(c) substantive and procedural challenges, the Court concludes that even if Defendants had brought motions pursuant to Rule 12(c), this Court would not have applied Rule 12(d) to convert their motions to motions for summary judgment, because Defendants' objections to Mountain States' claims under Rules 13, 14, and 19 are not challenges to the merits of Mountain States' equitable contribution and reimbursement claims, but rather are challenges to the procedural sufficiency of Mountain States' claims.  Thus, the appropriate standard by which to rule on Defendants' procedural objections to Mountain States' claims in its First Amended Complaint would not be Rule 56 but rather the same standard for ruling upon other procedural objections brought under Rule 12(b) or 12(f).  *See id.*

Thus, for foregoing reasons, the Court holds that a motion for summary judgment is not the appropriate vehicle to challenge Mountain States' alleged violation of Rules, 13, 14, or 19. Accordingly, the Court denies Defendants' motions for summary judgment to the extent they are premised upon a purported violation of the Federal Rules.

B.      Mountain States' Claims Do Not Violate Rules 13 14, or 19 of the Federal Rules of Civil Procedure.

In addition to denying Defendants' motions for summary judgment on the ground that a procedural violation of this Court's rules cannot support the entry of judgment as a matter of law on the substance of Mountain States' claims, the Court also denies the motions on the ground that Mountain States' claims do not violate Rules 13, 14, or 19 of the Federal Rules of Civil Procedure. To the contrary, as explained herein, Rules 13(g) and 14(a)(3) are inapplicable and Rule 19 does not require this Court to dismiss Mountain States' claims for failure to join an indispensable party.

Thus, Mountain States' claims are not subject to dismissal for violation of these Federal Rules of Civil Procedure.

>    1.    Mountain States' Claims are Not Subject to Dismissal Pursuant to Federal Rule of Civil Procedure 14(a)(3).

Trinity asks this Court to grant summary judgment on Mountain States' claims in its First Amended Complaint on the ground that the claims do not arise out of the same transaction or occurrence that is the subject matter of the original claims in the action as required by Federal Rule of Civil Procedure 14(a)(3). Rule 14 governs third-party practice, and Rule 14(a)(3), in particular, sets forth the claims that an original plaintiff may assert against a third-party defendant brought into the action. [Doc. 163-1 at 11 (citing Fed. R. Civ. P. 14(a)(3))]. Rule 14(a)(3) provides that the "plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a)(3). Although Trinity relies upon Rule 14(a)(3) as a basis for summary judgment in its favor, Rule 14(a)(3), as well as the subject matter limitation contained therein, does not apply to Mountain States' claims against Trinity.

Rule 14(a)(3), by its terms, defines the claims that an original plaintiff may assert against a third-party defendant. *See id*. Mountain States, however, is not an original plaintiff (or, even, viz-a-viz Trinity and Zurich, a third-party plaintiff), and Trinity and Zurich are not third-party defendants to Mountain States' claims. Rather, Mountain States, relative to Trinity and Zurich, properly is characterized as a counterclaimant, not a plaintiff, and Trinity and Zurich are properly characterized as counter-defendants. Thus, because Mountain States' claims against Trinity are not third-party claims, but rather are counterclaims against an existing opposing party, Rule 14(a)(3)'s subject matter limitation is not applicable to Mountain States' claims against Trinity.

The Court therefore rejects Trinity's contention that dismissal is appropriate because Mountain States' claims do not satisfy the requirements of Rule 14(a)(3).

A proper application of Rule 14 to the claims before the Court is that Trinity's and Zurich's claims against Mountain States are governed by Rule 14(a)(1).   Trinity and Zurich are defending parties to the original plaintiff Hartford's claims against them, and Rule 14(a)(1) provides that Trinity and Zurich may, as third-party plaintiffs, serve third-party complaints on a nonparty such as Mountain States.   *See* Fed. R. Civ. P. 14(a)(1).

Rule 14(a)(3), in turn, governs Hartford's claims against Mountain States, and not, as Trinity contends, Mountain States' claims against Trinity.   As the Court explained, Rule 14(a)(3) defines the claims that the original plaintiff—*i.e.*, Hartford—may assert against the third-party defendant—*i.e.*, Mountain States—and provides that those claims (not Mountain States' claims) must arise out of the same transaction or occurrence that is the subject matter of the plaintiff's claims against the third-party plaintiffs Trinity and Zurich.   *See* Fed. R. Civ. P. 14(a)(3).

Rule 14(a)(2), in contrast, governs Mountain States' claims against Trinity and Zurich, for it is this rule that sets forth the claims that the third-party defendant—*i.e.*, Mountain States—may bring against the third-party plaintiffs—*i.e.*, Trinity and Zurich.   Rule 14(a)(2), however, contains no subject matter limitation that precludes Mountain States' claims against Trinity (or Zurich). Instead, Rule 14(a)(2) provides that the party "served with the . . . third-party complaint—'the third-party defendant,'" Fed. R. Civ. P. 14(a)(2), "must assert any counterclaim against the third-party plaintiff under Rule 13(a) and may assert any counterclaim against the third-party plaintiff under Rule 13(b)," Fed. R. Civ. P. 14(a)(2)(B).   Although Rule 13(a) defines a compulsory counterclaim as one which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," Rule 13(b), which governs permissive

counterclaims, contains no such subject matter limitation and instead provides that a "pleading may state as a counterclaim against an opposing party *any* claim that is not compulsory."   Fed. R. Civ. P. 13(a), (b).   Thus, even assuming *arguendo* that Trinity had argued that Rule 14(a)(2) applies, because subsection (a)(2) contains no necessary subject matter limitation, it cannot vitiate Mountain States' claims.

> 2.     Mountain States' Claims are Not Subject to Dismissal Pursuant to Federal Rule of Civil Procedure 13(g).

Zurich likewise asks this Court to grant summary judgment on Mountain States' claims in its First Amended Complaint against it on the ground that the claims do not arise out of the same transaction or occurrence that is the subject matter of the original claims in the action.   Although Zurich's argument is similar to Trinity's, in that both rely upon rules limiting the subject matter of claims, Zurich, unlike Trinity, does not rely upon Rule 14(a)(3).   Instead, Zurich contends that Mountain States' claims against it are crossclaims governed by Federal Rule of Civil Procedure 13(g), which contains a similar limitation on subject matter as that in Rule 14(a)(3).   Specifically, Rule 13(g) provides that "[a] pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is that is the subject matter of the original action or of a counterclaim."   Fed. R. Civ. P. 13(g).   Zurich argues that Mountain States' claims are improper because they do not arise out of the same transaction or occurrence that is the subject matter of the original action or of a counterclaim as required by Rule 13(g) and that the Court should dismiss the claims on this ground.   [Doc. 193 at 6-7 (citing Fed. R. Civ. P. 13(g))].

Although Rule 13(g) limits crossclaims to claims that "arise[] out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim," Fed. R. Civ. P.

13(g), Mountain States' claims against Zurich are not crossclaims governed by Rule 13(g).   Rule 13(g) defines crossclaims as claims against a co-party.   *See id.* ("A pleading may state as a crossclaim any claim by one party against a coparty.").   Mountain States, however, is not a co-party of Zurich's but rather is an opposing party.   Thus, Rule 13(g), and its subject matter limitation, does not apply to Mountain States' claims against Zurich.

Rule 13 defines Mountain States' claims brought against an opposing party such as Zurich as counterclaims, and the rule's provisions governing counterclaims does not necessarily restrict them to claims of a particular subject matter.   As previously discussed, Rule 13(b), which governs permissive counterclaims, does not contain the same subject matter limitation set forth in Rule 13(g) governing crossclaims.   Rather, Rule 13(b), to the contrary, provides that "a pleading may state as a counterclaim against an opposing party *any* claim that is not compulsory."   *Id.* (emphasis added).[5]

For the foregoing reasons, the Court holds that Mountain States' claims are not governed by the crossclaim standard set forth in Rule 13(g) and that they therefore need not arise out of the same transaction or occurrence as the original subject matter of the action.   *See id.*   Instead, they are governed by the counterclaim standard set forth in Rule 13(a) and (b), and Rule 13 does not necessarily restrict the subject matter of counterclaims that may be brought.   *See* Fed. R. Civ. P. 13(a), (b).   Thus, the Court rejects Zurich's contention that Mountain States' claims are subject to dismissal pursuant to Rule 13(g).

---

[5]   Rule 13(a), in contrast, which governs compulsory counterclaims, does contain a subject matter limitation.   *See* Fed. R. Civ. P. 13(a) ("A pleading must state as a counterclaim any claim that . . . the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.").

3.   <u>Movants should not Advance Legal Arguments Premised upon Rules of Procedure Known to be Inapplicable.</u>

In response to the Court's May 4, 2015, Order [Doc. 314] requesting additional briefing on the characterization of Mountain States' claims against Defendants, Zurich concedes that Mountain States' claims properly are characterized as counterclaims and not crossclaims.   [Doc. 327 at 2].   Zurich maintains, however, that Zurich did not "characterize[]" Mountain States' claims as crossclaims but rather only "analyzed and responded" to the claims that Mountain States pled against it as crossclaims "solely because that is how Mountain States characterized its claims against Zurich"   [*Id.*].   Trinity similarly asserts that it analyzed Mountain States' claims under Rule 14(a)(3) only "[b]ecause Mountain States initially brought its claims against Trinity in a Third-Party Complaint," [Doc. 328 at 2], and that "[i]f Mountain States now believes its claims . . . should be characterized as, and/or amended to be, counterclaims, then Trinity agrees such claims would be governed by Rule 13(b), but Mountain States has not done so," [*id.* at 3].

Defendants' responses to the Court's May 4, 2015, Order suggest that both Zurich and Trinity were aware that Mountain States had mischaracterized its claims either as crossclaims or third party claims and that, although Defendants knew of this mischaracterization, Defendants followed suit simply because that is how Mountain States defined its claims.   Mountain States now concedes that its claims are counterclaims and that it inadvertently mislabeled the claims as crossclaims.   [Doc. 321 at 6 n.2].   While Mountain States' unintentional misapplication of the Federal Rules is unfortunate, to the extent that Zurich made a purposeful decision to "analyze[]" a claim applying a federal rule it knew was inapplicable and Trinity adopted Mountain States' erroneous characterization of its claims as third-party claims when it knew that the claims were counterclaims, these decisions constitute a knowing misapplication of law to fact.

23

If Defendants were, in fact, aware of Mountain States' mistake, then Defendants did not simply commit the omission of failing to correct Mountain States' error, but also committed the affirmative act of filing motions seeking an ultimate form of dispositive relief—judgment as a matter of law under Rule 56—from this Court on the basis of rules they knew were inapplicable. Mountain States' mistaken characterization of its claims did not—assuming Defendants were aware of the mistake—give Defendants license to present this Court with motions for affirmative relief premised upon an erroneous application of law to fact, particularly when the purposeful misapplication of the law to fact could have been outcome determinative.[6]   Attorneys presenting arguments to this Court by written motion certify that to the best of their belief the claims and legal contentions they make are "warranted by existing law," and, under this rule, attorneys may not knowingly advance a legally unwarranted position, such as the purposeful misconstruction of counterclaims as crossclaims or third-party claims simply because an opposing party inadvertently mischaracterizes its claims.   *See* Fed. R. Civ. P. 11(b).

