# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

HARTFORD CASUALTY INSURANCE COMPANY,

      Plaintiff,

v.                                                                    Civ. No. 12-01110 MV/KK

TRINITY UNIVERSAL INSURANCE COMPANY OF
KANSAS, TRINITY UNIVERSAL INSURANCE OF
KANSAS, TRINITY UNIVERSAL INSURANCE COMPANY
as successor in interest to Amtrust Insurance Company of Kansas,
Inc., and ZURICH AMERICAN INSURANCE COMPANY,

      Defendants;

and

ZURICH AMERICAN INSURANCE COMPANY, TRINITY
UNIVERSAL INSURANCE COMPANY OF KANSAS, and
TRINITY UNIVERSAL INSURANCE COMPANY,

      Third-Party Plaintiffs,

v.

MOUNTAIN STATES MUTUAL CASULATY COMPANY
and TWIN CITY FIRE INSURANCE COMPANY,

      Third-Party Defendants;

and

MOUNTAIN STATES MUTUAL CASUALTY COMPANY,

      Third-Party Plaintiff,

v.

TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS,
TRINITY UNIVERSAL INSURANCE COMPANY, ZURICH
AMERICAN INSURANCE COMPANY, and JOHN DOES I-XIX,

      Third-Party Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Hartford Casualty Insurance Company's ("Hartford") Motion for Partial Summary Judgment on the Duty to Defend ("Motion for Summary Judgment") [Doc. 56], and Trinity Universal Insurance Company of Kansas, Trinity Insurance of Kansas, and Trinity Universal Insurance Company's (collectively, "Trinity") Motion to Strike, or in the Alternative, Federal Rule of Civil Procedure 56(d) Request for Discovery and Deferred Ruling on Plaintiff's Motion for Partial Summary Judgment on the Duty to Defend ("Motion to Strike or for Deferred Ruling") [Doc. 65]. The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that Hartford's Motion for Partial Summary Judgment is GRANTED IN PART and Trinity's Motion to Strike or for Deferred Ruling is DENIED.

## BACKGROUND

This insurance coverage lawsuit ("Coverage Action") arises out of an underlying action filed in the District Court of La Plata County, Colorado ("Underlying Action"), in which the Rivergate Lofts Condominium Owners Association ("COA") asserted various construction defect claims against Rivergate Loft Partners, LLC ("RLP"), the owner and developer of a multi-use condominium development located in Durango, Colorado (the "Project"), Okland Construction Company, Inc. ("Okland"), one of the general contractors for the Project, and various other defendants. Plaintiff Hartford, which issued commercial general liability policies to RLP, filed this Coverage Action seeking to recover from Trinity and Zurich American Insurance Company ("Defendants") approximately $1.6 million in defense and $150,000 in indemnity costs that Hartford incurred defending and settling the Underlying Action on RLP's behalf. Hartford

2

brought suit against Defendants alleging that they are liable for contribution to Hartford because (1) Defendants issued commercial general liability policies to Beaty Construction, Inc. ("Beaty"), a subcontractor which provided masonry work for the Project,[1] (2) the policies contain automatic additional insureds provisions, (3) Beaty entered into subcontracts with Okland obligating Beaty to name RLP as an additional insured, and (4) Defendants' policies automatically extended coverage to RLP.

Although Hartford originally brought its Motion for Summary Judgment against both Trinity and Zurich, Zurich thereafter conceded by stipulation that it had a duty to defend RLP, [Doc. 68], and Hartford therefore withdrew its Motion for Summary Judgment against Zurich. Thus, the Court considers only whether Hartford is entitled to summary judgment in its favor against Trinity. The following facts, which either are undisputed or are construed in the light most favorable to Trinity as the party opposing summary judgment, are relevant to Hartford's Motion for Summary Judgment.

The subcontracts that Beaty entered into with Okland contain the following insurance provisions:

> The Subcontractor [Beaty] agrees to carry comprehensive liability and property damage insurance, as listed below, . . .
>
> A.    Commercial General Liability Insurance – ISO Form CG 00 01 (11/85) or equivalent, Occurrence Policy, with –
>
> a)    Limits of not less than –
>
> (1)    General Aggregate $2,000,000.00
> (2)    Products - Comp/OPS Aggregate $2,000,000.00
> (3)    Personal and Advertising Injury $2,000,000.00

---

[1]   Beaty was hired to complete masonry work on the Project, including but not limited to the following:  grout, clay brick, CMU masonry veneer, architectural precase elements, felt paper, wall flashing, weeps, and masonry ties.

        (4)     Each Occurrence Limit $1,000,000.00
        (5)     Fire Damage (any one fire) $50,000.00
        (6)     Medical Expense (any one person) $5,000.00

b)     Endorsements attached thereto including the following or their equivalent –

        (1)     ISO Form CG 25 01(11/85), Amendment Of Limits Of insurance (Designated Project or Premises), describing the subject Contract and specifying limits as shown above.
        (2)     ISO Form CG 20 10 (11/85), Additional Insured – Owners, Lessees, Or Contractors (Form B), naming the General Contractor and Owner as additional insured and containing the following statement – "This Endorsement Also Constitutes Primary Coverage and not contributing in The Event Of An Occurrence, Claim, Or Suit".

In part, the complaint filed by the COA in the Underlying Action on January 13, 2010, alleges the following counts against RPL:   Count I—Negligence Resulting in Property Damage; Count II—Negligence Per Se; Count III—Negligent Repair Resulting in Property Damage; Count V—Breach of Implied Warranty Resulting in Property Damage; Count VI—Misrepresentation/Nondisclosure Resulting in Property Damage; Count VII—Colorado Consumer Protection Act Violations Resulting in Property Damage; Count VIII—Negligence (Violation of CCIOA); Count IX—Breach of Fiduciary Duty.   More specifically, the complaint alleges that RLP was liable to the COA because

[V]arious elements of the Units and Common Elements suffer from the following construction defects or deficiencies, among others, which have caused and will continue to cause, resultant and consequential property and other damages:

* * *

I.     Facade (Exterior Cladding and Sealants) Type-1 Brick

    1.     Clearance of weep holes from grade less than industry standard minimum required clearance.
    2.     Unsealed penetrations.
    3.     No isolation between brick and dissimilar materials.

4

4.   Inconsistent/missing installation of weeps at horizontal terminations.

5.   Missing metal closure behind brick areas.

J.   Facade (Exterior Cladding and Sealants Type 2) - CMU

1.   Horizontal precast surfaces not sloped to drain.

On October 7, 2010, RLP filed a third-party complaint against various subcontractors, including Beaty. That complaint contains claims for contribution, common law indemnification, and breach of implied warranty against Beaty and other third-party defendants. The third-party complaint also contains third-party beneficiary claims for breach of contract against Beaty, as well as other third-party defendants, for alleged failure to defend and indemnify RLP for claims asserted against RLP by the COA in the Underlying Action and for the alleged failure to have RLP named as an additional insured on commercial general liability policies as required by the terms of the subcontract between Beaty and Okland. [Doc. 220-2 at 2]. More specifically, RLP alleges that Beaty breached the provision in the subcontract between Beaty and Okland providing that Beaty shall indemnify and hold harmless the contractor, owner, and all agents from all claims, damages, losses, and expenses, including attorney's fees, arising out of the Beaty's work. [Doc. 57-1 at 20]. RLP further alleges that it has been damaged as a result of Beaty's failure to indemnify RLP for the defense costs it incurred defending the Underlying Action, [*id.* at 21-22], and that this failure to indemnify constitutes a breach of the subcontractor agreement between Beaty and Okland to which RLP was a third-party beneficiary, [*id.* at 22].

Hartford issued five consecutive Business Insurance Policies to RLP for single year periods under Policy No. 34 SBM PF6881 DX, which were effective from December 6, 2004, to March 1, 2009. Hartford defended and indemnified RLP in the Underlying Action pursuant to a reservation of rights. Trinity contends that a question of fact exists whether Hartford fully

defended RLP.   Trinity cites as evidence of this dispute the fact that RLP filed a complaint against Hartford alleging that Hartford did not fully defend and indemnify RLP.

Trinity issued two commercial general liability policies to Beaty, from January 1, 2004, to January 1, 2006, under policy numbers CPA4644719 00 36 and CPA 4644719 01 36, respectively (the "Trinity Policies").   The Trinity Policies contain the following Insuring Agreement under Section I—Coverage A Bodily Injury and Property Damage Liability:

1.      Insuring Agreement

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.   We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

The 2005-2006 Trinity policy ("Trinity Policy No. 2") contains, in relevant part, the following endorsement:

AUTOMATIC ADDITIONAL INSUREDS

The following provision is added to (SECTION II), Who Is An Insured.

5.      Any entity you are required in a written contract (hereinafter called Additional Insured) to name as an insured is an insured but only with respect to liability arising out of your premises, "your work" for the Additional Insured, or acts or omissions of the Additional Inured in connection with the general supervision of "your work" to the extent set forth below:

a.      All insuring agreements, exclusions and conditions of this policy apply.

b.      In no event shall the coverages or Limits of insurance in this Coverage Form be increased by such contract.