4.   Mountain States' Claims are Not Subject to Dismissal for Failure to Join an Indispensable Party.

Zurich contends that Mountain States' First Amended Complaint asks the Court to allocate Okland's defense and indemnity obligations among the insurers in this case and "all other similarly situated insurers."   [Doc. 193 at 7 (citing Doc. 161 ¶¶ 15, 16, 19, 21, 22, 24, 30, 31, 34, 37-42)].   Consequently, Zurich argues, "all other similarly situated insurers are necessary and indispensable parties to this action," but "not all of these other insurers can be joined in this action."   [*Id.* at 8].   Therefore, Zurich maintains that this case "must be dismissed because absent

---

[6]   The subject matter limitations upon which Defendants relied were contained only in the inapplicable rules upon which they relied (*i.e.*, Rules 13(g) and 14(a)(3)) and were not present in the rules that actually applied (*i.e.*, Rules 13(a), 13(b) and 14(a)(2)).

a ruling as to the allocable share of obligation of the omitted carriers' policies, there can be no meaningful declaratory judgment as to the obligations of the named carriers."   [*Id.*].

Federal Rule of Civil Procedure 19(a) sets forth the standard for determining whether a party is "required" to be joined in an action and Rule 19(b) establishes the standard for determining, whether, if a party is required but joinder is not feasible, the action should proceed among the existing parties or should be dismissed for failure to join an indispensable party.  *See* Fed. R. Civ. P. 19(a), (b).   Under this standard, the Court must first determine pursuant to subsection (a) whether the absent insurers are "required" and, only if they are required, next determine pursuant to subsection (b) whether joinder is feasible or, if not feasible, whether the action should continue in the absence of the required parties or be dismissed.  *See id.*

a.      Law Regarding Equitable Contribution.

The Court first sets forth the law regarding Mountain States' claim for equitable contribution because it is relevant to the Court's procedural inquiry under Rule 19.  "In the insurance context, the right to [equitable] contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others."  *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr. 2d 296, 303-04 (Cal. Ct. App. 1998) (citations omitted). "Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured."  *Id.* "Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to

their respective coverage of the risk."[7]   *Id.*

"The doctrine of equitable contribution applies to insurers who share the *same* level of obligation on the *same* risk as to the *same* insured."   *Id.* at 304 n.4.   "This right of equitable contribution belongs to each insurer individually.   It is not based on any right of subrogation to the rights of the insured, and is not equivalent to standing in the shoes of the insured."   *Id.* at 304 (internal quotation marks and citations omitted).   "Instead, the reciprocal contribution rights of coinsurers who insure the same risk are based on the equitable principle that the burden of indemnifying or defending the insured with whom each has independently contracted should be borne by all the insurance carriers together, with the loss equitably distributed among those who share liability for it in direct ratio to the proportion each insurer's coverage bears to the total coverage provided by all the insurance polices."   *Id.* (citations omitted).   "As a matter of equity, insurers of the same risk may sue each other for contribution.   This right is not a matter of contract, but flows from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.   The idea is that the insurers are equally bound, so therefore they 'all should contribute to the payment."   *Id.* (internal quotation marks and citation omitted).[8]

---

[7]   "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others."   *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr. 2d 296, 303-04 (Cal. Ct. App. 1998) (citations omitted).

[8]   "The equitable right to contribution between coinsurers is not based on, and indeed has nothing to do with the coinsurers' subrogation to the rights of their insured against the party legally and primarily responsible for the loss.   Whereas subrogation requires that the party to be charged be in an 'equitable position . . . inferior to that of the insurer' such that justice requires the entire loss be shifted from the insurer to the party to be charged . . . , contribution permits liability for the loss to be allocated among the various insurers without regard to questions of comparative fault or the relative equities between the insurers."   *Id.* at 305 (quoting *Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.*, 60 Cal. Rptr. 2d 591 (Cal. Ct. App. 1997)).

An insurer's right to equitable contribution is separate and distinct from its legal duty to defend its insured, the latter of which arises under the insurance contract (while the former arises under principles of equity). While an insurer's duty to defend its insured is a joint and several obligation, an insurer's right to equitable contribution is not. *See Travelers Indem. Co. of Am. v. AAA Waterproofing, Inc.*, No. 10-CV-02826-WJM-KMT, 2014 WL 201726, *3 n.3 (D. Colo. Jan. 17, 2014) (distinguishing an insurer's contractual duty to defend its insured, which is a joint and several legal obligation, from an insurer's non-contractual obligation to contribute its share of a mutual insured's defense costs, which is a pro rata equitable obligation, and explaining that an insurer's right to seek equitable contribution is not joint and several and therefore does not allow an insurer to "shift[] completely" its monetary contribution "from the insurer seeking contribution onto any other co-insurer, as that would inevitably result in a nearly interminable string of actions for equitable contribution"). The cases in Colorado that the parties cite confirm the distinction between insurers' joint and several liability to a shared insured, which arises from the insurers' contractual duty to defend, and insurers' pro rata obligation of contribution to co-insurers, which arises from principles of equity. *Compare D.R. Horton, Inc.-Denver v. Mountain States Mut. Cas. Co.*, No. 12-CV-01080-RJB, 2013 WL 674032, *3 (D. Colo. Feb. 25, 2013) (explaining that when multiple insurers have the same duty to defend, such as when there is more than one primary insurer, that duty is joint and several) *and D.R. Horton Inc.-Denver v. Travelers Indem. Co.*, No. 10-CV-02826, 2012 WL 5363370, *8-9 (D. Colo. Oct. 31, 2012) (collecting and analyzing cases from other jurisdictions and secondary sources and concluding that although "Colorado courts have not affirmatively resolved the issue of whether a liability insurer's duty to defend is a joint-and-several obligation where there are other insurers who also have a duty to defend," "there is sufficient authority indicating that, if the Colorado Supreme Court were to address the issue, it

27

would hold that each liability insurer has a duty to provide a complete defense, such that a liability insurer who breaches this duty can be found liable for the entire amount of the defense fees and costs"), *with Nat'l Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P.2d 741 (Colo. 1992) (following the majority rule and holding that the plaintiff-insurer is "entitled to pro rata contribution from [its co-insurer] of its defense costs and settlement payment[s]"); *Horton*, 2013 WL 674032, at *3 (explaining that although insurers have joint and several liability towards their shared insured, "[t]his is not to say that there should not or will not be an apportionment of the defense costs among the insurers" and holding that this latter separate issue of equitable contribution "is a matter to be worked out among the insurers and, if they cannot do so, then by a court").

> b. Even if the Absent Insurers were "Required" Under Rule 19(a)(1)(A), they are not Indispensable Under Rule 19(b).

Rule 19(a) provides that a party is "required" if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."   Fed. R. Civ. P. 19(a)(1).

Zurich asserts that the absent insurers are required under the first prong of this test. Invoking Rule 19(a)(1)(A), Zurich argues that the Court cannot afford complete relief among existing parties because Mountain States' complaint asks the Court to determine the "liability" of other absent insurers toward Okland and to determine the allocation of Okland's defense and indemnity obligations among all carriers with a duty to defend.   [Doc. 193 at 10].   Mountain

28

States' First Amended Complaint seeks the following relief:   (1) that the Court declare "Mountain States owes no duty to indemnify or defend either RLP or Okland in the Underlying Action"; (2) that the Court declare "that, if and only if the Court finds a duty to indemnify or defend . . . is owed by Mountain States to RLP or Okland, the costs arising from such duty shall be equitably borne among all insurers (a) having issued an insurance policy to *any* subcontractor performing work on the Condominiums where (b) such subcontractor executed a service contract with Okland requiring that RLP and/or Okland be named as additional insureds on such policy"; (3) that the Court declare Mountain States is entitled to reimbursement from the Trinity, Zurich, Colorado Casualty and John Doe Defendants "of payments already made on behalf of Okland under principles of equitable contribution, equitable subrogation and unjust enrichment"; and (4) that the Court declare "Mountain States is entitled to an offset for any prospective payments ordered to be made on behalf of RLP, which offset reflects equitable allocation among the Trinity, Zurich, Colorado Casualty and John Doe Defendants of costs for RLP in the Underlying Action."   [Doc. 161 at 11].

Only Mountain States' second request potentially seeks relief from a "required" absent party within the meaning of Rule 19(a)(1)(A).[9]   A party is "required" under Rule 19(a)(1)(A) if "in that person's absence, the court cannot accord complete relief among existing parties."   Fed. R. Civ. P. 19(a)(1)(A).   Mountain States' second request for relief seeks a declaration from the Court that the duty to defend or indemnify "shall be equitably born among *all* insurers" providing coverage to Okland, and not simply the insurers named in Mountain States' complaint.   Complete

---

[9]   Mountain States' remaining three requests for relief do not implicate Rule 19(a)(1)(A), because Mountain States asks the Court only to declare the rights and obligations of parties named in its complaint.

relief among existing parties arguably may not be possible because, for example, the Court may not be able to assess the legal obligations and/or equitable pro rata shares of insurers absent from this litigation.[10]

The Court need not determine, however, whether the absent insurers are "required" within the meaning of Rule 19(a)(1)(A), because, even if joinder of the absent insurers were not "feasible," the Court could "in equity and good conscience" allow the action to proceed within the meaning of Rule 19(b).  Fed. R. Civ. P. 19(b).  In deciding whether a required absent party is indispensable under Rule 19(b), the Court should consider the following factors:   "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by:   (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."   *Id.*   The Court holds that, on balance, the factors weigh in favor of retaining the action.

With respect to the first factor, concededly, if the Court were to enter an order declaring that the duty to defend or indemnify "shall be equitably born among *all* insurers" potentially liable for Okland's defense costs, and not simply the insurers named in Mountain States' complaint, this declaration could prejudice the absent insurers.   To decide the absent insurers' equitable shares of

---

[10]   To the extent Zurich contends that the Court cannot grant complete relief to the parties because of the existence of additional potential contribution actions involving the absent insurers, the Court rejects this argument.   Rule 19(a)(1)(A) is meant to determine complete relief between and among *parties* to this action not among or between parties and non-parties.   *See* Fed. R. Civ. P. 19(a)(1)(A) (explaining that a person is "required" if "in that person's absence, the court cannot accord complete relief *among existing parties*"); *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 313 (3d Cir. 2007) (explaining that under Rule 19(a)(1)(A), the court limits its inquiry to whether it can "grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial").

Okland's defense costs would require the Court "to interpret the terms, conditions, and exclusions contained in the policies of both the named and omitted carriers' policies." *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 398, 400 (N.D. Ill. 1994). In so ruling, the Court would be required to make material rulings on the policies issued by the absent insurers, including whether the absent carriers have paid or are liable to pay their policy limits. "Such a ruling would be both material and highly prejudicial to the interests of the absent carriers." *Id.* As one court explained, "Should [the court] decide that the absent carriers' policies provide coverage and that a certain trigger of coverage will apply to the absent insurers' policies, another court may be inclined to reach a similar conclusion in order to avoid a conflict in judgments." *Shell Oil*, 158 F.R.D. at 400-01 (citing *City of Littleton v. Commercial Union Assurance Co.*, 133 F.R.D. 159, 164 (D. Colo. 1990)). "While the underlying carriers, to the extent that they are not parties to this action, may not be precluded from relitigating the meaning of their own policies in state court, a state court may be inclined, albeit not required, to adopt an interpretation similar to that which this court decides is correct." *Id.* at 401. "The absent insurers, then, will have lost the opportunity to present their arguments regarding the interpretation of their policies at the time when they would be most forceful, *i.e.*, when the interpretation of the contract terms was first litigated." *Id.* (citing *Littleton*, 133 F.R.D. at 164).