The parties dispute whether the 2004-2005 Trinity policy ("Trinity Policy No. 1") contains

6

an automatic additional insured endorsement (identified as form 33-0446 (0695)).   An automatic additional insured endorsement is referenced on the "Policy Schedule of Names and Addresses" in Trinity Policy No. 1.   [Doc. 8-2 at 34].   The Policy Schedule of Names and Addresses references two types of insureds.   [*Id.* (identifying two types of insureds under the caption "THE FOLLOWING ARE INSUREDS ON THIS POLICY")].   Those insureds are (1) Beaty as the "NAMED INSURED" and (2) a "BLANKET ADDITIONAL INSUREDS" "PER BLANKET ADDITIONAL INSURED FORM 33-0446 (0695)."   [*Id.*].   An automatic additional insured endorsement, however, is not included in the printed list forms on the "Commercial General Liability Coverage Part Declaration" in Trinity Policy No. 1, [*id.* at 5], whereas, in Trinity Policy No. 2, the "Commercial General Liability Coverage Part Declaration specifically indicates that it renews Trinity Policy No. 1 and that it amends Trinity Policy No. 1 to add the automatic additional insured endorsement on form 33-0446 (0695), [Doc. 9-1 at 50].

The Trinity Policies include the following definitions:   "The word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured."   Likewise, the Trinity Policies define "Products-completed operations hazard" as follows:

    a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or
        (2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a)    When all of the work called for in your contract has been completed.
            (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
            (c)    When that part of the work done at a job site has been put to

its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The Trinity Policies define "Your work" as follows:

a.   Means:

(1)   Work or operations performed by you or on your behalf; and
(2)   Materials, parts or equipment furnished in connection with such work or operations.

b.   Includes:

(1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
(2)   The providing of or failure to provide warnings or instructions.

The parties dispute when RLP tendered its defense of the Underlying Action to Trinity. Hartford contends that in April of 2011, RLP tendered its defense of the Underlying Action to Trinity, and, in support of this contention, Hartford identifies an April 20, 2011, letter from counsel for RLP to counsel for Beaty, in which RLP asserts that "demand is hereby made on [counsel's] client [Beaty] and its insurance companies to defend RLP."  [Doc. 57-1 at 35-36]. Trinity argues, however, that this correspondence was not addressed to Trinity but rather to Beaty's counsel.  [*Id.*].

To support its contention that a dispute of fact exists with respect to the date of tender, [Doc. 180-3], Trinity points to Hartford's allegation in its complaint that, "[i]n September of 2011, Hartford requested that Trinity defend and indemnify RLP," and to suggest that tender may have occurred in September 2011, Trinity cites a September 29, 2011, letter from Hartford to Trinity, [Doc. 1 at 5; *but see id.* (alleging that while *Hartford* requested Trinity defend and indemnify RLP

8

in September 2011, *RLP* tendered its defense of the Underlying Action to Trinity in April 2011)
(emphasis added)].   In the September 29, 2011, letter, however, Hartford writes, "As you know,
RLP's defense and indemnity has *previously* been tendered to you by RLP's defense counsel,"
which suggests that tender occurred prior to September 29, 2011.   [*Id.* (emphasis added)].

Trinity concedes that it sent a letter to RLP's counsel on August 29, 2011, in which Trinity
asserts that it was agreeing to participate in the defense of RLP in the Underlying Action under
Trinity Policy No. 2 subject to a reservation of rights and a partial denial of coverage.   [Doc. 10-2
at 2].   In addition, in a letter dated September 30, 2011, from Trinity's counsel to Hartford's
counsel, Trinity indicated that it "responded to *[RLP's] tender of the defense* . . . by letter dated
August 29, 2011."   [Doc. 180-5 at 1 (emphasis added)].

To support its claim that it actually participated in RLP's defense, Trinity relies upon its
request for certain information from RLP concerning the defense to RLP.   Specifically, in its
August 29, 2011, letter to RLP's counsel indicating that it agreed to participate in RLP's defense,
Trinity indicates that it

> will share in the defense costs of defending RLP but requires additional
> information to determine what share of the defense costs it will pay.   Please
> provide Trinity with information concerning what other insurers are currently
> defending RLP, and if known, how they are sharing in the cost of defending RLP.
> Once Trinity has that information it will be in a position to discuss a cost sharing
> arrangement with those other insurers.

[Doc. 10-2 at 36].   Trinity presents evidence in the form of the affidavit of Mark Richards, a CLM
Examiner 1 Casualty for USG-Kemper Services Group ("Kemper"), which is a company that
handles claims on behalf of Trinity.   [Doc. 180-4 at 2].   Richards asserts that he is familiar with
Trinity's involvement in the Underlying Action and attests that RLP did not respond to Trinity's

request for this information and that Hartford did not provide Trinity with any attorney invoices as evidence of RLP's defense costs until June 2012.   [*Id.*].

Richards also attests that, as part of a confidential settlement agreement settling claims between RLP and Beaty in the Underlying Action, which was signed on March 29, 2013, and April 1, 2013, [Doc. 220-2 at 9-11], a portion of the settlement amount paid to RLP by Beaty's insurers including Trinity was allocated to RLP's defense fees and costs in the Underlying Action.   [Doc. 180-4 at 2-3].   The settlement agreement and release of claims entered into by and among RLP, Hartford, and Beaty "and its insurers" provides in relevant part as follows:

> It is expressly understood that nothing in this Settlement Agreement is intended to, nor shall be construed to, settle, release, discharge, or otherwise affect any claim by RLP and Hartford with respect to RLP's status as an additional insured under Beaty's commercial general liability policies including, but not limited to:  (1) claims for coverage and/or equitable contribution/reimbursement that RLP or Hartford have pursued or may pursue in the future against Beaty's insurers under any policies of insurance issued to Beaty; and/or (2) any and all other claims by RLP or Hartford based on RLP's status as an additional insured (the "Excluded Claims").  It is the express intention of RLP and Hartford to fully pursue such claims against Beaty's insurers.  The Settling Parties acknowledge that the Excluded Claims are preserved and any and all rights, positions and claims RLP and/or Hartford has against Beaty's insurers with respect to the Excluded Claims are not released or otherwise limited by this Settlement Agreement, and the Releasing Parties acknowledge that all rights, positions and defenses that Beaty's insurers have with respect to the Excluded Claims are not affected by this Settlement Agreement except the Releasing and Settling Parties acknowledge that $94,600 of the Settlement Amount is allocated to RLP's claims against Beaty for defense fees and costs and the remainder of the Settlement Amount is allocated to RLP's other claims against Beaty in the Action.  The Releasing and Settling Parties agree that in any claim by RLP or Hartford against Beaty's insurers, Beaty's insurers, RLP and Hartford shall use this allocation for purposes of preventing double recoveries and Beaty's insurers shall be able to set-off these amounts against any claims by RLP or Hartford against Beaty's insurers.

[Doc. 220-2 at 5-6].

Richards further attests that on June 19, 2012, Trinity issued a check in the amount of $28,380 to Hartford as payment for RLP's defense costs and fees in the Underlying Action.   [Doc.

180-4 at 3].   Hartford concedes only that "Trinity claims to have issued a check" in this amount but "denies" that the check was payment for RLP's defense fees and costs "as the Beaty Settlement Agreement does not reflect that Trinity made a payment to Hartford of $28,280 for RLP's defense fees and costs in the Underlying Action."   [Doc. 220 at 5].   Hartford also points out that the settlement agreement does not include a release for additional insured claims against Beaty's insurers.   [*Id.*(citing Doc. 220-2)].   Trinity did not pay any amount towards the defense of RLP prior to its dismissal from the Underlying Action.   [Doc. 220-1 at 3].

Finally, although Trinity suggests that it participated in RLP's defense by pointing to its counsel's attendance at a mediation between RLP and the COA on September 30, 2011, Trinity's counsel attending that mediation acknowledges that she attended on Trinity's—and not RLP's—behalf.   [Doc. 180-5 at 1].   The only insurance company present at the mediation on behalf of RLP was Harford.   [Doc. 220-1 at 2].

RLP finalized its settlement with the COA in the Underlying Action on November 22, 2011.

Trinity Policy No. 2 includes the following provision:

Supplementary Payments—Coverages A and B

1.      We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

     a.      All expenses we incur.

     ***

     d.      ***All reasonable expenses incurred by the insured at our request to assist us in the*** investigation or ***defense of the*** claim or ***"suit"*** including actual loss of earnings up to $250 a day because of time off from work.

Trinity Policy No. 2 also includes the following provision:

11

4.      Other Insurance

If other valid and collectible other insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.      Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.

b.      Excess Insurance

This insurance is excess over . . .