The Court, however, could wholly avoid any prejudice that the omitted insurers would suffer as a result of a judgment tendered in their absence by applying the second factor under Rule 19(b), *i.e.*, shaping the relief, if any, that the Court enters. If the Court finds a duty to indemnify or defend is owed by Mountain States, and the Court determines that equitable contribution is appropriate, the Court need only grant Mountain States a portion of the relief it seeks. Specifically, the Court need only declare that the costs arising from any duty to defend or

31

indemnify should be born equitably among all insurers *present in this action*, namely, by the five defendants and by any other John Doe defendants joined by Mountain States.  By shaping the relief in this manner, the Court would eliminate any prejudice to the absent insurers.

The Court further concludes that a judgment rendered in the absence of these insurers would, consistent with the third factor set forth in Rule 19(b), be adequate, for equitably distributing costs among five insurers or any other insurers before the Court would provide Mountain States with meaningful affirmative declaratory relief.  That Mountain States' relief would not be as complete as it would be if *all* insurers were before the Court does not render the relief inadequate.  Finally, if the Court were to dismiss Mountain States' claims for nonjoinder, Mountain States would have no adequate remedy, which is the fourth factor the Court must weigh under Rule 19(b).   Zurich has argued that Travelers is one of the absent insurers "required" in this litigation and that Mountain States cannot name Travelers in this action because Mountain States already settled Travelers' claims against it for allocation of Okland's defense costs.   Similarly, Zurich and Trinity independently have settled Travelers' claims against them for allocation of Okland's defense costs.   Thus, consistent with Zurich's argument, there is no alternative forum in which Mountain States can obtain a declaration that the duty to defend or indemnify "shall be equitably born among *all* insurers" potentially providing coverage to Okland.   This fourth factor, therefore, weighs in favor of allowing this action to proceed without the absent insurers.

The Court finds that three of the four factors set forth in Rule 19(b) weigh in favor of Mountain States' claims against Zurich proceeding.  The Court further concludes that because only one of Mountain States' requests for relief cannot accord complete relief among the parties named in the complaint and because that one request for relief can be shaped to avoid prejudice while nonetheless providing adequate relief, this action in equity and good conscience should

proceed among the existing parties.   Thus, the Court rejects Trinity's first argument that the Court should dismiss this action for nonjoinder pursuant to Rule 19(a)(1)(A).[11]

                  c.    The Absent Insurers are not Required Parties Under Rule 19(a)(1)(B).

Zurich also invokes Rule 19(a)(1)(B) in support of its claim that the absent insurers are required and indispensable to this equitable contribution action in which Mountain States asks this Court to allocate Okland's defense costs among insurers.   Zurich contends that the Court should dismiss this action for nonjoinder because there is a substantial risk of multiple or inconsistent obligations.   [Doc. 193 at 10].   Zurich asserts that various carriers, including Zurich, have already paid their respective equitable shares of Okland's defense costs as part of their settlements with Travelers in the Travelers Action and this Court would "again weigh in on the allocation of Okland's defense costs, which was previously litigated and resolved—creating additional obligations for Zurich."   [*Id.*].

Subsection (B) of Rule 19(a)(1)(ii) provides that a party is "required" if "(B) that [absent] person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."   Fed. R. Civ. P. 19(a)(1)(B)(ii).   The Court rejects Zurich's contention that Rule 19(a)(1)(B) is applicable, because, as a threshold matter, Zurich has not demonstrated that the absent insurers have claimed an interest in this action.   Therefore, the absent insurers are not required within the meaning of Rule 19(a)(1)(B)(ii).

---

[11]   The Court also rejects Trinity's argument on the ground that Trinity has not demonstrated that the absent insurers' joinder is not "feasible."   As discussed herein, *see infra* at 43-44, joinder when feasible is the first remedy for failure to join a required party, and not dismissal.

Rule 19(a)(1)(B) specifically provides that a party is "required" only if "that person claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). Zurich, therefore, in contending that Mountain States has failed to join an indispensable party to its crossclaims for equitable contribution against Zurich and Trinity, as a threshold matter, must establish that the absent party claims an interest relating to the subject of equitable contribution towards Okland's defense costs to invoke subsection (a)(1)(B). *See Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, No. 94-C-3303, 1996 WL 435180, *7-8 (N.D. Ill July 31, 1996) (explaining that the rule requires "that the absent party actively claim[s an] interest" and that the plaintiff "convincingly argues that the absent CGL carriers do not claim an interest in the action because they have disclaimed coverage") (citations omitted); *id.* at *8 (holding that, "[t]hus, before balancing the two groups' interests, the absent parties must actually claim an interest relating to the subject of the action," and explaining that, "[b]ecause the absent CGL carriers disclaim coverage, International fails to show they claim an interest here"); *Special Jet Servs., Inc. v. Fed. Ins. Co.*, 83 F.R.D. 596, 599 (W.D. Pa. 1979) (explaining that Rule 19(a)(1)(B) "requires first that the absent party claim an interest relating to the subject of the action"); *Morgan Guar. Trust Co. v. Martin*, 466 F.2d 593, 598 (7th Cir. 1972) (holding that Rule 19(a)(1)(B) was inapplicable because the third party "not only does not claim any inability to protect its interest," but "it specifically disclaims any interest"). Zurich, however, has neither argued nor established that any of the absent insurers, including Travelers, have claimed any interest relating to the subject of this action. The Court suspects that Zurich ignores this threshold requirement because there are no absent insurers that claim an interest in having Okland's defense and indemnity costs allocated to them. To the contrary, it is more probable that any absent insurers are likely to *dis*claim an interest in this litigation by invoking coverage or other defenses (*e.g.*, release by contract/settlement agreement), and if an absent party affirmatively

disclaims an interest, Rule 19(a)(1)(B) does not apply. *See, e.g., id.* Thus, because Zurich has not established that any of the absent insurers claim an interest in the subject matter of this litigation, the Court denies Zurich's request for judgment in its favor on the ground of failure to join an indispensable party.

     d. <u>Travelers is not a Required Party within the Meaning of Rule 19(a)(1)(B) by Virtue of the Settlement Agreements Reached in the Travelers Action</u>.

  In their responses to the Court's May 4, 2015, Order, Defendants rely primarily upon the argument that Travelers in particular is a necessary and indispensable party to Mountain States' claims because Mountain States seeks to open the settlements in the Travelers Action and re-allocate the amounts that Mountain States, Trinity, and Zurich paid to Travelers in contribution towards Okland's defense costs. [Doc. 327 at 7-8 (arguing that Mountain States is seeking to "reallocate settlements among some participating insurers without naming all participating insurers," that there is "nothing equitable in allowing Mountain States to reopen Zurich's settlement with Travelers, particularly without all necessary and indispensable parties," and that it is the "resolution and settlement of the [Travelers Action], . . . [which] make[s] Travelers an indispensable party"); Doc. 328 at 7-8 (arguing that "it is . . . the prior adjudication and settlement between Travelers and Trinity of their respective shares of Okland's defenses costs [that] now make Travelers an indispensable party," that "any re-allocation of Trinity's share of Okland's defense costs would also implicate Travelers" and render Travelers indispensable, "because Travelers [is] co-primary with Trinity" and has an "equal obligation with Trinity for any allotted share of Okland," and that "this Court cannot fairly and equitably adjudicate re-allocation of Okland's defense costs to Trinity without Travelers")]. According to Zurich, Travelers' absence from this case prejudices Zurich because it "faces . . . inconsistent rulings and findings regarding

the allocation of defense costs" within the meaning of Rule 19(a)(1)(B)(ii), and Zurich argues that, as a matter of equity, [Doc. 327 at 8], it would be unfair to allow Mountain States "to pursue the settling insurers (such as Zurich) because to do so would defeat the finality of those settlements," [*id.* at 6].   Defendants further maintain that, because Zurich, Trinity, and Mountain States entered into settlement agreements, each signing a separate agreement with Travelers, and these agreements contain mutual releases that prohibit further claims against Travelers, Mountain States cannot join Travelers to this action.   [Doc. 328 at 8].   Defendants conclude that, because Travelers is indispensable and cannot be joined, the Court must dismiss Mountain States' claims against them for failure to join a necessary party.   [Doc. 327 at 10].

The Court is not persuaded that Travelers is an indispensable party within the meaning of Rule 19(a)(1)(B)(ii) for several reasons.   First, Defendants' argument that Travelers is a "required" party under subsection (a)(1)(B)(ii), or that, as a matter of equity, the Court should bar Mountain States' claims because it seeks to disturb the finality of the Travelers Action settlements, is premised upon an erroneous characterization of the claims Mountain States brings in this litigation.   Specifically, Defendants mischaracterize Mountain States' First Amended Complaint as seeking to open the settlements in the Travelers Action and to re-allocate the defense costs agreed upon in those settlements.[12]   The allegations in the complaint, however, do not support this characterization.

Mountain States' complaint seeks only two declarations related to Okland's defense costs: (1) a declaration from this Court that Zurich, Trinity, and the John Doe defendants pay their equitable shares of the costs arising from defending Okland, and (2) a declaration that Mountain

---

[12]   The relevant settlements entered into in the Travelers Action include the following:   a settlement between Mountain States and Travelers, a settlement between Zurich and Travelers, a settlement between Trinity and Travelers.

States is entitled to reimbursement from the Trinity, Zurich, and the John Doe defendants of payments already made on behalf of Okland under principles of equitable contribution.  These declarations do not require this Court to open the settlements in the Travelers Action or to re-allocate the amounts that Zurich, Trinity, or Mountain States paid to Travelers under the terms of their agreements to settle the Travelers Action.  Instead, the complaint asks this Court to allocate equitably Okland's defense costs among Mountain States, Zurich, and Trinity.  This allocation between or among any of these parties, however, was not decided in the Travelers Action.  The Travelers Action included only claims by Travelers against Zurich, Trinity, and Mountain States, and did not include any claims by, between, or among co-defendants Zurich, Trinity, or Mountain States.  Thus, although Defendants argue that Mountain States' First Amended Complaint seeks to open the Travelers settlements and to re-allocate Okland's defense costs agreed upon in those settlements, this argument does not have merit.  Because Zurich's faulty characterization of Mountain States' complaint is the basis for the risk of prejudice upon which Defendants rely for their Rule 19 and equitable arguments, the Court rejects Zurich's argument that it will be subject to inconsistent obligations within the meaning of subsection (a)(1)(B)(ii) because Mountain States seeks to open the settlements in the Travelers Action.