(1)     Any other primary insurance available to you covering liability for damages arising out of the premises or operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Trinity Policy No. 2 contains the following condition:

d.      No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## **STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); *accord Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290

(10th Cir. 1999) (quoting Fed. R. Civ. P. 56(c)).   Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).   If the responding party fails to properly address the movant's assertion of fact as required by Rule 56(c), a district court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).   Upon a motion for summary judgment, a district court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all

13

reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may[] (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."   Fed. R. Civ. P. 56(d). When a party files an affidavit or declaration, the party invokes the court's discretion.  *See Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1553-54 (10th Cir. 1993).   "'Unless dilatory or lacking in merit,'" a party's 56(d) application "'should be liberally treated.'"  *Id.* (quoting *Comm. for 1st Amend. v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)).  "The general principle of Rule 56(d) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition."  *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000).

"Rule 56[(d), however,] is not a license for a fishing expedition."  *Lewis v. Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990).  A Rule 56(d) affidavit must explain why facts precluding summary judgment cannot be presented.  *Price*, 232 F.3d at 783.  This includes (1) identifying the "probable facts not available," (2) why those facts cannot be presented currently," (3) "what steps have been taken to obtain these facts," and (4) "how additional time will enable the party to obtain those facts and rebut the motion for summary judgment."  *Id.*; *see also Valley Forge Ins., Co. v. Health Care Mgmt. Partners*, 616 F.3d 1086, 1096 (10th Cir. 2010); *Jensen*, 998 F.2d at 1554.  Rule 56(d) may not be invoked based solely upon the assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable.  *See id.* (citation omitted).  Furthermore, "if the party filing the Rule 56[(d)] affidavit has been dilatory, or the

information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted."   *Id.* (citation omitted).

## DISCUSSION

Hartford moves for summary judgment on the grounds that Trinity had a duty to defend RLP under the two Trinity Policies and that Trinity breached that duty to defend because it failed to participate in RLP's defense.   In response to Hartford's motion, Trinity filed its Motion to Strike or for Deferred Ruling, arguing that the Court should strike Hartford's Motion for Summary Judgment because it fails to comply with the Court's rules and because it is premature, or, in the alternative, that the Court should defer ruling on Hartford's motion to allow Trinity to conduct additional discovery into facts that Trinity asserts are necessary to oppose summary judgment. The Court first addresses Trinity's Motion to Strike or for Deferred Ruling and denies that motion, and next addresses Hartford's Motion for Summary Judgment and grants that motion in part.

I.   Trinity's Motion to Strike or for Deferred Ruling.

In response to Hartford's Motion for Summary Judgment, Trinity filed its Motion to Strike or for Deferred Ruling, in which it requests first that the Court strike Hartford's motion on the ground that the motion does not comply with the Court's procedural rules and on the ground that it is premature, and second, in the alternative, that the Court defer its ruling on Hartford's motion pursuant to Federal Rule of Civil Procedure 56(d) to allow Trinity an opportunity to conduct discovery into facts that it maintains are necessary to oppose Hartford's motion.   The Court considers each request in turn, and, for the reasons stated herein, denies both Trinity's request to strike Hartford's motion and its request to defer ruling on Hartford's motion.

A.     The Court Denies Trinity's Request to Strike Hartford's Motion for Summary Judgment.

Trinity maintains that the Court should strike Hartford's motion for summary judgment because Hartford "incorrectly combines its Memorandum in support of its Motion for Partial Summary Judgment . . . with its Response to Trinity's Motion to Transfer in a single document," and Section 9(f)(2) of the CM/ECF Administrative Procedures Manual for the United States District Court for the District of New Mexico "directs parties to file motions and responses as separate documents."   [Doc. 65 at 4-5].   Hartford contends that it did not violate the Court's rules because it filed a separate Motion for Summary Judgment, [Doc. 56], and simply combined its memorandum in support of its Motion for Summary Judgment with its response to Trinity's Motion to Transfer Venue, [Doc. 57].

The relevant rules pertaining to filings of separate documents are found in Section 9(f)(2) of the Administrative Procedures Manual as well as in this Court's administrative order captioned "In the Matter of Separate Submission and Docketing of Motions and Responsive Pleadings." Administrative   Order   No.   92-88,   filed   May   4,   1992   (May   26,   2015,   12:33   pm), http://www.nmd.uscourts.gov/sites/nmd/files/general-ordes/Administrative%20Order_92-88_Separate%20Submission%20and%20Docketing%20of%20Motions%20and%20Responsive%20Pleadings_Filed%20May%204%2C1992.pdf ("Administrative Order 92-88").   The Court concludes that, while Hartford's filing creates confusion, it does not violate either of these rules.

Section 9(f)(2) of the Administrative Procedures Manual provides that "[m]otions and responses are always filed as separate documents," and that, "[f]or example, a Cross-Motion for Summary Judgment should never be combined with a Response to a Motion for Summary Judgment."   CM/ECF Administrative Procedures Manual for the United States District Court for

the District of New Mexico, § 9(f)(2) (May 26, 2015, 12:28 pm), http://www.nmd.uscourts.gov/sites/nmd/files/NMD_APM.pdf.   Section 9(f)(2) explains the rationale for this requirement:   "It is critical that the Cross Motion be filed separately so that it will appear on the Pending Motions Report and can be properly linked to any subsequent Responses, Replies, Notices and Orders."   *Id.*   Although Rule 9(f)(2) provides that "motions" and "responses" must be filed separately, Hartford complied with this rule because it filed its Motion for Summary Judgment in a separate document from its response to the Motion to Transfer Venue. [Docs. 56, 57].

Hartford also complied with the District of New Mexico's Administrative Order 92-88. This administrative order provides that "all practitioners before the Court shall henceforth submit a separate pleading for each matter upon which adjudication or a ruling of the Court is sought," and that "all practitioners before the Court shall henceforth submit, in the case of responsive pleadings, a separate pleading addressing each motion or other pleading to which a response is made." Administrative Order 92-88 at 1-2.   Hartford's Motion for Summary Judgment does not violate either of these admonitions.   Rather, it is Hartford's response to the Motion to Transfer Venue that arguably violates Administrative Order 92-88, because that response does not constitute "a separate pleading addressing each motion or other pleading to which a response is made."[2]   *Id.*

Hartford's Motion for Summary Judgment does not violate the Court's rules governing the filing of combined pleadings.   For these reasons, the Court is not persuaded to strike Hartford's Motion for Summary Judgment for violation of the Court's rules.

---

[2]   The Court need not—and therefore does not—decide whether, if Hartford had violated Section 9(f)(2) of the Administrative Procedures Manual or Administrative Order 92-88, the Court would strike the Motion for Summary Judgment on this ground.

The Court likewise is not persuaded to strike Hartford's motion because, as Trinity claims, it violates Local Rule 56.1(b).   This local rule instructs that, when filing a motion for summary judgment, the moving party "must file with the motion a written memorandum containing a short, concise statement of the reasons in support of the motion with a list of authorities relied upon" and that the memorandum must "set out a concise statement of all the material facts as to which the movant contends no genuine issue exists."   N.M.LR-Civ. 56.1(b).   Trinity maintains that, because Hartford combined its response to the Motion to Transfer Venue with its memorandum in support of its Motion for Summary Judgment, Hartford included facts relevant to the question of venue with facts relevant to summary judgment.   Thus, Trinity contends that Hartford's summary judgment facts are not concise and that they are not all material to summary judgment.

While Trinity correctly notes that the memorandum contains facts extraneous to the issues on summary judgment, Trinity has not demonstrated that the facts relevant to venue so permeated the memorandum that it violated Local Rule 56.1(b).   The Court could identify the small number of facts relevant to venue and remove them from its consideration on summary judgment. Moreover, the Court had no difficulty discerning which arguments Hartford advanced in opposition to a venue change and which it advanced in support of summary judgment because the memorandum set forth the arguments related to venue in a separate caption from the arguments related to summary judgment.   For these reasons, the Court is not persuaded that Hartford's memorandum violated Local Rule 56.1(b).

The Court likewise is not persuaded to strike Hartford's motion because, as Trinity maintains, Hartford's motion is premature.   Federal Rule of Civil Procedure 56(b) provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."   Fed. R. Civ. P.

18

56(b).   The Local Rules of Civil Procedure for the District of New Mexico set no different time and this Court has not ordered any other time.   Thus, Hartford's Motion for Summary Judgment is not premature, and the Court therefore denies Trinity's motion to strike the motion on the ground that it is untimely.[3]

B.      The Court Denies Trinity's Request for Deferred Ruling.

Trinity argues in the alternative that, if the Court denies its motion to strike, the Court should defer ruling on Hartford's Motion for Summary Judgment to allow Trinity time to conduct discovery that Trinity maintains is "necessary" to respond to Hartford's motion.   [Doc. 75 at 9]. Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may[] (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."   Fed. R. Civ. P. 56(d).   A Rule 56(d) affidavit must explain why facts precluding summary judgment cannot be presented.   *See Price*, 232 F.3d at 783.   The Tenth Circuit has held that this includes (1) identifying the "probable facts not available," (2) "why those facts cannot be presented currently," (3) "what steps have been taken to obtain these facts," and (4) "how additional time will enable the party to obtain those facts and rebut the motion for summary judgment."   *Id.*; *see also Valley Forge Ins.*, 616 F.3d at 1096.