Second, the Court is not persuaded by Zurich's contention that Travelers is indispensable to this litigation because the causal connection between the risk of prejudice and Travelers' absence required by Rule 19 is not present.  Subsection (a)(1)(B)(ii) provides that a party is required if "disposing of the action in the person's absence may," Fed. R. Civ. P. 19(a)(1)(B), "leave an existing party subject to a substantial risk of incurring double . . . or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(1)(B)(ii).  Under this subsection, the "substantial risk" of prejudice must be caused by "disposing of the action in the person's absence."  Fed. R.

Civ. P. 19(a)(1)(B).   Thus, the prejudice that Defendants fear—*i.e.*, that Zurich will incur inconsistent obligations if the Court re-allocates the settlements reached in the Travelers Action, [Doc. 327 at 8]—must be caused by the failure to join Travelers to this action.   *See id.*; *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1198 n.9 (3d Cir. 1996) (explaining that one of Rule 19's purposes is to avoid piecemeal litigation and that this purpose "is limited to prevention of piecemeal litigation *caused by the failure to join an interested person*"); *Fed. Resources Corp. v. Shoni Uranium Corp*, 408 F.2d 875 (10th Cir. 1969) (explaining that settling legal controversies in whole, and not through multiple litigation, is the "very purpose of Rule 19 and reflects the true interest of all litigants, both state and federal courts, and, indeed, the public itself").   Mountain States' failure to join Travelers, however, is not the cause of the risk of inconsistent obligations regarding the allocation of defense costs.   [Doc. 327 at 8].   Rather, the risk of inconsistent obligations arises not from the failure to join Travelers but rather from—assuming Defendants' characterization of Mountain States' claims is accurate— allowing Mountain States to open the settlements in the Travelers Action and re-allocate the defense costs agreed upon in those settlements.   Even if Travelers were joined to this action, this same purported risk of prejudice would exist.   Because there is no causal connection between the failure to join Travelers and the risk that Zurich fears, the Court concludes that Travelers is not a required party within the meaning of subsection (a)(1)(B)(ii).

Stated differently, the Court rejects the contention that Travelers is a required party under subsection (a)(1)(B)(ii) because the two litigations from which the "inconsistent obligations" arise are not those that the rule was intended to address.   Zurich objects to an inconsistent obligation occurring as a result of a *prior* litigation and not as a result of a potential *subsequent* litigation. One of the purposes Rule 19 seeks to avoid is piecemeal litigation, but, within the meaning of

38

subsection (a)(1)(B)(ii), that purpose "is limited to prevention of piecemeal litigation *caused by the failure to join an interested person.*" *HB Gen. Corp.*, 95 F.3d at 1198 n.9.   Thus, the inconsistent obligations must arise as a result of the risk of future repeated litigation involving the absent party.[13]   The advisory committee notes to Rule 19 confirm that that clause (a)(1)(B)(ii) "recognizes the need for considering whether a party may be left, *after the adjudication*, in a position where a person not joined can subject him to a double or otherwise inconsistent liability." Fed. R. 19 advisory comm. notes (citations omitted) (emphasis added).   While Zurich fears inconsistent obligations arising as a result of two litigations, the litigations giving rise to the feared prejudice include the present litigation of Mountain States' claims and the *prior* litigation of Travelers' claims.   Rule 19, however, does not concern itself with an inconsistent obligation incurred as a result of a present and *past* litigation, but rather concerns itself only with an inconsistent obligation incurred as a result of a present and *future* litigation.

Rule 19 is not applicable to Mountain States' claims because it is not the failure to join Travelers and the fear of *subsequent* litigation brought by Travelers that gives rise to the prejudice Zurich fears.   Rather, the prejudice Zurich fears arises because Mountain States has brought claims against Zurich that Zurich contends already were litigated in the *prior* Travelers' Action. Thus, Zurich's real concern is one of claim and issue preclusion and not the failure to join an indispensable party within the meaning of Rule 19.   Zurich could have addressed these concerns by raising preclusion as a defense to Mountain States' claims in its Motion for Summary Judgment, but chose not to do so.   Zurich may not now address those concerns by way of the rule

---

[13]   This is simply another way of stating that there must be a causal connection between the inconsistent obligation and the failure to join a required party.   It is the failure to join the absent defendant that results in a subsequent litigation and opens up the parties to a risk of incurring inconsistent obligations.

for compulsory joinder, which seeks to eliminate prejudice arising as a result of the failure to join an indispensable party and from the risk of future litigation and not from prejudice arising as a result of the re-litigation of past claims in a present action.

Third, even if Zurich asserted it feared risk of substantial prejudice arising from an inconsistent obligation it may incur in an action by Travelers subsequent—and not prior—to this litigation, the Court nonetheless would conclude that Travelers is not required within the meaning of subsection (a)(1)(B)(ii).   As the Court already has explained, that subsection provides that, to be "required," the absent person must "claim[] an interest relating to the subject matter of the action."   Fed. R. Civ. P. 19(a)(1)(B) and (a)(1)(B)(ii); *see also supra* at 33-34 (citing cases). Defendants have not established that Travelers has claimed any interest in this litigation, and, in the absence of any such showing, the Court cannot conclude that Rule 19Ia)(1)(B)(ii) applies. Furthermore, this Court cannot conceive of any interest that Travelers might claim in this litigation.   Travelers settled its claims regarding allocation of Okland's defense costs with Zurich, Trinity, and Mountain States, and therefore has no further interest in the subject matter of equitable contribution among Travelers, Trinity, Zurich, or Mountain States.[14]

Fourth, even if the Court had concluded that Travelers was a "required" party under Rule 19, the Court nonetheless would reject Zurich's contention that dismissal is the appropriate remedy for Mountain States' failure to join Travelers to its claims.   In so arguing, Zurich ignores the plain language of Rule 19, both which (1) provides that the proper remedy for failure to join a party "required" under Rule 19(a) is not—in the first instance—dismissal but rather is joinder

---

[14]    Admittedly, if Mountain States were bringing—as Defendants argue—claims against Travelers to re-allocate the settlement amounts agreed upon in the Travelers Action, Travelers might have had an interest in this litigation.   The Court, however, already has rejected this characterization of Mountain States' claims.

when "feasible," and (2) defines joinder of a non-party as feasible when the non-party is "subject to service of process" and when the non-party's "joinder will not deprive the court of subject-matter jurisdiction."   *See* Fed. R. Civ. P. 19(a)(1).

As a threshold matter, prior to asking this Court to dismiss Mountain States' claims for failure to join an indispensable person, Zurich must establish that Travelers' joinder is not feasible within the meaning of Rule 19.   *See* Fed. R. Civ. P. 19(a)(1) and (b) (identifying in 19(a)(1) persons "required to be joined if feasible," and providing in 19(b) that "[if] a person who is required to joined if feasible cannot be joined," *only then* may the court "determine whether, in equity and good conscience, the action should proceed among existing parties or should be dismissed").   This is because the first remedy for failure to join a required party is joinder when feasible, not dismissal.   *See* Fed. R. Civ. P. 19 advisory comm. notes (explaining that dismissal is appropriate only when joinder "cannot be accomplished—a situation which may be encountered in Federal courts because of limitations on service of process, subject matter jurisdiction, and venue"); *id.* (explaining that "[i]t is only in these cases [when the absent party is not subject to service of process or when joinder would deprive the court of subject matter jurisdiction] that a court should consider dismissal by conducting a pragmatic examination and making "a choice . . . between the alternatives of proceeding with the action in the absence of particular interested persons, and dismissing the action").[15]

---

[15]   That Zurich does not advocate for the joinder of Travelers to this action is telling and provides further support for the Court's conclusion that the actual "prejudice" Defendants seek to avoid is purported harm arising not from the failure to join Travelers to this action (the harm Rule 19 is intended to address) but rather harm from the risk of this Court declaring that they are liable to Mountain States for equitable contribution towards Mountain States' payment of Okland's defense costs.   This latter so-called "prejudice" is not the type of harm Rule 19 was intended to prevent, for what Defendants fear is simply an adverse finding on the merits of Mountain States' claims.

Zurich gives short shrift to the requirement that it must first show that Travelers' joinder is not "feasible" within the meaning of Rule 19(a)(1).   Instead, Zurich focuses on Rule 19(b), which starts from the premise that "a person who is required to be joined if feasible cannot be joined." Fed. R. Civ. P. 19(b).   By emphasizing the inquiry under Rule 19(b), and glossing over Rule 19(a)'s definition of when joinder is not "feasible," Zurich effectively circumvents the very requirement that it cannot prove—*i.e.*, that Travelers' joinder is not feasible within the meaning of Rule 19(a)(1)—while simultaneously advocating for the remedy of dismissal that it desires under Rule 19(b).

Zurich cannot shirk its responsibilities under the Federal Rules.   As a threshold matter, prior to invoking remedies of Rule 19(b), Zurich must fulfill its obligation of establishing that a required non-party cannot be joined to the action—*i.e.*, that joinder is not feasible within the meaning of Rule 19(a)(1).   Rule 19 provides that joinder of a required non-party is "feasible" if the non-party is "subject to service of process and . . . joinder will not deprive the court of subject-matter jurisdiction."   Fed. R. Civ. P. 19(a)(1); *see also Gen. Refractories*, 500 F.3d at 313 (explaining that an absent party must be joined if feasible, *i.e.*, it is subject to service of process and its joinder "would [not] defeat diversity of citizenship"); *see also* Fed. R. Civ. P. 19(a) (providing that persons required to be joined if "feasible" include a person "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction"); Fed. R. Civ. P. 19 advisory comm. notes (confirming that "[i]f a person as described in subdivision (a)(1)[] is amenable to service of process and his joinder would not deprive the court of jurisdiction in the sense of competence over the action, he should be joined as a party," and, "if he has not been joined, the court should order him to be brought into the action").   Defendants, however, do not suggest that Travelers cannot be served or that Travelers' joinder would destroy subject matter

jurisdiction.   Thus, for this reason alone, the Court rejects Zurich's contention that Rule 19 applies.

The Court is not persuaded to hold otherwise by Zurich's argument that joinder is not feasible because Mountain States and Travelers entered into a settlement agreement resolving Travelers' claims against Mountain States for equitable contribution, and Mountain States is now barred from suing Travelers on the subject of Okland's defense costs.   That a party claims to have been contractually released from further claims—even if that release proves under state law to be valid and applicable to the claims asserted in the subsequent action—is not one of the bases upon which Rule 19 defines joinder as not "feasible."   Fed. R. Civ. P. 19(a)(1).   Furthermore, such a basis would not be advisable, for it would substantially detract from the merits of the claims actually before the Court.   Defendants' proposition that joinder is not feasible within the meaning of Rule 19 because a mutual release bars any claims by Mountain States against Travelers, would require the Court to litigate the merits of Travelers' state law defense of contractual release to determine whether Travelers' joinder is procedurally "feasible" within the meaning of Rule 19. Joinder is a question of procedure under Rule 19 and the Court need not conduct a substantive trial on the merits of a contractual defense to determine whether a party is indispensable within the meaning of that rule.