Trinity maintains that the Rule 56(d) affidavit of Carolyn Crawford—a casualty claims specialist for Kemper who has handled claims for Trinity and is familiar with Trinity's involvement in the Underlying Action—it attaches to its motion satisfies each of the factors necessary to support Trinity's request for deferred ruling on Hartford's Motion for Summary

---

[3]   To the extent Trinity maintains that Hartford's Motion for Summary Judgment is premature because the Court first should rule on Trinity's Motion to Transfer Venue, the Court already has denied the motion to transfer venue, thus rendering Trinity's contention moot.

Judgment.   Simply satisfying the four factors, however, is not sufficient to warrant Rule 56(d) relief.   As a threshold matter, the plain language of Rule 56(d) requires Trinity to demonstrate that the probable facts it seeks are "essential to justify its opposition" to Hartford's Motion for Summary Judgment.   *See* Fed. R. Civ. P. 56(d) (specifically providing that that a district court may grant relief, including deferral of decision, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts *essential to justify its opposition . . . .*") (emphasis added); *see also Price*, 232 F.3d at 783 (confirming that "[t]he general principle of Rule 56(d) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is *essential to [its] opposition*") (emphasis added). Consistent with the plain language of Rule 56(d), the Tenth Circuit has held that, where the "information sought is either irrelevant to the summary judgment motion or merely cumulative, no [Rule 56(d)] extension will be granted."   *Jensen*, 998 F.2d at 1554 (citation omitted).

The Court concludes that, for the reasons discussed herein, the discovery Trinity seeks is not relevant to the issues raised in Hartford's Motion for Summary Judgment and that the discovery therefore is not essential within the meaning of Rule 56(d).   In addition, the Court holds that certain information that Trinity seeks is within Trinity's possession and is cumulative and therefore not essential.   For these reasons, the Court holds that Trinity cannot satisfy its threshold burden under Rule 56(d) of demonstrating that the evidence it seeks is necessary to its opposition. The Court further holds that Trinity has failed to satisfy its burden under Rule 56(d) because its affidavit is deficient.   The Court therefore denies Trinity's motion for Rule 56(d) relief.

Trinity contends that it requires discovery (1) to respond to three facts that Hartford asserts are undisputed—*i.e.*, those set forth in paragraphs 18, 29, and 31 of Hartford's motion—and (2) to support four of Trinity's affirmative defenses—*i.e.*, those set forth in paragraphs 10, 14, 16, and 24

of Trinity's answer.   [Doc. 65 at 9-12; Doc. 65-2].   The Court assesses the necessity of each

piece of evidence in turn.

> 1. <u>Discovery of Facts Related to RLP's State Court Action Against Hartford is Not Essential to Rebut Hartford's Contention in Paragraph 18</u>.

Trinity first maintains that it "lacks knowledge and information concerning RLP's

coverage lawsuit" against Hartford and argues that Trinity "needs" this information to rebut

Hartford's contention in paragraph 18 that it "fully defended and indemnified RLP in the

Underlying Action."   [*Id.* at 3, ¶ 12].   Trinity argues that RLP's state court action suggests that

Hartford did not fully defend or indemnify RLP.   In response, Hartford maintains that Trinity has

failed to explain how this discovery will enable Trinity to rebut the two questions at issue in

Hartford's Motion for Summary Judgment:   (1) whether Trinity had a duty to defend RLP and (2)

whether Trinity breached that duty to defend.

The question whether *Hartford* "fully" defended and indemnified RLP in the Underlying

Action, however, is not relevant to the questions at issue on summary judgment—*i.e.*, whether

*Trinity* had a duty to defend RLP in the Underlying Action and breached that duty to defend.   To

merit Rule 56(d) relief, an applicant must establish that the information sought is "essential to its

opposition."   Fed. R. Civ. P. 56(d).   Information that is not relevant to Hartford's Motion for

Summary Judgment is not essential to Trinity's opposition.   Thus, because Trinity has failed to

establish its threshold burden, the Court rejects Trinity's contention that it is entitled to Rule 56(d)

relief.[4]

---

[4]   The Court also denies Trinity's request to defer until Trinity has conducted discovery regarding RLP's state court action against Hartford on a second, independent ground.   To satisfy its burden under Rule 56(d), an applicant must identify the necessary facts it requires with specificity.   In support of Trinity's claim that it requires this discovery, Crawford attests that "Trinity lacks knowledge and information concerning RLP's coverage lawsuit" and that Trinity "needs this

2.     <u>Discovery of Facts Related to the Date RLP Tendered its Defense to Trinity is Not Essential to Rebut Hartford's Facts in Paragraph 29.</u>

Trinity next argues that it requires discovery concerning the date RLP tendered its defense to Trinity to rebut Hartford's contention in paragraph 29 that RLP's tender of its defense occurred in April of 2011.  In Trinity's Rule 56(d) affidavit, Crawford asserts that Hartford's evidence establishes only that RLP tendered its defense to Beaty—and not Trinity—in April of 2011. [Doc. 65-2 at 3, ¶ 10].  Crawford further attests that Trinity requires information concerning when RLP settled the Underlying Action, [*id.* ¶ 11], and that Trinity "needs" this "additional information" to determine "which claimed defense costs, *if any*, were incurred after RLP's purported tender of its defense to Trinity, but before RLP's settlement in the Underlying Action." [*Id.* (emphasis added)].

Although Trinity questions whether "any" defense costs were incurred after the date of tender and before the date of settlement, the Court concludes that when RLP incurred its defense costs is not relevant to the two questions at issue on summary judgment:  whether Trinity had a duty to defend and whether Trinity breached that duty to defend.  Hartford correctly asserts that the information Trinity seeks relates only whether Trinity breached its duty to pay defense costs and, if so, what *amount* of fees and costs are now subject to reimbursement.  These questions are not at issue on summary judgment.

Although a dispute of fact may exist regarding the date on which RLP tendered its defense to Trinity, it is undisputed that Trinity agreed to defend RLP subject to a reservation of rights in its

---

information to respond to Plaintiff's allegation that Plaintiff fully defended and indemnified RLP in the Underlying Action."   [Doc. 65-2 at 3, ¶ 12].   This vague attestation does not identify what information and knowledge Trinity requires regarding RLP's coverage action or why this information is not readily available to Trinity from court records.   Thus, the Court concludes that Trinity's Rule 56(d) request fails for this reason as well.

August 29, 2011, letter, and that Trinity attended a mediation in the Underlying Action on September 30, 2011, on Trinity's behalf.   These undisputed facts establish that Trinity was aware of and agreed to defend RLP in the underlying action from, on the facts construed in Trinity's favor, at least August 29, 2011, and that RLP settled the Underlying Action, on the facts construed in Trinity's favor, no earlier than September 30, 2011, the date on which the mediation was held. This leaves at least one month—between August 29, 2011, and September 30, 2011, during which Trinity was on notice of the Underlying Action and during which the Underlying Action was pending.   Thus, at a minimum, the undisputed existence of this one month period, allows the Court to determine, as a matter of law, whether, during this month, Trinity was under a duty to defend RLP and breached that duty to defend.   Because disputes regarding the exact dates of tender and settlement do not alter the undisputed fact that at least one month existed during which defense had been tendered and the Underlying Action was still pending, the Court concludes that Trinity has failed to demonstrate that the additional discovery it seeks into the exact dates of tender or settlement is necessary.

The Court further concludes that whether RLP incurred defense costs subject to reimbursement during the time frame between date of tender and date of settlement is not relevant to the two questions at issue on summary judgment—*i.e.*, *duty to defend* and breach of the *duty to defend*—but rather is only relevant to the *amount* Trinity is obligated to reimburse Hartford should the Court find Trinity in breach of its *duty to pay* for RLP's defense costs.   Because the Court concludes that whether RLP incurred defense costs subject to reimbursement during the time period between date of tender and date of settlement is not relevant to the questions at issue on summary judgment, the Court holds that the discovery Trinity seeks is not essential to its opposition to the Motion for Summary Judgment.   Thus, the Court declines to defer its decision

23

on the Motion for Summary Judgment to allow Trinity to conduct discovery into these dates.

The Court also denies Trinity's motion to defer ruling until it can conduct discovery into the dates of tender and settlement for a second reason.   Trinity does not explain why information regarding the date of RLP's tender of its defense to *Trinity* itself is not currently available to Trinity.   In the absence of this required showing, the Court will not conclude that information seemingly within Trinity's possession is currently unavailable to Trinity or that Trinity needs time to conduct discovery to acquire information that is already in its possession.   Likewise, Trinity has failed to explain in its affidavit why information regarding date of settlement is unavailable or what specific steps Trinity has taken to find out of the date of settlement.   Because Trinity's Rule 56(d) affidavit is insufficient in these respects, the Court holds that Trinity has not satisfied its Rule 56(d) burden and that it therefore is not entitled to relief.