Moreover, the reasoning underlying Zurich's claims that Travelers' joinder is not feasible because Mountain States is barred by the settlement agreement in the Travelers Action from asserting claims against Travelers is logically inconsistent.   On the one hand, Zurich relies upon the validity of the settlement agreements in the Travelers Action—particularly upon the validity of Mountain States' release of further claims against Travelers—to justify why Mountain States' joinder of Travelers is not "feasible."   On the other hand, however, Zurich contends that it faces

prejudice of inconsistent obligations because Mountain States is opening the settlement agreements between Zurich and Travelers.    This latter argument that Mountain States is re-allocating the defense costs the parties agreed upon in settlement of Travelers' claims implicitly suggests that the mutual releases contained in the settlement agreements are not valid and do not preclude Mountain States' claims for equitable contribution against Travelers, Zurich, or Trinity. Zurich cannot have it both ways:   Zurich cannot argue that Mountain States is re-opening judgments entered into between Defendants and Travelers and that Travelers is a necessary party to this litigation by virtue of Mountain States' attempt to re-litigate what already is closed, and also argue that Travelers cannot be joined to this litigation because of the closed prior judgments.   This logical inconsistency in Zurich's reasoning provides added support for the Court's conclusion that Rule 19 does not apply.

Because Zurich has not established that Travelers is not subject to service of process or that Travelers' joinder would destroy this Court's subject matter jurisdiction, the Court concludes that Zurich has not satisfied Rule 19(a)(1)'s requirement that Travelers' joinder is not feasible.   Thus, Zurich, having failed to establish this threshold requirement, cannot argue that dismissal is appropriate under Rule 19(b).   Accordingly, the Court need not determine whether, under Rule 19(b), the action may proceed in Travelers' absence or whether the Court in equity and good conscience should dismiss Mountain States' claims.[16]

---

[16]   Rather, because Zurich has failed to establish that Travelers' joinder is not feasible, the appropriate remedy for Mountain States' failure to join Travelers as a party to its claims would be joinder, not dismissal.   The Court, however, does not order joinder of Travelers, because, for the reasons previously stated, the Court has held that Travelers is not a "required" entity within the meaning of Rule 19(a).

Fifth, The Court rejects Zurich's argument that Travelers is an indispensable party pursuant to Rule 19 to the extent it is premised upon the assumption that an insurer seeking equitable contribution must join *all* insurers potentially liable to it for paying a pro rata share of a mutual insured's defense costs or be subject for dismissal for failure to join an indispensable party. *See, e.g.*, *Pasco*, 637 F.2d at 503 (holding that "[i]f persons subject to rights of indemnity or contribution were always indispensable parties, there would not be a need for the impleader provisions of Rule 14"); *Rhone*, 1996 WL 435180, at *9 (same) (quoting *Pasco*, 637 F.2d at 503); *id.* at *10 (holding that "the potential prejudice arising from subsequent contribution actions is not significant enough to make potential indemnitors necessary or indispensable parties" within the meaning of Rule 19); 3 Moore's Fed. Practice ¶ 19.07-1[2.-2], at 19-120 to 19-121 (explaining that Rule 19 "must be read together with Rule 14, which quite clearly permits the defendant to implead a person who may be liable to him for all or part of any judgment against him but does not require that he do so").   To assume that all potential co-insurers must be sued is the equivalent of holding that a plaintiff-insurer seeking equitable contribution cannot exercise its judgment to exclude from suit co-insurers who may, for example, have persuasive coverage defenses or who may be undesirable defendants for some other reason (*e.g.*, bankruptcy).   Such a holding is not only unsupported by law, it also raises practical concerns.   For example, what would the standard be by which a co-insurer with viable coverage defense may be deemed dispensable?   Would the plaintiff be required to establish that would-be defendant's coverage defenses are likely to succeed or substantially likely to succeed?   Or would the insurer-plaintiff and the other insurer-defendants be required to present evidence so that the court could conduct a trial within a trial to determine whether the coverage defenses have merit?   And, what of the likely possibility that, if such merit-based decisions were required, there would be an insufficient evidentiary basis for the court

45

to decide the duty to defend of absent insurers?  The Court without reservation concludes that Rule 19 does not require a court to address these pragmatic problems.

The District of Colorado considered an analogous argument of a defendant-insurer in *Travelers Indemnity Co. of America v. AAA Waterproofing, Inc.*, No. 10-CV-02826-WJM-KMT, 2014 WL 201726 (D. Colo. Jan. 17, 2014).  In *AAA Waterproofing*, the parties disputed whether to include all insurers and subcontractor-self-insurers in the pro rata equitable allocation of an insured's defense costs.  *See id.* at *3.  "The Third-Party Defendants argue[d] that allocation should be applied to all 54 subcontractors implicated . . . in the Construction Defects Litigation," whereas the third-party plaintiff Travelers "contend[ed] that allocation should apply only to the subcontractors who [were] represented in the instant case, either directly or through their insurers." *Id.*  Both sides to the dispute referenced the court's determination that each liability insurer—including subcontractors serving as *de facto* self-insurers—had a joint and several duty to provide a complete defense.  *See id.*  The third-party defendants argued "that the joint and several duty to defend mean[t] that every subcontractor should be allocated a share of the cost of defense, regardless of whether Travelers chose to seek contribution from it in th[e] action," while the third-party plaintiff Travelers argued "that allocation to all subcontractors owing a duty to defend would require the jury in this case to make a separate, time-consuming determination of whether each non-party subcontractor had a duty to defend."  *Id.* at *34.  Travelers also argued that "the witnesses and exhibits currently proposed for trial by the Third-Party Defendants w[ould] not establish the evidentiary bases needed for such determinations."  *Id.* at *4.  The *AAA Waterproofing* court ultimately agreed with Travelers and held that it would "not consider allocation to non-parties."  *Id.*  Thus, in so holding, the court did not require Travelers to "bear the shares for all parties from whom it did not seek contribution."  *Id.*

The *AAA Waterproofing* decision necessarily assumes that the third-party plaintiff Travelers was not required to name all potential insurers liable to it for equitable contribution, for, to hold otherwise would be to "select an unworkable scope of allocation that would potentially result in protracted argument and distraction from the remaining issues in this case." *Id.*   So too, for the same reasons, this Court holds that to require Mountain States to name all potential insurers poses an unworkable scope of allocation.   Thus, as in *AAA Waterproofing*, the Court holds that the proper method of workable allocation is to allocate only to subcontractors represented in this case.

The Court is not persuaded to hold otherwise by virtue of Zurich's contention that every carrier with a duty to defend Okland is an indispensable party because Mountain States "not only seeks equitable contribution and a declaration of what it owed but also a proration of ultimate liability for Okland's defense costs."   [Doc. 337 at 4].   In support of this position, Zurich cites two cases, *Shell Oil Co. v. Aetna Casualty and Surety Co.*, 158 F.R.D. 395, 402 (N.D. Ill. 1994), and *City of Littleton v. Commercial Union Assurance Cos.*, 133 F.R.D. 159 (D. Colo. 1990). Neither of these cases, however, persuade the Court that the absent insurers are indispensable to this litigation.

Zurich contends that the *Shell Oil Co.* holding supports this Court's dismissal of Mountain States' claims for failure to join indispensable absents insurer.   In *Shell Oil*, the court held that a "missing insurer that underlies or shares layers with the named defendants is indispensable because the named defendants' potential liability is dependent on a determination of a number of coverage, and policy limits issues."   *Shell Oil*, 158 F.R.D. at 402.   *Shell Oil* is distinguishable. In *Shell Oil*, the obligations of the absent insurers and those present were not all primary.   *See id.* at 400.   The court explained,

47

> This is not a situation involving two primary insurers whose liability to the insured is wholly independent.   In this case, the policy limits of the policies issued by the . . . carriers that were purposefully left out of the case . . . must be exhausted before the obligations, if any, of the upper level excess carriers [in the case] are triggered.   Thus, in order to provide the declaratory relief [the plaintiff] seeks from its excess carriers [present in the case], this court must rule that the underlying absent carriers have paid or are liable to pay their policy limits because an excess policy does not kick in until all underlying policies are exhausted.   To so rule, we would be required to interpret the terms, conditions, and exclusions contained in the policies of both the named and omitted carriers' policies.

*Id.*   The *Shell Oil* court rejected the plaintiff's argument that the court would "not make any material rulings on the policies issued by the absent insurers," and explained that it "must necessarily rule that underlying carriers, whether absent or named, have paid or are liable to pay their policy limits before an upper level policy would owe coverage," and that "[s]uch a ruling would be both material and highly prejudicial to the interests of the absent carriers."   *Id.*   Here, in contrast, the obligations of the present and absent insurers are all primary, and, therefore, unlike in *Shell Oil*, the duty to defend of the insurers presently before this Court is not contingent upon a finding of liability of an insurer absent from this litigation.   Thus, the Court need not necessarily determine the underlying liability of an absent insurer to find that a present insurer has a duty to contribute equitably to Okland's defense costs.   For this reason, the holding in *Shell Oil* does not persuade the Court that the absent insurers are indispensable parties.

The Court likewise is not persuaded by Zurich's argument that the decision in *City of Littleton*, 133 F.R.D. at 162, compels a finding that the absent insurers are indispensable.   In *City of Littleton*, the court held that primary insurers were not indispensable because the plaintiffs did not seek a "proration of ultimate liability" and there was no "interdependency of the present and absent insurers' contracts."   *Id.*   The court explained, "Here each insurance contract creates a

separate obligation.   Interdependency of the present and absent insurers' contracts exists only to the extent that the degree of ultimate liability is dependent on every other contract."   *Id.*   The court therefore could construe "each named defendant's insurance contract . . . separately to determine whether and to what extent there is coverage under that contract."   *Id.*   As such, the court concluded that the absent parties were not indispensable to the litigation.   *See id.*

Zurich suggests that the inverse holding of that in *City of Littleton*—*i.e.*, that absent insurers are indispensable when a plaintiff seeks a proration of liability among present and absent insurers—applies here and that this inverse holding renders the absent insurers indispensable. [Doc. 193 at 11].   The Court is not persuaded.   While Zurich insists that Mountain States seeks a proration of ultimate liability, the Court does not construe Mountain States complaint as seeking a declaration from this Court regarding all potential insurer's *contractual* liability.   Rather, Mountain States has brought an action for equitable contribution for payment of defense costs, and Mountain States' right to equitable contribution arises not under contract but rather in equity.[17] *See supra* § II.B.4.a.   The distinction is pivotal.   The *City of Littleton* court's reference to "proration of ultimate liability" concerned the "other insurance" clauses in the insurance contracts. Those clauses provide that where two insurance policies are co-primary, the insurers will share costs by a particular formula.   Because the plaintiff was not seeking a proration of ultimate

---

[17]   Admittedly, Mountain States' complaint asks the Court for the relief of declaring "that . . . the costs arising from [the] duty [to defend Okland] shall be equitably borne among all insurers (a) having issued an insurance policy to *any* subcontractor performing work on the Condominiums where (b) such subcontractor executed a service contract with Okland requiring that RLP and/or Okland be named as additional insureds on such policy."   [Doc. 161 at 11].   To the extent that this request for relief could be construed as seeking a proration of ultimate liability instead of an equitable allocation of defense costs among insurers equally obligated to contribute towards those costs, the Court already has held that it will shape the relief requested by Mountain States in its complaint to include only those insurers present in this litigation.   *See supra* § II.B.4.b.   Thus, consistent with this modification, the Court declines to construe the complaint as seeking a proration of ultimate liability.

contractual liability under the "other insurance" clauses of the contracts, the *Littleton* court held that it could interpret all of the contracts independently and no one insurer's obligation was dependent upon any other insurer's obligation.