3.   Discovery of Facts Related to Trinity's Participation in RLP's Defense is not Essential to Rebut Hartford's Facts in Paragraph 31.

In support of its motion to defer ruling, Trinity argues that it requires additional discovery to rebut the facts contained in paragraph 31 of Hartford's Motion for Summary Judgment.   In paragraph 31, Hartford asserts that "[d]espite Trinity's admission of a duty to defend, it never participated in RLP's defense or reimburse[d] Hartford for any amount incurred in defending RLP."   [Doc. 57 at 12].   In neither its motion for deferred ruling nor its Rule 56(d) affidavit, however, does Trinity identify any probable fact that it requires to rebut Hartford's assertion that Trinity admitted it had a duty to defend RLP.   To the contrary, Trinity identifies the *available* fact of its reservation of rights letter, which Trinity contends refutes Hartford's assertion that Trinity admitted it had a duty to defend.   Because Trinity's motion and Rule 56(d) affidavit do not establish that Trinity requires any probable facts to rebut Hartford's motion, the Court is not

24

persuaded to defer ruling on Hartford's motion to allow Trinity to conduct discovery.

Furthermore, to the extent that Trinity argues in its motion for deferred ruling that it requires additional discovery to refute Hartford's contention that it "never participated in RLP's defense" or "reimburse[d] Hartford for any amount it incurred in defending RLP," Trinity's Rule 56(d) affiant fails to substantiate this claim.  In her affidavit, Crawford does not identify any probable facts that Trinity hopes to discover related to Trinity's participation in RLP's defense or Trinity's reimbursement of defense costs or how these facts are necessary to rebut Hartford's Motion for Summary Judgment.   Indeed, Crawford makes no mention at all of any facts asserted by Hartford in paragraph 31 or the need to oppose those facts.  A Rule 56(d) affidavit must identify the "probable facts not available," explain why those facts cannot be presented, explain what steps have been taken to obtain these facts, and explain how additional time will enable the party to obtain those facts and rebut the motion for summary judgment.  *See Price*, 232 F.3d at 783; *Valley Forge Ins.*, 616 F.3d at 1096 (same).   Because Crawford's affidavit does not satisfy these requirements, the Court holds that Trinity has failed to sustain its Rule 56(d) burden.

4.     <u>Discovery of Facts Related to Trinity's Affirmative Defenses is Not Essential</u>.

Trinity's Rule 56(d) affiant attests that Trinity requires information to establish four of its affirmative defenses.  Specifically, Crawford asserts that (1) Trinity should not have to pay pre-tender attorneys' fees or costs, (2) Trinity should not have to pay unreasonable or unnecessary defense fees or costs, (3) Trinity should not have to pay costs arising out of work unrelated to Beaty, and (4) Trinity should not have to pay any defense costs because RLP breached its obligations under the policy to cooperate with Trinity and to obtain Trinity's consent prior to incurring defense costs and RLP's breach substantially prejudiced Trinity.   Crawford asserts that

25

Trinity "needs additional information concerning RLP's efforts, if any, to cooperate with Trinity, and to obtain Trinity's consent to incur the claimed defense costs.   Trinity also argues that it lacks certain information related to when and why certain claimed defense costs were incurred, whether the costs related to the work of Beaty, and the reasonableness, necessity, and relatedness of the defense costs to RLP's defense."   [Doc. 65-2 at 2-3, ¶ 9].

In response, Hartford insists that information related to Trinity's affirmative defenses is not relevant to the questions of duty to defend and breach of that duty to defend, which are the sole questions at issue on summary judgment, and that the information is relevant only to whether Trinity breached its duty to pay RLP's defense costs and, if so, the amount of fees subject to reimbursement.   Because these latter questions are not at issue on summary judgment, Hartford argues that the Court should deny Trinity's motion to defer.

Hartford's argument is compelling.   The information Trinity seeks regarding pre-tender defense costs and unreasonable or unnecessary defense costs is not relevant to the question of duty to defend or breach of that duty to defend but rather is relevant to the questions whether Trinity breached its duty to pay RLP's defense costs and, if so, the extent of Trinity's potential liability to Hartford for reimbursement.   For example, information regarding when and why RLP incurred defense costs could establish that Trinity is not liable for those costs because they were incurred before the date of tender or because they were unreasonable or unnecessary.   Limiting the extent of Trinity's potential liability to pay Hartford, however, is not relevant to whether Trinity's policies gave rise to a duty to defend RLP in the first instance or whether Trinity breached that duty to defend by failing to participate in RLP's defense while the Underlying Action was ongoing. These questions, which are at issue on summary judgment, are answered not by looking to the types of evidence Trinity seeks.   Rather, the duty to defend is determined by comparing the

26

allegations in the complaint filed in the Underlying Action with Trinity's policies and assessing whether those allegations tend to show a covered occurrence,[5] and breach of the duty to defend is determined by examining whether Trinity participated in RLP's defense during the pendency of the Underlying Action.[6]   These inquiries are not answered through evidence of the date of tender and or evidence of the reasonableness of defense costs but rather through examination of the underlying complaint, the Trinity policies, *see supra* note 5, and the steps Trinity took during the pendency of the Underlying Action to defend or participate in RLP's defense, *see infra* at 34-35. Thus, the discovery that Trinity seeks is not essential to rebut Hartford's Motion for Summary Judgment.

The Court likewise concludes that discovery into whether RLP cooperated with Trinity or obtained Trinity's consent to incur the costs is not relevant to the question whether Trinity had a duty to defend RLP and whether it breached that duty to defend.   Trinity maintains that it may be relieved of its coverage obligations if RLP breached certain provisions in the Trinity policies and if

---

[5]   *See Am. Employers' Ins. Co. v. Continental Cas. Co.*, 512 P.2d 674, 676 (N.M. 1972); *see also Miller v. Triad Adoption & Counseling Servs., Inc.*, 65 P.3d 1099, 1103 (N.M. Ct. App. 2003) ("If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend regardless of the ultimate liability of the insured."); *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, No. 07-Cv-0066-MSK-CBS, 2013 WL 1324600, *3 (D. Colo. Mar. 31, 2013) (under the complaint rule, "a duty to defend arises when the underlying complaint alleges any facts that might fall within the coverage of the policy," or, stated differently, "where the allegations in the complaint, if sustained, would impose a liability covered by the policy"); *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1145 (D. Colo. 2008) (explaining the complaint rule limits the court to "examination of solely the policy and the complaint").

[6]   *See, e.g.*, *Constitution Ass'n v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996) (explaining that the duty to defend is the "insurance company's duty to affirmatively defend its insured against *pending* claims") (emphasis added); *Lujan v. Gonzales*, 501 P.2d 673, 677 (N.M. Ct. App. 1972) (explaining that an insurer is not absolved of its duty to defend because a co-insurer already has undertaken a defense and the insurer instead has a "duty to assist in that defense"), *cert. denied*, 501 P.2d 663 (N.M. 1972).

that breach substantially prejudiced Trinity.   [Doc. 65 at 12 (citing *Roberts Oil Co. v. Transamerica Ins. Co.*, 113 N.M. 745 (N.M. 1992))].   The question whether Trinity had a duty to defend RLP and breached that duty is separate and distinct, however, from the question whether Trinity is relieved of its obligations because *RLP* breached its contractual obligations under the policies and that breach substantially prejudiced Trinity.   Stated differently, Trinity's obligation to defend RLP under the contract is independent from RLP's obligation to cooperate with Trinity and to obtain its consent to incur defense costs.   *See infra* at 35-36.   Discovery into the question whether RLP breached its contractual obligations, therefore, is not essential to Trinity's response to the Motion for Summary Judgment.

Finally, the Court concludes that discovery into whether RLP incurred defense costs arising out of work related to Beaty is not essential to Trinity's response to Hartford's motion. Trinity correctly points out that the additional insured provision limits who is defined as an additional insured only to would-be insureds that incur liability that arises out of Beaty's work or acts or omissions of would-be-insureds in connection with the general supervision of Beaty's work.   As previously discussed, however, the appropriate question for determining whether Trinity had a duty to defend RLP is found by comparing the allegations in the complaint filed in the Underlying Action with Trinity's policies and determining whether those allegations tend to show a covered occurrence and the question whether Trinity breached that duty to defend is determined by assessing whether Trinity participated in RLP's defense of the Underlying Action while it was pending.   *See supra* note 5.   Although information regarding whether the costs incurred arose out of work related to Beaty could establish that Trinity ultimately is not liable to indemnify RLP for those particular defense costs, this evidence relates to Trinity's duty to pay and not to its duty to defend.   *See infra* at 40-41.   Because the questions of duty to defend and breach

28

of the duty to defend are not contingent on ultimate liability, and because the question whether a particular set of defense costs incurred arose out of work related to Beaty is relevant not to duty to defend or breach of duty to defend but rather to ultimate liability for defense costs or indemnification, Trinity has not established that the discovery it seeks is relevant.