While Zurich contends that Mountain States seeks a "proration of ultimate liability," Zurich confuses contractual proration with equitable proration.   The proration Mountain States' requests is not a proration of liability pursuant to the contractual "other insurance" clauses of the insurance policies but rather proration pursuant to equitable principles of contribution that arose when Mountain States allegedly paid more than its share of Okland's defense costs.   To grant Mountain States the equitable (not contractual) relief it requests, the Court need only interpret the insurance contracts independently.   Thus, the "inverse holding" of *City of Littleton* does not apply.

For all of the foregoing reasons, the Court holds that neither Travelers nor any other John Doe defendant is indispensable to Mountain States' claims within the meaning of Rule 19. Accordingly, the Court denies Zurich's motion to the extent it argues that Mountain States' claims are subject to dismissal for failure to join an indispensable party.

III.   <u>Trinity is not Entitled to Summary Judgment on the Grounds of Claim or Issue Preclusion</u>.

In addition to moving for summary judgment on the ground that Mountain States' claims violate Federal Rule of Civil Procedure 14(a)(3), Trinity also moves for summary judgment on the ground that Mountain States' claims are barred by the doctrines of claim preclusion and issue preclusion.   For the reasons stated herein, the Court is not persuaded.   First, the Court concludes that the doctrine of claim preclusion is inapplicable because Mountain States and Trinity were not adversaries on the record, or in attitude, in the Travelers Action.   Therefore, Trinity has not satisfied the identity-of-parties element of claim preclusion as a matter of law.   Second, the Court

holds that the doctrine of issue preclusion does not apply because Mountain States and Trinity did not litigate the claims at issue here in the Travelers Action and therefore Trinity cannot satisfy the identity-of-issues element of issue preclusion.   The Court further holds that, because there was no final adjudication on the merits of Mountain States' claims, Trinity cannot establish that Mountain States' claims are barred by issue preclusion.   For these reasons, the Court denies Trinity's Motion for Summary Judgment in its favor on the ground that Mountain States' claims are barred by the preclusion doctrines.

A.   Mountain States' Claims are not Barred by the Doctrine of Claim Preclusion.

"The doctrine of res judicata, or claim preclusion, will prevent a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC*, 427 F.3d 821, 831 (10th Cir. 2005) (citing *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993)), *cert. denied*, 547 U.S. 1040 (2006).   Under Tenth Circuit law, claim preclusion applies when three elements exist:   (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits.   *See id.* (citing *Wilkes v. Wyo. Dep't of Employment Div. of Labor Stds.*, 314 F.3d 501, 504 (10th Cir. 2003)).   If these requirements are met, res judicata is appropriate unless the party seeking to avoid preclusion did not have a "full and fair opportunity" to litigate the claim in the prior suit.   *See id.* (citation omitted).[18]

---

[18]   In a number of Tenth Circuit cases, the court has characterized the "full and fair opportunity to litigate" as a fourth requirement of res judicata.   *See, e.g.*, *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000); *MACTEC*, 427 F.3d at 83 n.6.   The Tenth Circuit, however, has noted that the absence of a full and fair opportunity to litigate is more appropriately treated as an exception to the application of claim preclusion when the three referenced requirements are met.   *See id*.

Trinity contends that it is entitled to summary judgment in its favor on Mountain States' claims because Mountain States already litigated its claims against Trinity in the Travelers Action, and Mountain States' claims against Trinity therefore are barred by claim preclusion. The Court is not persuaded. On the record before the Court, the second element of claim preclusion—*i.e.*, identity of parties in this lawsuit and the Travelers Action—is not present. Therefore, the Court holds that Trinity has not satisfied its summary judgment burden of demonstrating that, as a matter of law, Mountain States' claims against Trinity are barred by the doctrine of claim preclusion.

Trinity concedes that Mountain States and Trinity were co-defendants, and not adversaries on the record, in the Travelers Action. This is because no defendant in the Travelers Action asserted any crossclaim against any co-defendant. Therefore, because the element of identity of parties is not present in this action and the Travelers Action, claim preclusion does not bar Mountain States' claims unless an exception to the identity-of-parties requirement applies.

Trinity contends that even if Mountain States and Trinity were co-defendants on the record, sharing a common adversary (*i.e.*, Travelers), they nonetheless were adversaries in attitude, if not by designation. Admittedly, if co-parties on the record are adversaries in attitude to an issue, and that issue is in fact litigated, co-parties may be precluded from re-litigating that issue—viz-a-viz each other—in a subsequent proceeding. *See, e.g.*, *Ohio Cas. Ins. Co. v. Gordon*, 95 F.2d 605, 609 (10th Cir. 1938); *Nat'l Bondholders Corp. v. Seaboard Citizens Nat'l Bank*, 110 F.2d 138, 144 (4th Cir. 1940); *Fidelity & Cas. Co. v. Fed. Express, Inc.*, 136 F.2d 35, 39 (6th Cir. 1943). This exception does not apply because the Court rejects Trinity's contention that Mountain States and Trinity were adversaries in attitude in the Travelers Action.

In the Travelers Action, Travelers asserted claims for equitable subrogation and contribution against Mountain States and Trinity, among others. Travelers thereafter moved for

52

summary judgment against both Mountain States and Trinity on these claims, and Mountain States and Trinity, in turn, cross-moved for summary judgment against Travelers.  [Doc. 163-9 at 1; Doc. 163-10 at 1].

In support of its motion for summary judgment, Travelers argued that its policy was excess to Mountain States' and Trinity's policies and that Mountain States and Trinity each were liable to Travelers in full for Okland's defense costs.  [Doc. 163-5 at 8 – this is on summary judgment]. [*Id.* (citing *Unigard Mut. Ins. Co. v. Mission Ins. Co.*, 907 P.2d 94, 99 (Colo. Ct. App. 1996) (explaining that an excess insurer is entitled via equitable subrogation to recover amounts paid in the defense of an insured that should have been paid by the primary insurer))].   In the alternative, if the court rejected Travelers' argument that its policy was excess, Travelers maintained that the court nonetheless should award Travelers equitable contribution and declare each defendant liable to Travelers for all of Okland's defense costs because the defendants breached their duty to defend Okland.  [*Id.* at 9-10].   Travelers further maintained that the court should not allocate Okland's defense costs between or among co-defendants, because the defendants failed to assert any crossclaims for contribution and the question of contribution therefore was not before the court. [*Id.* at 10].   Travelers also contended that, if Travelers recovered its damages in full from either Trinity or Mountain States, any severally liable defendant(s) would be free to pursue claims for equitable contribution against any co-insurers in a separate action.   [*Id.* (arguing that the defendants would "not be prevented from pursing contribution claims against one another if Travelers can recover its damages in full from any one Defendant")].

In opposition to Travelers claims, Mountain States and Trinity asserted coverage defenses, [Doc. 163-9 at 9 -11; Doc. 163-10 at 11-12], and argued in the alternative that, if they did have a duty to defend Okland in the Underlying Action, they nonetheless should not be held liable in full

for Okland's defense costs under either a theory of equitable subrogation or equitable contribution, [Doc. 163-8 at 9-13; Doc. 163-7 at 8; Doc. 163-6 at 10-13].   Rather, Mountain States and Trinity urged the court to deny summary judgment on Travelers' claims, Trinity asked the court to declare the Travelers policy co-primary with (and not excess to) its policy, and Mountain States and Trinity asked the court to reject Travelers' request for a joint and several liability declaration and instead to declare Mountain States and Trinity liable only for Okland's defense costs in proportion to their named insured's liability in the Underlying Action.   [Doc. 163-8 at 13; Doc. 163-6 at 17; Doc. 163-7 at 6, 8].

Regarding the parties' arguments on summary judgment, the Magistrate Judge in the Travelers Action issued a Report and Recommendation, concluding that the District Judge should declare Travelers' policy to be excess to Mountain States' policy and declare that Mountain States is liable to Travelers for the full amount of Okland's defense costs because Mountain States breached its duty to defend Okland.   [Doc. 163-9 at 29-30].   The Magistrate Judge issued a separate Report and Recommendation, concluding that the District Judge should declare Travelers' policy to be co-primary with Trinity's policy and declare that Travelers and Trinity share liability for Okland's defense costs attributable to Trinity's named insured Beaty's work on the Project equally.   [Doc. 163-10 at 25].   Thereafter, the District Judge entered an order adopting the Magistrate Judge's recommendation regarding Trinity.   [Doc. 163-14].   The District Judge, however, did not have the opportunity to enter an order adopting, amending, or rejecting the Magistrate Judge's recommendation regarding Mountain States because Mountain States entered into a settlement agreement with Travelers and the claims against it were dismissed.

The record before the Court on summary judgment does not suggest that Mountain States and Trinity were adversaries in attitude in the Travelers Action.   Trinity argues that, although it

54

and Mountain States were co-defendants and neither brought a crossclaim against the other, they nonetheless "actually litigated how the responsibility for Okland's defense costs should be allocated between the parties therein," "[e]ach attempted to limit [its] respective responsibility for Okland's defense costs," and each "argued [its] obligations for Okland's defense costs should be based on a *pro rata* allocation relating to the defense of the scope of work of their named insured subcontractor." [Doc. 163-1 at 14-15]. From these assertions, Trinity concludes that it and Mountain States occupied an attitude of adversaries in the Travelers Action regarding the question of equitable contribution, and that, because they litigated this issue as adversaries in attitude in the Travelers Action, Mountain States is precluded from relitigating this issue against Trinity here.

Trinity's reasoning is flawed. While Trinity contends that "Mountain States and Trinity essentially argued that other insurers, including one another, should be given a share of Okland's defense costs," [Doc. 262 at 4 ("Indeed, Mountain States argued, 'Since there were other insurers providing primary coverage . . . here, Mountain States should only be liable of a *pro rata* basis.'") (quoting Doc. 163-11 at 11)], and that, "[d]ue to the way the Travelers Action was postured, cross claims were not needed" because "[e]ach party argued that other insurers should share the obligation for Okland's defense costs," [*id.*], Trinity's conclusions are unsupported by the record in the Travelers Action. While Trinity attempts to re-cast the similar pro rata arguments that co-parties Mountain States and Trinity advanced against their common adversary Travelers as adversarial arguments between Mountain States and Trinity, the record reveals that, because of the *type* of pro rata allocation that Mountain States and Trinity sought in the Travelers Action, there was no adversarial attitude between them. Thus, although Mountain States actually litigated the question of pro rata allocation with Travelers, and Trinity actually litigated that same question with Travelers, Mountain States and Trinity did not litigate that question between themselves.

55

In the Travelers Action, in response to Travelers' claim, and the Magistrate Judge's recommendation, that liability should be joint and several, both Mountain States and Trinity argued that their individual liability for Okland's defense costs should be limited to a pro rata share of costs spent by Travelers to defend Okland *from claims involving or arising from their named insured's work*. [Doc. 163-8 at 13; Doc. 163-6 at 17]. Stated differently, Mountain States' contention was that, instead of holding Mountain States severally liable for 100 percent of Okland's defense costs paid by Travelers, the Court should allow pro rata allocation based upon the work of Mountain States' named insured. Trinity, similarly, argued that instead of holding it severally liable for 100 percent of Okland's defense costs, the Court should allow pro rata allocation based upon the work of Trinity's named insured.