For the foregoing reasons, the Court concludes that Trinity has not satisfied its threshold burden under Rule 56(d) of establishing that the information it seeks is essential to opposing Hartford's Motion for Summary Judgment.   The Court therefore holds that Trinity is not entitled to relief under Rule 56(d).   Accordingly, the Court denies Trinity's motion to defer ruling on Hartford's Motion for Summary Judgment.[7]

II.     <u>Hartford's Motion for Summary Judgment</u>.

Hartford moves for summary judgment on two questions:   (1) whether Trinity had a duty to defend RLP under the two Trinity Policies and (2) whether Trinity breached that duty to defend. The Court addresses each of these questions in turn.

A.      <u>Hartford is Entitled to Judgment as a Matter of Law Declaring that Trinity had a Duty to Defend RLP under Policy No. 2 but not under Policy No. 1</u>.

Hartford contends that Trinity owed RLP a duty to defend under the two Trinity Policies. Trinity concedes that it had a duty to defend RLP under Trinity Policy No. 2, but disputes that it had a duty to defend RLP under Trinity Policy No. 1.   Trinity argues that although Trinity Policy No. 2 contains an automatic additional insured endorsement which gives rise to its duty to defend RLP, Trinity Policy No. 1 does not contain that endorsement, and therefore RLP is not an

---

[7]   The Court also concludes that discovery into whether RLP cooperated with *Trinity* is not essential because this information is within the possession of Trinity and Trinity therefore need not discover this information from RLP or Hartford.   Thus, the Court denies Trinity's Rule 56(d) request for relief on this ground as well.

additional insured under Trinity Policy No. 1.

For the reasons discussed herein, the Court holds that Hartford is entitled to summary judgment on the question of duty to defend under Trinity Policy No. 2.   The Court further holds, however, that a dispute of fact precludes summary judgment in Hartford's favor under Trinity Policy No. 1.

1.   <u>A Factual Dispute Precludes the Entry of Judgment as a Matter of Law Declaring that Trinity had a Duty to Defend RLP under Policy No. 1.</u>

Trinity argues that a dispute of fact precludes summary judgment on the question whether it had a duty to defend RLP in the Underlying Action under Policy No. 1 because "[a]lthough the Automatic Additional Insured Endorsement Form is referenced on the 'Policy Schedule of Names and Addresses' in Policy No. 1, this Automatic Additional Insured Endorsement is not included in the printed list forms which comprise the commercial general liability coverage in Trinity Policy No. 1."   [Doc. 180 at 8].   According to Trinity, because there is a factual dispute regarding whether RLP is an insured under the policy, Hartford cannot establish Trinity's duty to defend as a matter of law.

Trinity's argument is persuasive.   Beaty, and not RLP, is the named insured under the Trinity Policies, and RLP's claim to coverage is dependent upon the inclusion of the automatic additional insured endorsement in the Trinity Policies.   This endorsement provides that an "insured" under the policy includes "[a]ny entity [the named insured Beaty is] required in a written contract (hereinafter called Additional Insured) to name as an insured."   The parties agree that Trinity Policy No. 2 contains this automatic additional insured endorsement (identified as form 33-0446 (0695)) but the parties dispute whether Trinity Policy No. 1 contains that endorsement.

30

Hartford correctly notes that in Trinity Policy No. 1, the automatic additional insured endorsement is referenced on the "Policy Schedule of Names and Addresses."   [Doc. 8-2 at 34]. That schedule references two types of insureds:   (1) Beaty as the "NAMED INSURED" and (2) a "BLANKET ADDITIONAL INSUREDS" "PER BLANKET ADDITIONAL INSURED FORM 33-0446 (0695)."   *Id.* (identifying the foregoing two types of insureds under the caption "THE FOLLOWING ARE INSUREDS ON THIS POLICY")].   Trinity, however, also correctly points out that the automatic additional insured endorsement is not included in the printed list forms on the "Commercial General Liability Coverage Part Declaration" in Trinity Policy No. 1.   [*Id.* at 5]. In contrast, in Trinity Policy No. 2, the "Commercial General Liability Coverage Part Declaration specifically indicates that it renews Trinity Policy No. 1 and that it amends Trinity Policy No. 1 to add the automatic additional insured endorsement on form 33-0446 (0695), [Doc. 9-1 at 50].   The Court concludes that these inconsistencies generate a dispute of fact whether Trinity Policy No. 1 contains the automatic additional insured endorsement under which RLP claims it is insured.

The Court holds that Hartford has not satisfied its summary judgment burden of demonstrating that it is entitled to judgment as a matter of law on the question whether RLP is an additional insured under Trinity Policy No. 1.   On summary judgment, the Court must construe the facts in the light most favorable to Trinity, and those facts are sufficient to raise a dispute whether Trinity Policy No. 1 provides coverage to RLP.   Therefore, the Court denies Hartford's motion for summary judgment on the question of duty to defend under Trinity Policy No. 1.   *Cf. Eagle Well Serv. v. Cent. Power Sys. & Servs*, No. 08-2184, 2009 WL 2776851, at *1 (D. Kan. Aug. 28, 2009) (denying summary judgment in part because "the terms of the contract are in dispute" and the disputed fact precludes summary judgment); *Fidelity & Cas. Ins. Co. v. Wil-Freds, Inc.*, 496 N.E.2d 336, 340 (Ill. Ct. App. 1986) (denying summary judgment in a

declaratory action seeking a determination of insurance coverage because the parties disputed the terms and conditions of the policy); *see also Deepwater Invest., Ltd. v. Jackson Hold Ski Corp.*, 938 F.2d 1105, 1111 (10th Cir. 1991) (holding that a material factual dispute precluded summary judgment because "[i]ssues such as . . . the terms of the alleged contract are generally questions of fact to be resolved by the fact finder") (citation omitted).

> 2. Hartford is Entitled to a Judgment as a Matter of Law Declaring that Trinity had a Duty to Defend RLP under Policy No. 2.

Hartford moves for summary judgment in its favor on the question whether Trinity owed a duty to defend RLP in the Underlying Action under Trinity Policy No. 2. In response to Hartford's motion, Trinity stipulates that it owed RLP a duty to defend under this policy. [Doc. 180 at 16]. The Court therefore grants Hartford's Motion for Summary Judgment on this question and holds that, as a matter of law, Trinity had a duty to defend RLP in the Underlying Action under Policy No. 2.

> B. Hartford is Entitled to Judgement as a Matter of Law Declaring that Trinity Breached its Duty to Defend RLP Under Trinity Policy No. 2.[8]

Having held that Trinity owed a duty to defend RLP under Policy No. 2, the Court next determines whether, as a matter of law, Trinity breached that duty to defend. Trinity has conceded that it had a duty to defend RLP in the Underlying Action under Trinity Policy No. 2. Once triggered, as explained herein, Trinity had a duty actively to assist Hartford in the defense of RLP in the Underlying Action. The Court concludes, however, that for the reasons stated herein, the undisputed facts establish that Trinity took no steps to participate in RLP's defense during the pendency of the Underlying Action. Moreover, although Trinity maintains that a dispute of fact

---

[8] Because the Court has held that a question of fact precludes summary judgment on the question whether Trinity had a duty to defend RLP under Trinity Policy No. 1, the Court does not reach the question whether Trinity breached its duty to defend under that policy.

precludes this conclusion, Trinity confuses its duty to defend under Trinity Policy No. 2 with its duty to pay under Trinity Policy No. 2.   The two obligations are distinct, and Trinity has raised a dispute of fact only with respect to the latter obligation and not the former.   Thus, the Court rejects Trinity's arguments in opposition to summary judgment and instead grants Hartford a judgment as a matter of law declaring that Trinity breached its duty to defend RLP in the Underlying in contravention of Trinity Policy No. 2.

Trinity's duty to defend is established in the Insuring Agreement under Section I—Coverage A Bodily Injury and Property Damage Liability.   This section provides that

> [Trinity] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.   *[Trinity] will have the right and duty to defend the insured against any 'suit' seeking those damages*.   However, [Trinity] will have no duty to defend the Insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. . . .

Trinity concedes that it had a duty to defend RLP under Trinity Policy No. 2, but contends that it satisfied this obligation by attending a mediation and by "requesting information necessary to enter into a cost sharing agreement."   [Doc. 180 at 17].   The Court is not persuaded that these actions constitute participation in RLP's defense in the Underlying Action sufficient to satisfy Trinity's obligation to defend under Trinity Policy No. 2.