What is pivotal to the question whether Mountain States and Trinity occupied an attitude of adversaries is that—because of the *type* of pro rata allocation sought by Mountain States and Trinity—the pro rata arguments were adversarial towards their common adversary Travelers and not towards each other. Neither Mountain States' nor Trinity's arguments in favor of allocation sought to impose liability on each other.

Trinity's briefing in support of its motion for summary judgment explains in detail how the pro rata allocation proposed by it (and, by extension, Mountain States) would operate. [Doc. 163-6 at 13]. Trinity explains that Travelers is "seeking approximately $2,300,000 that [it] claim[s] to have paid out in the defense of Okland," that "[i]f this amount is examined from a *pro rata* standpoint based upon the allocation of the total cost of repair from Okland in the underlying case, Trinity would owe less than one percent (0.77%) of the $2,300,000 because the cost of repair attributed to Trinity's insured (Beaty Construction) was 0.77% of the total cost to repair the entire project," and that "[t]his 0.77% of $2.3 million would amount to $17,710." [*Id.*].

56

Under this type of allocation, because Mountain States and Trinity do not share the same named insured (Trinity's named insured is Beaty and Mountain States' named insured is San Juan), the manner of apportioning liability of Mountain States for Okland's defense costs is wholly independent from the manner of apportioning Trinity's liability for Okland's defense costs.   Thus, because of the type of pro rata distribution of defense costs proposed, Trinity litigated only with Travelers and Mountain States litigated only with Travelers the question of liability.   Thus, contrary to Trinity's characterization of Mountain States' and Trinity's claims as "essentially argu[ing] that other insurers, including one another, should be given a share of Okland's defense costs," [Doc. 262 at 4], or "argu[ing] that other insurers should share the obligation for Okland's defense costs," [*id.*], the nature of the pro rata allocation sought in the Travelers Action ensured that the only allocation litigated in the Travelers Action was between the individual co-defendant and the plaintiff Travelers (and any other co-defendant sharing a named insured), and not between co-defendants Mountain States and Trinity (who did not share a named insured).   Thus, the Court holds that Mountain States and Trinity did not actually litigate *against each other* the question of their pro rata share of Okland's defense costs, and therefore Mountain States and Trinity did not occupy an attitude of adversaries sufficient to satisfy the second identity of parties element of claim preclusion.

Although Trinity cites *National Bondholders Corporation v. Seaboard Citizens National Bank*, 110 F.2d 138, 144 (4th Cir. 1940), to bolster its claim that an identity of parties exists between this action and the Travelers Action, this decision supports the Court's conclusion that no identity of parties exists.   In *National Bondholders*, the Fourth Circuit explained that claims that could have been asserted between co-parties may be barred in subsequent litigation, "where some finding of fact is made in the first suit which is an essential element in a subsequent claim or

57

action," or where the co-defendants' rights and obligations "are dependent upon their rights and obligations to a common adversary." *Id.* Neither of these scenarios is present here. Even if the Court were to construe the Magistrate Judge's Report and Recommendation as containing findings of fact, instead of simply proposed recommendations of fact, the Court nonetheless would conclude that that report contains no finding of fact that constitutes an essential element of Mountain States' contribution claim against Trinity. The Magistrate Judge's report only finds that Mountain States had a duty to defend Okland, that Mountain States' policy was primary and that Travelers' policy was excess, that Mountain States breached its duty to defend Okland, and that "although [Mountain States' policy] insured [its named insured] San Juan's work, because Defendant [Mountain States] breached its duty to defend and its coverage is primary, Defendant [Mountain States] is jointly and severally liable for all defense costs of Okland" and not just those related to San Juan's work. [Doc. 163-9 at 30]. None of these findings constitutes an essential element of Mountain States' equitable contribution claim against Trinity.

Likewise, the Court concludes that the second scenario contemplated by *National Bondholders* is inapplicable. The Fourth Circuit explained that co-parties may be bound by a prior litigation where the co-defendants' rights and obligations "are dependent upon their rights and obligations to a common adversary." 110 F.2d at 144. Neither Mountain States' nor Trinity's rights or obligations in the Travelers Action, however, were dependent upon their rights and obligations to Travelers. The pro rata defenses advanced by Mountain States and Trinity in the Travelers Action operated independently of each other because, as the Court already has explained, Mountain States sought only to allocate Okland's defense costs between Mountain States and Travelers and Trinity sought only to allocate defense costs between Trinity and Travelers. This is because both Mountain States and Trinity proposed a pro rata allocation of

58

defense costs based upon the work of their named insured.   Thus, because Mountain States and Trinity did not share the same named insured, the funds each sought to allocate with Travelers were separate and distinct.   Therefore, Mountain States' liability for its share of Okland's defense costs hinged in no way on Trinity's liability for its share of Okland's defense costs, and Trinity's liability for its share of Okland's defense costs depended in no way on Mountain States' liability. Stated differently, in the language of *National Bondholders*, Mountain States obligations, if any, towards Trinity, were not dependent upon Mountain States' obligations towards Travelers. Likewise, because Trinity sought only pro rata allocation based upon the scope of work of its named insured, so too its obligations, if any, towards Mountain States, were not dependent upon its obligations towards Travelers.

That the Magistrate Judge entered recommendations in the Travelers Action regarding Mountain States' liability towards Travelers and that the liability imposed upon Mountain States was wholly independent of Trinity's liability to Travelers, further demonstrates that Travelers' claims against the defendants were wholly unrelated to any potential claims between Mountain States and Trinity for equitable contribution.   The Magistrate Judge rejected Mountain States' claim that it should pay only a pro rata share of Okland's defense costs allocated on the basis of its named insured San Juan's defense.   Instead, the Magistrate Judge found Mountain States jointly and severally liable in full for Okland's defense costs—and not just for the defense costs arising out of San Juan's work—because the Travelers policy was primary and because Mountain States breached its duty to defend Okland (thereby rendering Mountain States liable for all of Okland's defense costs).   Mountain States' liability to Travelers under the Magistrate Judge's recommendation, thus, in no way turned on Trinity's liability to Travelers.

Likewise, the Magistrate Judge's recommendation regarding Trinity's liability to Travelers in no way turned on Mountain States' liability to Travelers.   The Magistrate Judge concluded that Travelers and Trinity were co-primary insurers and that they should allocate Okland's defense costs by sharing equally those costs "attributable to Beaty's work on the Project."   [Doc. 163-10 at 25].   This method of allocation—equal sharing between Travelers and Trinity of defense costs attributable to Trinity's named insured Beaty—is in no way dependent upon Mountain States' liability to Travelers.

Moreover, that the Magistrate Judge explicitly recognized that the issue of equitable contribution between and among co-defendants was reserved for a later litigation supports the Courts conclusion that this issue was not litigated in the travelers Action.   The Magistrate Judge specifically confirmed "[Mountain States] may seek contribution from other insurers if those other insurers also provided primary insurance to [the general contractor] which would cover the Underlying Action" and that "overall allocation of defense costs" is a matter to be worked out by a court in future proceedings if it cannot be resolved among insurers.   [Doc. 163-9 at 30-31, n.15, n.17].

The Court is not persuaded by any of Trinity's remaining arguments suggesting that Mountain States and Trinity occupied the position of adversaries in the Travelers Action.   Trinity contends, for example, that "[i]f Mountain States believed it was paying more than its allocable share for Okland's defense in its settlement with [Travelers], then Mountain States should have continued to participate in the proceedings to determine Mountain States' correct share."   [Doc. 163-1 at 18].   The problem with this contention, however, is that—because of the nature of the pro rata allocation Mountain States and Trinity advanced, *i.e.*, allocation of defense costs between a single co-defendant and Travelers and allocation based only upon the co-defendant's named

insured—no amount of continued participation in the Travelers Action would have allowed cross-litigation between Mountain States and Trinity.   Thus, Mountain States could not have litigated *Trinity's* share of Okland's defense costs or attempted to decrease its liability for Okland's defense costs by increasing Trinity's liability for those costs.   Mountain States' sole option would have been to decrease its liability by reducing the amount it was liable to Travelers. Mountain States decided that settlement was the preferable manner in which to establish its liability to Travelers, and Mountain States does not challenge the finality of this settlement. Instead, Mountain States seeks to litigate here for the first time—what it did not litigate in the Travelers Action—which is whether Mountain States has a claim for equitable contribution against Trinity because Mountain States overpaid, relative to Trinity's payment, for Okland's defense costs.

For the foregoing reasons, the Court concludes that Trinity and Mountain States were not adversaries on the record in the Travelers Action, and that, on the record before it, Trinity has not established that it and Mountain States were adversaries in attitude in that action.   Thus, because Trinity has demonstrated that this exception to the identity-of-parties element of claim preclusion applies, Trinity cannot prevail as a matter of law on its claim preclusion defense.[19]   Accordingly, the Court denies Trinity's Motion for Summary Judgment to the extent it seeks judgment as a matter of law in its favor on the ground that Mountain States' claims are barred by the doctrine of claim preclusion.[20]

---

[19]   Because the absence of this element is dispositive, the Court need not determine as a matter of law whether Trinity has satisfied the remaining elements of claim preclusion.

[20]   The Court's decision is consistent with Federal Rule of Civil Procedure 13(g), which provides that a party "*may* state as a crossclaim any claim by one party against a coparty," Fed. R. Civ. P. 13(g).   It is hornbook law that "[a] party who decides not to bring a claim under Rule 13(g) will

B.    Mountain States' Claims are not Barred by the Doctrine of Issue Preclusion.

The elements of issue preclusion are (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.   *See Park Lake Res., LLC v. U.S. Dep't of Agriculture*, 378 F.3d 1132, 1136 (10th Cir. 2004).   While issue preclusion, unlike claim preclusion, does not require identity of parties, the absence of this element is of no consequence because Trinity cannot establish the first and second elements of issue preclusion.

The first element of issue preclusion is that the issue previously decided is identical with the one in the current action.   The same flaw in Trinity's reasoning that rendered the identity-of-parties element of claim preclusion absent is dispositive on this element of issue preclusion.   Trinity contends that in this litigation "Mountain States seeks a judicial determination that it owes no duty to defend Okland," and that "[t]his precise issue was presented for judicial determination in the Travelers Action."   [Doc. 163-1 at 20].   Likewise, Trinity maintains that in this litigation "Mountain States . . . argues that it over-paid Okland's defense costs" and "is entitled to contribution/subrogation from Trinity," and that "the allocation of Okland's defense costs between the defendant insurers was litigated in the Travelers Action."   [*Id.* at 20-21].

---

not be barred by res judicata, waiver, or estoppel from asserting it in a later action, as the party would if the claim were a compulsory counterclaim under Rule 13(a)."   6 Charles A. Wright et al., *Federal Practice & Procedure* § 1431 (3d ed.).   To credit Trinity's contention that claim preclusion bars Mountain States' claims—in the absence of a showing that Mountain States and Trinity were adversaries in attitude—would be to hold that a crossclaim is mandatory when the Federal Rules do not so provide.