Although Trinity asserts that its attendance at a mediation constitutes participation in RLP's defense, it is undisputed that Trinity attended the mediation on behalf of Trinity and not on behalf of RLP.   Trinity itself concedes this point.   [*Id.* (asserting in its opposition that it participated in RLP's defense because, "on September 30, 2011, *on behalf of Trinity*, counsel for Trinity attended a mediation between RLP and the HOA in the Underlying Action") (emphasis added)].   Moreover, Trinity's counsel, who was the Trinity representative present at the

33

mediation, likewise acknowledges that she attended the mediation on Trinity's, and not RLP's, behalf. [Doc. 180-5 at 1]. In addition, Hartford has identified evidence which confirms that Hartford was the only insurance company present at the mediation on behalf of RLP. [Doc. 220-1 at 2]. Because it is undisputed that Trinity's counsel attended the mediation on Trinity's behalf and that Hartford was the only insurance company present at the mediation on RLP's behalf, the Court concludes that Trinity's attendance at the mediation did not constitute participation in RLP's defense sufficient to satisfy Trinity's duty to defend.

The Court also rejects Trinity's assertion that its second act of alleged participation in RLP's defense, *i.e.*, its request for additional information, was sufficient to satisfy its duty to defend RLP in the Underlying Action. Trinity asserts that in its August 29, 2011, letter to RLP, "Trinity agreed to participate in the defense of RLP subject to a reservation of rights and partial denial of coverage," but also that Trinity "requested information from RLP concerning the insurers that were providing a defense to RLP, so that Trinity could discuss a cost sharing agreement." [*Id.*]. This request for information, however, is not sufficient to satisfy Trinity's contractual obligation of defense. To the contrary, even though Hartford was providing a defense to RLP, Trinity had an affirmative duty to assist Hartford in providing that defense and not simply to gather information to "discuss" a cost-sharing agreement. *See Lujan v. Gonzales*, 501 P.2d 673, 677(N.M. Ct. App. 1972) (explaining that "Allstate's duty to defend did not cease to exist because Farmers was defending Gonzales" and that "Allstate had the duty to assist in that defense") (citing *S. Farm Bureau Cas. Ins. Co. v. Allstate Ins. Co*., 150 F. Supp. 216 (W.D. Ark.1957)); *Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1219-20 (10th Cir. 2000) (applying Colorado law and holding that an insurer undertaking only passive acts, such as appointing a law firm and preparing to contribute to defense costs, has "breached its duty to defend

by not fully discharging its duty") (citing *Lujan*, 501 P.2d at 677).   Indeed, on analogous facts to those here, the Tenth Circuit specifically rejected the contention that a co-insurer can satisfy its duty to defend by engaging in passive acts such as "appoint[ing]" a law firm and "conduct[ing] a thorough and diligent internal investigation as to its duty to indemnify," or "set[ting] up a reserve for the claim" and "prepar[ing] to contribute its share of defense costs and indemnity payment." *Id.*   The Tenth Circuit concluded that "these actions do not amount to an active independent defense of [an insured]," and held that an insurer undertaking these acts, with no other active defense of its insured, breaches its duty to defend.   *Id.*   The Court likewise holds that Trinity's passive acts of requesting information to discuss a cost-sharing arrangement for the payment of defense costs does not constitute an act of participation in RLP's defense sufficient to satisfy Trinity's contractual obligation of defense.

That Trinity presents evidence that RLP failed to respond to Trinity's request for information does not change the Court's analysis.   Even if RLP failed to respond, this failure, while feasibly relevant to the question whether RLP complied with its contractual obligation to cooperate with Trinity, could not relieve Trinity of its obligation to assist Hartford in providing RLP's defense.   *See supra* note five (explaining that if an insured tenders its defense to its insurer and the insurer breaches its duty to defend, the insurer waives its right to challenge its insured's breach of contractual provisions).   Therefore, as previously discussed, because Trinity's duty to defend and breach of that duty are questions separate and distinct from the question whether RLP breached its contractual obligation to cooperate, the Court decides whether Trinity breached its duty to defend without reference to whether RLP breached its contractual obligation to cooperate.[9]

---

[9]   That under New Mexico law, if an insurer breaches its duty to defend after an insured makes a demand for a defense, the insurer suffers the "loss of the right to claim that the insured breached

*See supra* at 27-28. Furthermore, to the extent Trinity conditioned its participation on RLP's provision of the information Trinity requested, this condition confirms that Trinity's request for information did not constitute *participation* in RLP's defense but rather constituted a condition upon which Trinity relied to *relieve it of its duty to participate* in RLP's defense. Thus, the request for information cannot constitute participation in RLP's defense for this reason as well.

The Court likewise rejects Trinity's argument that it participated in RLP's defense because it made payments towards RLP's defense costs after RLP settled the Underlying Action. This argument confuses Trinity's duty to defend RLP with its duty to pay RLP's defense costs. These two duties are separate and distinct and are found in separate insurance clauses. Trinity's duty to defend is set forth in the Insuring Agreement under Section I—Coverage A Bodily Injury and Property Damage Liability and provides that the Trinity "will have the right and duty to defend the insured against any 'suit' seeking those damages." Trinity's duty to pay defense costs is established in the Insuring Agreement under a provision entitled "Supplementary Payments—Coverages A and B" and provides that Trinity "will pay, with respect to any claim [it] investigate[s] or settle[s], or any 'suit' against an insured [it] defend[s,] . . . [a]ll expenses [it] incur[s and a]ll reasonable expenses incurred by the insured at [Trinity's] request to assist [Trinity] in the investigation or defense of the claim or 'suit.'" [Doc. 9-1 at 31-32].

---

policy provisions," *Price*, 684 P.2d at 531; *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1119 (1990) (stating same proposition as *Price*), confirms the independence of the two inquiries. "The basis [for the rule that an insurer loses the right to challenge an insured's breach of policy provisions if the insurer breaches its duty to defend] is that the insurer cannot establish substantial prejudice as a result of the insured's breach of the policy provisions when its failure to defend is unjustified because the claim comes within policy coverage and a demand for coverage has been made." *Price*, 684 P.2d at 530. The rule and its basis confirm that breach of the duty to defend is an independent obligation of the insurer that does not turn on whether the insured breached its policy obligations.

To satisfy its duty to defend, Trinity was required actively to participate in RLP's defense of the Underlying Action or to otherwise provide assistance to Hartford in its defense of RLP while the action was pending.   *See Lujan*, 501 P.2d at 677; *Signature Dev. Cos.*, 230 F.3d at 1219-20; *Constitution Ass'n*, 930 P.2d at 563.   Hartford suggests that one manner in which Trinity may have satisfied its duty to defend is by paying a portion of RLP's defense costs.   While Trinity might have satisfied its duty to defend RLP during the pendency of the Underlying Action by paying for RLP's defense costs, it might also have satisfied its duty to defend RLP by providing RLP with counsel or by providing some other form of affirmative assistance in its defense. Critical, however, to whether an insurer satisfies its duty to defend is that the insurer undertakes affirmative steps to provide a defense to its insured in the underlying lawsuit.   This necessarily means that Trinity's participation in RLP's defense must have occurred while the Underlying Action against RLP was pending.

Thus, that Trinity identifies payments that it made *after* RLP settled the Underlying Action does not persuade the Court that Trinity participated in RLP's defense of the Underlying Action. Trinity contends, for example, that in the spring of 2013, RLP and Beaty entered into a settlement agreement, and that in that agreement "a portion of the settlement amount paid to RLP by Beaty's insurers, including Trinity, was allocated towards RLP's defense costs incurred in the Underlying Action."   [Doc. 180 at 17].   Trinity maintains that "[b]y contributing to the settlement [in 2013], of which a portion was intended to compensate RLP for defense fees and costs, Trinity made a payment for a portion of RLP's defense costs incurred in the Underlying Action."   [*Id.* at 18]. Trinity also argues that although Hartford claims that Trinity did not pay any of RLP's defense costs, Trinity's evidence demonstrates that on June 19, 2012, Trinity issued a check in the amount of $28,380 to Hartford as payment for RLP's defense costs and fees in the Underlying Action.

37

Even if the Court construes the facts in Trinity's favor and assumes that Trinity paid a portion of RLP's defense costs in the Underlying Action in the spring of 2013 and in June of 2012, payment of RLP's defense costs months after RLP's November 2011 settlement of the Underlying Action does not constitute participation in RLP's defense of the Underlying Action sufficient to satisfy RLP's duty to defend.   To the contrary, Trinity's payments only constitute evidence that Trinity satisfied its obligation to pay and not that it satisfied its obligation to defend.   Thus, while Trinity's post-settlement payments might be sufficient to generate a factual dispute on the question of breach of the duty to pay, they do not create a factual dispute on breach of the duty to defend sufficient to preclude summary judgment.

The Court also rejects Trinity's argument that its obligation to pay defense costs is subject to certain policy limitations and that Hartford's failure to present evidence that the defense costs for which it seeks reimbursement fall outside of these policy limitations precludes summary judgment.   Trinity maintains that Hartford "has not provided a single invoice for this Court to consider," and that, "[w]ithout such undisputed factual information, this Court cannot grant summary judgment in [Hartford's] favor on [its] claim that Trinity breached its contractual obligation to defend RLP in the Underlying Action."   [Doc. 180 at 20].   The Court is not persuaded.   The policy limitations upon which Trinity relies are not relevant to the questions of duty to defend or breach of the duty to defend but rather are relevant to Trinity's separate and distinct obligation to pay RLP's defense costs.