As this Court has explained, however, the record in the Travelers Action does not support Trinity's characterization of the issues actually litigated. Trinity cannot re-cast the issues of contribution decided in the Travelers Action as issues litigated and decided viz-a-viz Trinity and Mountain States. The only litigation that actually occurred in the Travelers Action on the allocation of Okland's defense costs was between each individual defendant and Travelers, and not between Mountain States and Trinity. Thus, the issue of contribution that Mountain States seeks to litigate here—*i.e.*, the question of allocation of Okland's defense costs between Mountain States and Trinity—was not litigated in the Travelers Action. Accordingly, the Court holds that Trinity has failed to establish as a matter of law that the issues in this litigation and the Travelers Action are identical, and therefore the Court denies Trinity's Motion for Summary Judgment to the extent it seeks judgment in its favor on the ground that Mountain States' claims are barred by the doctrine of issue preclusion.

The Court also denies Trinity's Motion for Summary Judgment on the ground that Trinity has failed to establish the second element of issue preclusion—*i.e.*, that the prior action was finally adjudicated on the merits. This Court already held in its Memorandum Opinion and Order dated September 26, 2014, [Doc. 139], that the Magistrate Judge's recommendation that the District Judge in the Travelers Action grant summary judgment to Mountain States, declare the Travelers' policy to be excess to Mountain States' policy, and declare that Mountain States is liable to Travelers for the full amount of Okland's defense costs because Mountain States breached its duty to defend Okland is not a final adjudication on the merits. [*Id.* at 31 & n.8 (rejecting Trinity's issue preclusion argument because the Magistrate Judge's recommendations were not adopted by the district court)]; *id.* (explaining that "Trinity mischaracterizes the Magistrate Judge's recommendation as a 'ruling,' when it is undisputed that the District Judge entered no substantive

ruling regarding the Magistrate Judge's recommendation")].    This Court also explained that, even if the District Judge had adopted the Magistrate Judge's recommendation, footnotes fifteen and seventeen of the recommendation indicate that "[Mountain States] may seek contribution from other insurers if those other insurers also provided primary insurance to [the general contractor] which would cover the Underlying Action" and that "overall allocation of defense costs" is a matter to be worked out by a court in future proceedings if it cannot be resolved among insurers. [Doc. 163-9 at 30-31, n.15, n.17].   It is undisputed that Mountain States entered into a settlement agreement with Travelers and the district court dismissed with prejudice Travelers' claims against Mountain States pursuant to that settlement agreement prior to making any substantive determination on the Magistrate Judge's recommendation.   Thus, the Court holds that there was no final adjudication on the merits of the question of Mountain States' liability for Okland's defense costs in the Travelers Action.   *See, e.g.*, *Stripling v. Jordan Production Co.*, 234 F.3d 863, 868 (5th Cir. 2000) ("We conclude that the magistrate judge's order did not qualify as a final judgment, such that it would provide a preclusive collateral estoppel effect."); *id.* (citing cases holding that a magistrate judge's order is not final for preclusion purposes); *Reynaga v. Cammisa*, 971 F.2d 414, 416 (9th Cir. 1992) (holding that a magistrate judge's order under 28 U.S.C. Section 636(b) is not final).   Accordingly, the Court denies Trinity's Motion for Summary Judgment to the extent it seeks judgment in its favor on the ground that Mountain States' claims are barred by issue preclusion.

IV.   <u>Defendants are not Entitled to Summary Judgment on the Grounds of Estoppel, Waiver, or Laches</u>.

Defendants last move for summary judgment in their favor on the ground that Mountain States' claims are barred by the doctrines of estoppel, waiver, and/or laches.[21]   Defendants' theories of waiver, estoppel, and laches rest on the common premise that the defenses Zurich and Trinity asserted against Travelers in the Travelers Action raised the same issues of equitable contribution that Mountain States now has asserted against Zurich and Trinity in this litigation. The Court already has explained, in the context of rejecting Trinity's arguments in favor of claim and issue preclusion, why the issues in dispute in the Travelers Action are not the same as those in dispute in this litigation.   Because the issues in the two litigations are not the same, the Court rejects Defendants' contention that Mountain States' claims are subject to dismissal as a matter of law on the grounds of waiver, estoppel, and/or laches.

The doctrine of waiver, under either Colorado or New Mexico law,[22] is defined as the intentional relinquishment or abandonment of a known right.   *See, e.g.*, *J.R. Hale Contracting Co. v. United New Mexico Bank*, 799 P.2d 581, 585 (N.M. 1990) (citing *Young v. Seven Bar Flying*

---

[21]   In Zurich's Motion for Summary Judgment, Zurich asks the Court to grant judgment as a matter of law in its favor on the ground that Mountain States' claims are barred by the doctrines of waiver, estoppel, and/or laches.   Trinity subsequently filed a notice joining Zurich's motion and asking the Court to grant summary judgment to Trinity on the grounds advanced by Zurich in Zurich's Motion for Summary Judgment.   Mountain States objects to Trinity's joinder and argues that Trinity effectively is raising new arguments on summary judgment after both Trinity's and Zurich's motions for summary judgment were full briefed.   Mountain States contends that these arguments both are untimely and that they violate the District of New Mexico's Local Civil Rule 7.4(b), which prohibits the filing of a sur-reply without leave of court.   The Court, however, need not decide Mountain States' objection, because the Court denies the Trinity's motion on the substantive grounds that the doctrines of waiver, estoppel, and laches do not bar Mountain States' claims.

[22] The parties dispute whether New Mexico or Colorado law governs the claims at issue in this litigation.   Defendants maintain, and Mountain States does not dispute, that the law governing the defenses of waiver, estoppel, and laches is identical in New Mexico and Colorado.

*Serv., Inc.*, 685 P.2d 953 (1984)); *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984). Defendants contend that, "[b]y failing to object to Zurich's settlement with Travelers and dismissal from the Okland Case, and failing to reserve its right to litigate Zurich's allocation of Okland's defense costs, Mountain States unequivocally waived its right to litigate this issue against Zurich ***again*** and, thus, its claims should be dismissed with prejudice." [Doc. 193 at 15].

Defendants have not established, however, that the claims at issue in the Travelers Action are the same as those at issue here. The Court already has held that Trinity and Mountain States did not litigate the claims at issue here in the Travelers Action. Zurich likewise has not established that, as a matter of law, the claims in this action and the Travelers Action are the same. Thus, because Defendants have not satisfied their summary judgment burden of establishing that Mountain States relinquished a known right in the Travelers Action and that it now is attempting to enforce that same right, the Court denies Defendants' motions for judgment in their favor on the ground that Mountain States waived its claims against them.

The Court likewise rejects Defendants' contention that Mountain States is estopped from asserting its claims against them for a similar reason. The elements of equitable estoppel are as follows:

> (1) Conduct which amounts to a false representation or concealment of material facts, or at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Nat'l Advertising Co. v. State ex rel. State Highway Comm'n*, 571 P.2d 1194, 1196-97 (N.M.

66

1977); *see also Aubert v. Town of Fruita*, 559 P.2d 232, 234 (Colo. 1977) (quoting *Jacobs v. Perry*, 313 P.2d 1008 (Colo. 1957)).  Although Defendants contend that Mountain States' failure to object to the settlement or dismissal in the Travelers Action, or to reserve its right to "reallocate" Okland's defense costs, constituted a representation upon which they reasonably relied, [Doc. 193 at 16], and that Mountain States' First Amended Complaint in this action "makes it clear that Mountain States' failure to object to Zurich's [or Trinity's] settlement and dismissal from the [Travelers Action] was a misrepresentation as Mountain States now asserts that [Defendants] did not pay enough toward Okland's defense costs," [*id.*], the Court is not persuaded.  Defendants cannot establish that Mountain States engaged in any conduct that constitutes a misrepresentation. The existence of a misrepresentation necessarily assumes an identity of claims in the two actions, for if the claims here are different than those settled in the Travelers Action, Mountain States cannot be said to have misled Defendants into believing that it would not pursue any further litigation on the settled claims and then be said to have acted inconsistently to this representation in this action by conducting further litigation on the settled claims.   The Court already has held that the claims at issue in the Travelers Action are not the same as those at issue here.   Thus, because Defendants cannot establish identity of claims in this action and the Travelers Action, and because an identity of claims is necessary to establish the required element of a misrepresentation, Defendants have not satisfied the elements of equitable estoppel and cannot prevail on their motions for summary judgment on the ground of estoppel.

Defendants' reliance upon the doctrine of laches to support summary judgment in their favor is similarly flawed.  Laches is defined as "real neglect to assert a right coupled with an unreasonable delay which operated to prejudice the other party and includes lack of knowledge by that other party that the plaintiff would assert his rights."   *Cain v. Cain*, 575 P.2d 607, 609 (N.M.

1978) (citing *Cave v. Cave*, 474 P.2d 480 (N.M. 1970); *Morris v. Ross*, 271 P.2d 823 (N.M. 1954)).   "The elements of laches are '(1) full knowledge of the facts; (2) unconscionable or unreasonable delay in the assertion of an available remedy; and (3) intervening reliance by and prejudice to another.'"   *Keller Cattle Co. v. Allison*, 55 P.3d 257, 260 (Colo. Ct. App. 2002) (quoting *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1 (Colo. 1996)).   Defendants contend that they settled with Travelers in the Travelers Action, that Mountain States did not object to the settlement or to Defendants' dismissal from the action and that Mountain States did not reserve its right to "relitigate the allocation of Okland's defense costs against Zurich [or Trinity]."   [Doc. 193 at 17].   Yet, Defendants argue that "well over a year and half later and without any prior notice to Zurich [or Trinity], Mountain States wants to relitigate and reallocate Okland's defense costs previously resolved."   [*Id.*].

The theory upon which Defendants' laches claim rests is dependent again, upon, the existence of an identity of claims in this action and the Travelers Action, for to establish "neglect to assert a right with an unreasonable delay" requires the right forgone but ultimately asserted to be the same.   Because the Court already has held that the issues litigated in this action and the Travelers Action are not the same, Defendants have not established that they are entitled as a matter of law to a ruling in their favor on the defense of laches.   Thus, the Court denies Defendants' motions for summary judgment to the extent they are premised upon the theory of laches.

## CONCLUSION

For the foregoing reasons, **IT THEREFORE IS ORDERED** that the Court has subject matter jurisdiction over the claims in the Second Amended Complaint by Mountain States for Cross-Claims Against the Trinity and Zurich Parties & Third-Party Complaint Against Colorado

Casualty & John Does I-XIX [Doc. 197].

**IT FURTHER IS ORDERED** that Trinity's Motion for Partial Summary Judgment Concerning Mountain States' Third Party Complaint [Doc. 163] is hereby **DENIED**.

**IT ALSO IS ORDERED** that Zurich American Insurance Company's Motion and Memorandum for Partial Summary Judgment Re:   Mountain States Mutual Casualty Company's Claims Regarding Okland [Doc. 193] is hereby **DENIED**.

DATED this 28th day of July, 2015.

_____

MARTHA VAZQUEZ

UNITED STATES DISTRICT JUDGE