For example, Trinity argues that its "contractual obligation to defend RLP is limited to the defense of liability for claims arising out of '[Beaty's] work' for [RLP], or acts or omissions of [RLP] in connection with the general supervision of '[Beaty's] work,'" that "numerous claims were asserted against RLP in the Underlying Action," and Hartford "has not shown through

undisputed facts that the defense costs that [Hartford] is seeking from Trinity relate to the defense of RLP in the Underlying Action for RLP's liability arising out of Beaty's work, rather than from RLP's liability arising out of RLP's independent acts of negligence, which are not covered." [Doc. 180 at 18].   The Court does not agree that Hartford was required to establish that the defense costs for which it seeks reimbursement were incurred from claims against RLP arising out of Beaty's work to merit summary judgment on the question of breach of the duty to defend.

The duty to defend is determined by comparing the allegations in the complaint filed in the Underlying Action with the terms of Trinity Policy No. 2.   *See supra* note 5.   "If the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured."   *Am. Employers' Ins. Co. v. Continental Cas. Co.*, 512 P.2d 674, 676 (N.M. 1972). Likewise, the "insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts *tend to show* an occurrence within the coverage."   *Id.* (emphasis added); *see also supra* note 5.   "The question presented to the insurer in each case is whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether he can prove an action against the insured for damages."   *Am. Employers' Ins.*, 512 P.2d at 676.   Thus, under this standard, if the complaint in the Underlying Action contains allegations that tend to show that the claims arise out of work related to Beaty, these allegations are sufficient to trigger Trinity's duty to defend RLP.   Once triggered, Trinity, as insurer, is required defend RLP, its insured, until such time as a court holds otherwise.   *See infra* note 10.

Trinity has conceded that it had a duty to defend RLP in the Underlying Action.  Even absent this concession, however, the Court would have concluded that the complaint in the Underlying Action contains allegations which tend to show that the underlying plaintiff's claims arose out of Beaty's work.   It is undisputed that Beaty was hired to complete masonry work on the Project, including but not limited to grout, clay brick, CMU masonry veneer, architectural precase elements, felt paper, wall flashing, weeps, and masonry ties.   The underlying complaint alleges that RLP was liable to the COA because of construction defects or deficiencies in the "Facade (Exterior Cladding and Sealants) Type-1 Brick," including "Clearance of weep holes from grade less than industry standard minimum required clearance," "Unsealed penetrations," "No isolation between brick and dissimilar materials," "Inconsistent/missing installation of weeps at horizontal terminations," and "Missing metal closure behind brick areas," and from defects or deficiencies in the "Facade (Exterior Cladding and Sealants Type 2) – CMU," including "Horizontal precast surfaces not sloped to drain."   Trinity Policy No. 2 defines as an insured "Any entity [Beaty is] required in a written contract (hereinafter called Additional Insured) to name as an insured is an insured but only with respect to liability arising out of your premises, "your work" for the Additional Insured, or acts or omissions of the Additional Inured in connection with the general supervision of "your work."   It is undisputed that Beaty and RLP entered into a written subcontract pursuant to which Beaty was required to name RLP as an insured.   These allegations triggered Trinity's duty to defend, and, once triggered, Trinity was obligated to defend RLP in the Underlying Action, or, because Hartford already was providing a defense, to render affirmative assistance to Hartford in providing that defense.   *See Lujan*, 501 P.2d at 677; *Signature Dev. Cos.*, 230 F.3d at 1219-20; *Constitution Ass'n*, 930 P.2d at 563.

Although Trinity contends that Hartford was required to produce invoices establishing that the defense costs for which it seeks reimbursement actually were incurred by defending claims arising out of the work of Beaty, this evidence is not relevant to whether Trinity breached its duty to defend RLP.   The duty to defend is determined by reviewing the allegations in the underlying complaint and determining as a matter of law whether those allegations tend to show an occurrence covered by the policy and not by looking to evidence outside of the complaint (such as attorney invoices), *see supra* note 5, and the breach of the duty to defend is determined by assessing an insurer's actual participation in the underlying defense, *see, e.g.*, *Signature Dev. Cos.*, 230 F.3d at 1219-20.   Under these standards, relevant evidence includes the underlying complaint, Trinity's policies, and the facts establishing Trinity's participation (or lack thereof) in RLP's defense of the Underlying Action while that action was pending.   Evidence of invoices Hartford paid, or a dispute of fact regarding whether fees Hartford paid arose out of the work of Beaty, is not relevant and cannot preclude summary judgment in Hartford's favor on the question of breach of the duty to defend.[10]

Likewise, the Court rejects Trinity's argument that the Court must deny summary judgment because Hartford has not established that the defense costs it incurred were reasonable or that they were incurred post-tender.   In support of its position, Trinity reasons that Trinity Policy No. 2 contains the contractual limitation that defense costs must be "reasonable," [Doc. 180 at

---

[10]   If Trinity believed that facts outside of the complaint relieved Trinity of its duty to defend RLP (*e.g.*, that the costs for which Hartford seeks reimbursement were not incurred defending claims arising out of the work of Beaty), Trinity should have sought a judicial determination to that effect, for once the duty to defend arose, Trinity was required to participate in RLP's defense "unless and until it receive[d] a judicial ruling in its favor relieving it of any further obligations." *Loya v. Gutierrez*, No. 34,4217, 2015 WL 2168843, at *12 (N.M. May 11, 2015) (citation omitted). Trinity, however, failed to obtain such a ruling, and thus Trinity was required to defend RLP during the pendency of the Underlying Action.

18-19], and that the policy does not obligate Trinity to pay defense fees incurred prior to the tender of RLP's defense.   [*Id.* at 19].   Trinity maintains that because Hartford has failed to establish that the costs for which it seeks reimbursement were reasonable and incurred post-tender, the Court must deny summary judgment.   These arguments suffer from the same flaw as Trinity's previous argument:   They are relevant to whether Trinity has a duty to pay the defense costs for which Hartford seeks reimbursement and not to whether Trinity breached its duty to defend.   Breach of the duty to pay is not at issue on summary judgment and evidence regarding breach of the duty to pay is not relevant to the breach of the duty to defend.   Thus, the Court holds that Hartford's failure to produce evidence relevant to breach of duty to pay does not preclude judgment as a matter of law in Hartford's favor.[11]

For the foregoing reasons, the Court concludes that Trinity has failed to establish that a dispute of fact precludes this Court from entering judgment as a matter of law declaring that Trinity failed to participate in RLP's defense in breach of its duty to defend.   Trinity's duty to participate and to provide assistance to Hartford in RLP's defense required Trinity to take affirmative steps during the pendency of the Underlying Action to defend RLP.   *See Signature Dev. Cos.*, 230 F.3d at 1219-20; *Constitution Ass'n v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).   The Court already has explained why Trinity's attendance at the mediation to represent Trinity and its request for additional information to discuss a cost-sharing arrangement among

---

[11]   Trinity also contends that it has no contractual obligation to pay defense costs to the extent Trinity Policy No. 2 is excess to any other insurance provided to RLP and that the Court must deny Hartford's Motion for Summary Judgment because Hartford has not established that Trinity's obligations are primary rather than excess.   [Doc. 180 at 19].   Specifically, Trinity Policy No. 2 provides that when the policy is excess, Trinity "will have no duty . . . to defend the insured . . . if any other insurer has a duty to defend the insured."   [Doc. 9-1 at 34-35].   This argument lacks merit, however, because Trinity already has conceded that it had a duty to defend RLP under Policy No. 2.   Thus, the Court declines to consider it.

insurers are not sufficient acts of participation to satisfy Trinity's duty to defend, and Trinity does not identify, and the Court cannot conceive of, any other acts that Trinity undertook during the pendency of the Underlying Action which could constitute participation or assistance in RLP's defense.   Thus, having held that Trinity has failed to generate a factual question on the duty to participate in RLP's defense and having rejected all of Trinity's remaining arguments in opposition to summary judgment, the Court grants Hartford's Motion for Summary Judgment on the question of breach of the duty to defend and declares that Trinity breached its duty to defend RLP under Trinity Policy No. 2.

## CONCLUSION

For the foregoing reasons, **IT THEREFORE IS ORDERED** that Trinity Universal Insurance Company of Kansas, Trinity Insurance of Kansas, and Trinity Universal Insurance Company's Motion to Strike, or in the Alternative, Federal Rule of Civil Procedure 56(d) Request for Discovery and Deferred Ruling on Plaintiff's Motion for Partial Summary Judgment on the Duty to Defend [Doc. 65] is hereby **DENIED**, and that Plaintiff Hartford Casualty Insurance Company's Motion for Partial Summary Judgment on the Duty to Defend [Doc. 56] is hereby **GRANTED IN PART** and **DENIED IN PART** as set forth herein.


DATED this 30th day of July, 2015.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

43